**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **STEVEN E. BERKHEIMER,** | |
| Plaintiff, | |
| | Civil Action No. 1:12-cv-09023 |
| v. | Hon. John Z. Lee |
| **HEWLETT-PACKARD COMPANY,** | Hon. Jeffrey T. Gilbert |
| Defendant. | |

**DEFENDANT HEWLETT-PACKARD COMPANY'S BRIEF IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT UNDER 35 U.S.C. § 101**

## **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................... 1

II.     BACKGROUND – THE ASSERTED CLAIMS ........................................... 3

III.    LEGAL STANDARD.................................................................................... 5

IV.    ARGUMENT ................................................................................................ 7

      A.    *Alice* Step 1 – The Asserted Claims Are Directed To Reorganizing Data And Presenting The Data For Manual Reconciliation........................................... 7

      B.    *Alice* Step 2 – The Asserted Claims Do Not Recite Significantly More Than The Abstract Idea in the Asserted Claims ................................................. 8

            1.    The first two steps of claim 1 merely recite organizing data and do not recite significantly more than the abstract idea ................................. 8

            2.    The "evaluating" step recites generic activity that can be performed by human thought alone, and therefore cannot confer patent eligibility ................................................................................. 10

            3.    The "presenting for manual reconciliation" step recites conventional computer functionality that can be performed by a human using pen and paper, and therefore cannot confer patent eligibility ................................................................................. 11

            4.    Dependent Claims 2-7 and 9 Also Fail To Recite Significantly More Than the Abstract Idea in the Asserted Claims ............................. 12

      C.    The Claims Also Fail The Machine-Or-Transformation Test ............................ 14

V.     CONCLUSION............................................................................................ 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
   728 F.3d 1336 (Fed. Cir. 2013).........................................................................5, 7

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   --- U.S. ---, 134 S. Ct. 2347 (2014)........................................................ *passim*

*Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*,
   56 F. Supp. 3d 813 (E.D. Va. Oct. 24, 2014)..................................................6, 12

*Bancorp Servs. v. Sun Life Assur. Co. of Canada (U.S.)*,
   687 F.3d 1266 (Fed. Cir. 2012)....................................................................14

*Bascom Research, LLC v. LinkedIn, Inc.*,
   77 F. Supp. 3d 940 (N.D. Cal. 2015) ..............................................................13

*Bilski v. Kappos*,
   561 U.S. 593 (2010)...................................................................................5, 12

*California Inst. of Tech. v. Hughes Commc'ns Inc.*,
   59 F. Supp. 3d 974 (C.D. Cal. 2014) .................................................................5

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014).........................................................2, 8, 10, 12

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011)..........................................................10, 11, 13, 15

*DATATRAK Int'l, Inc. v. Medidata Sols., Inc.*,
   No. 1-11-cv-00458, 2015 WL 6870109 (N.D. Oh. Nov. 6, 2015) ...............3, 10, 13

*Dealertrack, Inc. v. Huber*,
   674 F.3d 1315 (Fed. Cir. 2012).....................................................................14, 15

*Diamond v. Chakrabarty*,
   447 U.S. 303 (1980).........................................................................................5

*Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*,
   758 F.3d 1344 (Fed. Cir. 2014)................................................................3, 6, 8, 9

*eDekka LLC v. 3balls.com, Inc.*,
   No. 2-15-cv-00541, 2015 WL 5579840 (E.D. Tex. Sept. 21, 2015) ...........................6

*In re Bilski*,
   545 F.3d 943 (Fed. Cir. 2008) (en banc)...........................................................14, 15

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
   --- F. Supp. 3d ---, 2015 WL 5165442 (D. Md. Sept. 2, 2015).........................2, 7, 14

*Internet Patents Corp. v. Active Network, Inc.*,
   790 F.3d 1343 (Fed. Cir. 2015)..................................................................5, 7, 8, 14

*Kroy IP Holdings, LLC v. Safeway, Inc.*,
   No. 2-12-cv-00800, 2015 WL 3452469 (E.D. Tex. May 29, 2015) ...........................6

*Market Track, LLC v. Efficient Collaborative Retail Mktg., LLC*,
   No. 14 c 4957, 2015 WL 3637740 (N.D. Ill. June 12, 2015) ...........................2, 7, 13

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012)...........................................................................................6, 12

*MicroStrategy Inc. v. Apttus Corp.*,
   --- F. Supp. 3d ---, 2015 WL 4425828 (E.D. Va. Jul. 17, 2015)...........................6, 13

*Neochloris, Inc. v. Emerson Process Mgmt. Power & Water Sols., Inc.*,
   No. 1-14-cv-09680, 2015 WL 5951753 (N.D. Ill. Oct. 13, 2015) (Chang, J.) ........6

*Netflix, Inc. v. Rovi Corp.*,
   No. 4-11-cv-06951, 2015 WL 4345069 (N.D. Cal. July 15, 2015) ............................6

*OpenTV, Inc. v. Apple, Inc.*,
   No. 14–cv–01622, 2015 WL 1535328 (N.D. Cal. Apr. 5, 2015) .......................3, 10

*SiRF Tech., Inc. v. Int'l Trade Commc'n*,
   601 F.3d 1319 (Fed. Cir. 2010).................................................................................12

*SmartGene, Inc. v. Advanced Biological Labs.*,
   555 F. App'x 950 (Fed. Cir. 2014) ...........................................................................11

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014)....................................................................... *passim*

*Walker Digital LLC v. Google Inc.*,
   66 F. Supp. 3d 501, 508-09 (D. Del. 2014) ..............................................................14

## STATUTES

35 U.S.C. § 101......................................................................................... *passim*

35 U.S.C. § 112................................................................................................8

iii

Defendant Hewlett-Packard Company, now known as HP Inc. ("HP"), respectfully moves for summary judgment because the remaining asserted claims of U.S. Patent No. 7,447,713 (the "'713 Patent") recite only abstract ideas and are therefore non-patentable and invalid under 35 U.S.C. § 101 ("Section 101") as a matter of law.[1]  *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, --- U.S. ---, 134 S. Ct. 2347 (2014).  This motion is case-dispositive.

## I.    INTRODUCTION

This case involves another business method patent that should be invalidated under the Supreme Court's test set forth in *Alice* to determine whether the claims of a patent are directed to patent-eligible subject matter.  *See Alice,* 134 S. Ct. 2347.  Under *Alice* and its progeny, it is now well-settled that abstract ideas cannot be patented unless the patent claims recite something significantly more than the abstract idea.  *Id.*  While the specification of the '713 Patent may describe a long, detailed list of systems and methods of digital archiving of files,[2] the asserted claims – in contrast – relate to an age-old abstract idea coupled with a generic computer and mental steps, and therefore do not meet the patentability requirements of Section 101.

More specifically, the remaining asserted claims (independent claim 1 and dependent claims 2-7 and 9) describe generic methods to reorganize a data file (such as a PDF of a bank statement) into multiple files and then to present (*i.e.*, show someone) one or more of the files for "manual reconciliation."  For example, in a two-page PDF document, according to Plaintiff, claim 1 may be performed by reorganizing (using a well-known program known as a "parser") the single file into two data files each corresponding to one of the pages, having a human person

---

[1]  Plaintiff originally asserted claims 1-7 and 9-19 of the '713 Patent.  The Court's Markman Order found system claims 10-19 to be indefinite.  Dkt. 123, at 22.  This motion addresses remaining method claims 1-7 and 9.  Although, claims 10-19 are system claims that closely resemble the method claims and are invalid for the same reasons.  *See Alice*, 134 S. Ct. at 2630.

[2]  *See* Dkt. 123, at 1-2.

determine if reconciliation is needed, and then displaying the two data files for manual reconciliation. Thus, the heart and purpose of the asserted claims relates to the ***abstract idea*** of ***reorganizing data (e.g., a document file) and presenting the data for manual reconciliation.***

None of the asserted claims recites any inventive concept beyond this abstract idea. Further, the reorganization and presentation of information for manual reconciliation is a fundamental, conventional business and accounting practice that was well-known for centuries prior to the (2001) filing date of the '713 Patent. Individuals and companies – including their bookkeepers, accountants, and auditors, for example – have reorganized pages in documents in paper form prior to the advent of computers, and manually reconciled errors (*e.g.*, in checkbooks, bank statements, invoices, and financial accounts) for centuries if not millennia.[3] Beyond this abstract idea, and as explained further below, the asserted claims recite nothing more than the use of a generic computer plus mental steps. Accordingly, the asserted claims are all unpatentable. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n,* 776 F.3d 1343, 1347 (Fed. Cir. 2014) (invalidating claims related to the "indisputably" well-known "concept of data collection, recognition, and storage"); *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, --- F. Supp. 3d ---, 2015 WL 5165442, at *3 (D. Md. Sept. 2, 2015) ("Document modification, whether electronically or by editing with pen and paper, is also a fundamental business activity and too broad to be a non-abstract patentable idea."); *Market Track, LLC v. Efficient Collaborative Retail Mktg., LLC*, No. 14 c 4957, 2015 WL 3637740, at *5–6 (N.D. Ill. June 12, 2015) ("The basic concept of selecting a useful subset of data from a larger stored pool

---

[3] *See* Ex. A, Schonfeld Invalidity Expert Report, ¶ 112 ("[H]umans often maintain file cabinets in order store and archive documents."); Double-entry accounting systems have existed for centuries allowing organization of data, and presenting data and manually reconciling errors https://en.wikipedia.org/wiki/History_of_accounting; https://en.wikipedia.org/wiki/Double-entry_bookkeeping_system.

of data, organizing it for review, and disseminating the . . . results to others is the fundamental process by which information is used and shared in the modern economy.").

The Supreme Court confirmed that abstractly claiming such fundamental business and economic practices improperly ties "up the future use of these building blocks of human ingenuity," and therefore, such claims fall outside scope of section 35 U.S.C. § 101 and are ineligible for patent protection.  *See Alice*, 134 S. Ct. at 2354; *see also, e.g.*, *Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014) (invalidating claims directed to a "organizing information through mathematical correlations" because "a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible"); *DATATRAK Int'l, Inc. v. Medidata Sols., Inc.*, No. 1-11-cv-00458, 2015 WL 6870109, at *5 (N.D. Oh. Nov. 6, 2015) (invalidating claims directed to the abstract idea of "data organization and retrieval from multiple data sources and data source types"); *OpenTV, Inc. v. Apple, Inc*., No. 14–cv–01622, 2015 WL 1535328, at *3 (N.D. Cal. Apr. 5, 2015) (invalidating claims directed to the abstract idea of "compiling, organizing, and transmitting information, using identification codes as shorthand for that information").

A finding of unpatentability in this case is therefore not a close question, and HP is entitled to summary judgment as a matter of law.

## II.     BACKGROUND – THE ASSERTED CLAIMS

Independent claim 1 is a method claim consisting of just four sequential steps:[4]

    Claim 1: A method of archiving an item in a computer processing system comprising:
        presenting the item to a parser;
        parsing the item into a plurality of multi-part object structures wherein portions of the structures have searchable information tags associated therewith;
        evaluating the object structures in accordance with object structures previously stored

---

[4]  Dkt. 123, at 21-22.

in an archive;

presenting an evaluated object structure for manual reconciliation at least where there is a predetermined variance between the object and at least one of a predetermined standard and a user defined rule.

In the context of the '713 patent, the "item" referenced may represent a document or graphical file in electronic form (*e.g.*, "advertisements, manuals, brochures, letterheads, and other documents or graphical items"). '713 Patent, 1:65-67; Dkt. 123, at 1. The item is (1) presented to a parser and then (2) parsed (*i.e.*, broken apart) to create a "multi-part object structure" (*e.g.*, text or graphical elements) that are "tagged" to be searchable. These object structures are then (3) evaluated and (4) presented for manual reconciliation.[5]

The rest of the asserted claims depend (directly or indirectly) from claim 1, as follows:

2.  The method as in claim 1 wherein the respective structure can be manually edited after being presented for reconciliation.

3.  The method as in claim 1 which includes, before the parsing step, converting an input item to a standardized format for input to the parser.

4.  The method as in claim 1 which includes storing a reconciled object structure in the archive without substantial redundancy.

5.  The method as in claim 4 which includes selectively editing an object structure, linked to other structures to thereby effect a one-to-many change in a plurality of archived items.

6.  The method as in clam 5 which includes compiling an item to be output from the archive, wherein at least one object-type structure of the item has been edited during the one-to-many change and wherein the compiled item includes a plurality of linked object-type structures

---

[5]   This Court has ruled that "evaluating" means "analyzing and comparing," and that "reconciliation" is "a commonly used word that needs no construction beyond its plain and ordinary meaning." Dkt. 123, at 10, 15.

converted into a predetermined output file formal.

7. The method as in claim 6 which includes compiling a plurality of items wherein the at least one object-type structure had been linked in the archive to members of the plurality.

9. The method as in claim 1 which includes forming object oriented data structures from the parsed items wherein the data structures include at least some of item properties, item property values, element properties and element property values.

## III. LEGAL STANDARD

Whether the claims of the '713 Patent are drawn to patent-eligible subject matter under Section 101 is a threshold question of law. *Bilski v. Kappos*, 561 U.S. 593, 621 (2010). Thus, this motion can be resolved solely by analyzing the claims of the '713 Patent.

The Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. It has long been recognized that "abstract ideas" are generally not patent eligible. *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980). Recently, the Supreme Court set out a two-step test for determining whether a patent is directed to non-patentable subject matter. *Alice*, 134 S. Ct. at 2354-55. **First**, this Court must determine "whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea. *Id*. This can be done by looking to the claims to determine whether an abstract idea is at the heart of the system. *See Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014) (confirming "the abstract idea at the heart of the [asserted] patent"); *Internet Patents Corp. v. Active Network, Inc*., 790 F.3d 1343, 1348 (Fed. Cir. 2015) ("ascertain[ing] the basic character of the subject matter"); *California Inst. of Tech. v. Hughes Commc'ns Inc.*, 59 F. Supp. 3d 974, 991-92 (C.D. Cal. 2014) ("the court must identify the purpose of the claim—in other words, what the claimed invention is trying to achieve";

5

"[a]ge-old ideas are likely abstract, in addition to basic tools of research and development, like natural laws and fundamental mathematical relationships.").

   **Second**, if the claims are directed to an abstract idea, this Court must evaluate whether the claims recite "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 134 S. Ct. at 2354-55 (internal quotations and citations omitted). A claim reciting only "well-understood, routine, conventional activity" or technology—such as general-purpose computers or databases—does not constitute an "inventive concept." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012); *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 56 F. Supp. 3d 813, 822-24 (E.D. Va. Oct. 24, 2014) (invalidating claims directed to well-known database functionality); *MicroStrategy Inc. v. Apttus Corp.*, --- F. Supp. 3d ---, 2015 WL 4425828, at *6 (E.D. Va. Jul. 17, 2015) (invalidating claims reciting "routine and conventional computer functions" including "automatic archiving" of data).

   Thus, without an inventive concept to revive the abstract claims, they are invalid under Section 101. *Alice*, 134 S. Ct. at 2357-58. Simply reciting steps performed by some unspecified, generic computer is insufficient. *Id.* Post-*Alice*, there are myriad decisions – from the Federal Circuit and District Courts – finding claims reciting computerized data manipulation and reorganization invalid under the two-part *Alice* test.[6]

---

[6] *See, e.g., Digitech*, 758 F.3d at 1350 (invalidating claims directed to mathematical algorithms); *eDekka LLC v. 3balls.com, Inc.*, No. 2-15-cv-00541, 2015 WL 5579840 (E.D. Tex. Sept. 21, 2015) (invalidating claims directed to receiving data, designating a portion as having "user-defined labels," and storing the data as a data structure); *Netflix, Inc. v. Rovi Corp.*, No. 4-11-cv-06951, 2015 WL 4345069 (N.D. Cal. July 15, 2015) (invalidating claims directed to categorizing shows using combination or composite categories); *Kroy IP Holdings, LLC v. Safeway, Inc.*, No. 2-12-cv-00800, 2015 WL 3452469 (E.D. Tex. May 29, 2015) (invalidating claims directed to "providing a computer-based incentive award program"); *Neochloris, Inc. v.*

## IV.    ARGUMENT

Summary judgment is proper because the asserted claims fail the Section 101 (two-part) patentability test set out in *Alice*.  134 S. Ct. at 2354-55.  Specifically, the claims are directed to an abstract idea and recite no inventive concept to revive them.

### A.    *Alice* Step 1 – The Asserted Claims Are Directed To Reorganizing Data And Presenting The Data For Manual Reconciliation

The asserted claims fail the ***first*** step under *Alice,* because an abstract idea is at the "heart" of the '713 Patent claims.  *See Ultramercial*, 772 F.3d at 714; *Accenture*, 728 F.3d at 1344; *Internet Patents*, 790 F.3d at 1348.  Although the idea behind the claims may be articulated in different ways, it can be fairly characterized as the abstract idea of ***reorganizing data and presenting the data for manual reconciliation***.[7]  This is indisputably a fundamental business and economic activity similar to those previously found patent-ineligible by other courts.  *See, e.g., Intellectual Ventures I*, 2015 WL 5165442, at *3 ("Document modification, whether electronically or by editing with pen and paper, is also a fundamental business activity and too broad to be a non-abstract patentable idea."); *Market Track*, 2015 WL 3637740, at *5–6 ("The basic concept of selecting a useful subset of data from a larger stored pool of data, organizing it for review, and disseminating the collected and organized results to others is the fundamental process by which information is used and shared in the modern economy.").

---

*Emerson Process Mgmt. Power & Water Sols., Inc.*, No. 1-14-cv-09680, 2015 WL 5951753 (N.D. Ill. Oct. 13, 2015) (Chang, J.) (invalidating claims directed to "general process of observing, analyzing, monitoring, and alerting that can be done entirely by the human mind and by using pen and paper" as directed to abstract ideas).

[7]  Plaintiff's expert, Dr. Nelson, describes the asserted claims as a "method which transforms an item presented to a parser into a different structure, a different state or thing, namely the parsing of an item (from source code into object code) into a plurality of multi-part object structures...."  Ex. E, Nelson Rebuttal Invalidity Report, ¶ 74.  Because the "object structures" must also be data, this is just another way of saying that the data is ***reorganized***.

Because dependent claims are "construed to incorporate by reference all the limitations of the [independent] claim," and, here, the dependent claims recite only minor variations of the independent claim, they are directed to this same broad abstract idea – reorganizing data and presenting the data for manual reconciliation. *See* 35 U.S.C. § 112 (pre-AIA); *see also Content Extraction*, 776 F.3d at 1348 (comparing dependent claims and claims of related patents to the "same abstract idea."); *Internet Patents*, 790 F.3d at 1349 (invalidating "dependent claims [that] do not add an inventive concept").

     **B.**    <u>*Alice* **Step 2 – The Asserted Claims Do Not Recite Significantly More Than The Abstract Idea in the Asserted Claims**</u>

The asserted claims also fail *Alice's **second*** step, because they do not add an "inventive concept" or something "significantly more" than the abstract idea of reorganizing data and presenting the data for manual reconciliation. *Alice*, 134 S. Ct. at 2354-55, 2357 ("We have described step two of this analysis as a search for an 'inventive concept' —*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'"). The claims as a whole must do more than instruct a practitioner to implement the abstract idea with "well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715. Thus, the independent and dependent claims fail the second step of *Alice* because they only recite the use of conventional and generic business practices, computing components or algorithms that were well known to those of skill in the art at the time of the filing of the '713 Patent. *Digitech*, 758 F.3d at 1351 ("[w]ithout additional limitations, a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible").

     **1.**    **The first two steps of claim 1 merely recite organizing data and do not recite significantly more than the abstract idea**

The first two steps of claim 1 are as follows:

> - **presenting** the item to a parser;
> - **parsing** the item into a plurality of multi-part object structures wherein portions of the structures have searchable information tags associated therewith;

Collectively, as interpreted by this Court, these steps are directed to using a generic computer program (*i.e.*, a "parser") to parse an "item" into "multi-part object structures."[8] The "items" can be documents, graphical files, brochures, manuals, PDFs, spreadsheets, bank statements or some other form of existing data. These steps are generic and do not recite or require the use of any particular computer or algorithm.[9] Moreover, both "object code" and "source code," as referenced in this Court's construction, are generic forms of computer code that were well known before the '713 Patent was filed. *See* Ex. A, Schonfeld Invalidity Expert Report, ¶¶ 110-11 (citing Microsoft Computer Dictionary, 5th ed., 2002). Thus, the creation of these "multi-part object structures" is the result of nothing more than reorganizing the original data (*i.e.*, the "item") into other known data formats using a generic computer program.

In *Digitech*, the Federal Circuit held that "a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible." 758 F.3d at 1351. Similarly, in *Alice*, the Supreme Court held that "the use of a computer to obtain data, adjust [data], and issue automated instructions" are all computer functions that constitute "'well-understood, routine, conventional activit[ies]' previously known to the industry," and cannot confer patent eligibility. 134 S. Ct. at 2359. Indeed, following *Alice*, courts have consistently held claims reciting reorganizing or manipulating data are not

---

[8] *See* Dkt. 123, at 6-7 (construing "parser" as a "program that dissects and converts source code into object code"). "Parsers," even in the context of computer programs, have long been used in the computer industry by traditional compilers and therefore are generic and conventional. Ex. A, Schonfeld Invalidity Expert Report, ¶ 109 (citing Dictionary of the Internet, 2001; Microsoft Computer Dictionary, 5th ed., 2002).

[9] Plaintiff admits that he did not invent the claimed parser. Ex. B, Berkheimer Deposition Transcript, 241:20-24.

patent eligible. *See, e.g., Content Extraction*, 776 F.3d at 1347 (invalidating claims related to the "indisputably" well-known "concept of data collection, recognition, and storage"); *DATATRAK*, 2015 WL 6870109, at *5 (invalidating claims directed to the abstract idea of "data organization and retrieval from multiple data sources and data source types"); *OpenTV*, 2015 WL 1535328, at *3 (invalidating claims directed to "compiling, organizing, and transmitting information, using identification codes as shorthand for that information").

### 2. The "evaluating" step recites generic activity that can be performed by human thought alone, and therefore cannot confer patent eligibility

The third step of claim 1 recites:

> - **evaluating** the object structures in accordance with object structures previously stored in an archive;

"Evaluating" has been construed by this Court to mean the generic actions of "analyzing and comparing," and this Court held this step need not be performed automatically. *See* Dkt. 123, at 8, 13-14 ("[Claim 1] is not necessarily entirely automatic – it involves presenting object structures for manual reconciliation."). Thus, this step can be performed in myriad ways, including entirely by a **human just thinking about (*i.e.*, "analyzing and comparing") the "objects."** Plaintiff and his technical experts advocate this exact interpretation. *See* Dkt. 78, at 11-13; Ex. C, Pavlo Infringement Report, ¶ 71 (arguing that the evaluating step is performed when a designer opens an object and compares the displayed object with previously stored objects); Ex. D, Nelson Infringement Report, ¶ 84 (arguing that the evaluating step is performed by a designer doing a side-by-side comparison of two separate displayed objects).

Because this "evaluating" step may be performed by ***human thought*** alone, it is an unpatentable mental process that cannot add anything inventive to the asserted claims. *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011) (invalidating claims "drawn to an unpatentable mental process—a subcategory of unpatentable abstract

ideas").[10]  Thus, this step fails to add any inventive concept to the asserted claims.

> **3.**  **The "presenting for manual reconciliation" step recites conventional computer functionality that can be performed by a human using pen and paper, and therefore cannot confer patent eligibility**

The fourth and last step of claim 1 recites:

> • **presenting** an evaluated object structure **for manual reconciliation** at least where there is a predetermined variance between the object and at least one of a predetermined standard and a user defined rule.

This step requires only presenting information and not require any actual reconciliation. That is, object structures are merely ***presented for reconciliation***.  Plaintiff's experts contend that merely displaying data on a computer screen satisfies this step.  Ex. C, ¶ 83; Ex. D, ¶ 91. Because "presenting" data is nothing more than a generic process, it cannot add any inventive concept to the asserted claims.  *See Ultramercial*, 772 F.3d at 716 ("the claimed sequence of steps comprises only 'conventional steps, specified at a high level of generality,' which is insufficient to supply an 'inventive concept.'"  *Id.* (quoting *Alice*, 134 S. Ct. at 2357).

Moreover, this step does not require any computer or technology at all, as the step may be performed by a human using pen and paper to present the object structures.  Dkt. 123, at 15 ("[o]bjects can be manually displayed"); *see also* '713 Patent, 3:10-14 ("Objects can be manually displayed [] for manual correction, editing and reconciliation.").  Because this step may be performed by a human using pen and paper, it amounts to an unpatentable mental step and is not an inventive concept beyond the abstract idea in the asserted claims.  *See CyberSource*, 654 F.3d at 1372 (finding a that method of verifying the validity of credit card transactions over the

---

[10]  Even if this step could be understood to require a computer, using a "'computing device' with basic functionality" to "compar[e] stored and input data and rules" is similarly unpatentable.  *See SmartGene, Inc. v. Advanced Biological Labs.*, 555 F. App'x 950, 954-55 (Fed. Cir. 2014); *see also* Ex. A, Schonfeld Invalidity Expert Report, ¶¶ 112-114; Ex. B., Berkheimer Deposition, 242:8-243:4 (Plaintiff admits that he did not invent the claimed "evaluation").

Internet to be abstract and could be performed in the human mind or by a human using a pen and paper); *SiRF Tech., Inc. v. Int'l Trade Commc'n*, 601 F.3d 1319, 1333 (Fed. Cir. 2010) (finding steps that could be performed by human using pen and paper or using a general-purpose computer with a database is insufficient "to impose a meaningful limit on the scope of a claim").

### 4. Dependent Claims 2-7 and 9 Also Fail To Recite Significantly More Than the Abstract Idea in the Asserted Claims

The dependent claims likewise fail to recite substantial limitations sufficient to transform the claims into patentable subject matter. Each dependent claim sets out only well-understood, routine, and conventional activity that is insufficient to revive these patent-ineligible claims. *See, e.g., Bilski*, 561 U.S. at 610-11; *Alice*, 134 S. Ct. at 2375 ("'Simply appending conventional steps, specified at a high level of generality,' was not '*enough'* to supply an 'inventive concept.'" (quoting *Mayo*, 132 S. Ct at 1300) (emphasis in original)). And, although the dependent claims "may have a narrower scope than the [independent claim], no claim contains an 'inventive concept' that transforms the corresponding claim into a patent-eligible application of the otherwise ineligible abstract idea." *Content Extraction,* 776 F.3d at 1349.

**Claim 2** depends from claim 1 and further recites that a structure can be <u>manually edited</u> after being presented for reconciliation. **Claim 3**, which precedes claim 1 in the order of steps, merely recites the antecedent step of <u>converting</u> one type of data to a standardized format. **Claim 4** depends form claim 1 and merely recites <u>storing</u> data in some data archive. These claims simply provide for editing or storing data, and add nothing to the abstract idea of claim 1. *See Ultramercial,* 772 F.3d 716 (the claims "comprise[] only 'conventional steps, specified at a high level of generality,' which is insufficient to supply an 'inventive concept.'") (quoting *Alice*, 134 S. Ct. at 2357); *Content Extraction*, 776 F.3d 1343 (claims directed to data collection, recognition, and storage held invalid); *Amdocs,* 56 F. Supp. 3d 813 (claims directed to storing

and querying information in a database, and building reports based on that information held invalid); *DATATRAK*, 2015 WL 6870109, at \*5 (claims directed to retrieval, storage, organization, and categorization of data held invalid); *MicroStrategy*, 2015 WL 4425828, at \*6 (claims directed to "automatic archiving [of data] based on classification information").

**Claim 5** depends from claim 4 and recites <u>editing</u> data and <u>propagating that edit to other</u> <u>linked data</u> ("one-to-many change"). Such editing was well known at the time the '713 Patent was filed and therefore provides no inventive concept beyond the underlying abstract idea. Ex. A, Schonfeld Invalidity Expert Report, ¶ 122; *see also Bascom Research, LLC v. LinkedIn, Inc.*, 77 F. Supp. 3d 940, 949-52 (N.D. Cal. 2015) (creating "link relationships" between documents located on the internet or computer networks found to be "common, age-old practice").

**Claim 6** is directed to creating output from the results of step 5, and **Claim 7** requires creating additional output on top the output in claim 6. As described above, creating output from an archive/database is not inventive. *E.g., Market Track*, 2015 WL 3637740, at \*5–6.

Lastly, **Claim 9** recites transforming object structures from the parsed data into a particular data format ("forming object oriented data structures from the parsed items"), with those structures having either stored properties or values for items or elements. Object-oriented data structures and object-oriented programming were well known before the '713 Patent was filed. Ex. A, Schonfeld Invalidity Expert Report, ¶ 116. Further, Plaintiff concedes he did not invent object-oriented programming. *See* Ex. B, Berkheimer Deposition Transcript, at 242:1-7. This type of "manipulation or reorganization of data" is not patentable. *CyberSource*, 654 F.3d at 1375. Accordingly, simply reorganizing the "parsed data" into "object oriented data structures" adds nothing to the underlying abstract concept.

Thus, each of these limitations merely recites conventional functionality known at the

time the '713 Patent was filed. Whether viewed individually or in combination with the elements of their parent claims, these claims recite no more than a computer performing its expected functions. Ex. A, Schonfeld Invalidity Expert Report, ¶¶ 101, 122-26. These steps add nothing inventive to the abstract idea of ***reorganizing data and presenting the data for manual reconciliation***. *Walker Digital LLC v. Google Inc*., 66 F. Supp. 3d 501, 508-09 (D. Del. 2014) (invalidating claims directed to computerizing "historically practiced" activities). The lack of inventive concept is also confirmed by the fact that these claims merely recite functional limitations without specifying **how** the functions are actually performed in practice.[11]

### C. The Claims Also Fail The Machine-Or-Transformation Test

Prior to *Alice*, the Federal Circuit applied the machine-or-transformation when evaluating patentable subject matter. After *Alice*, the Federal Circuit has held that the machine-or-transformation test remains "a 'useful clue' in the second step of the *Alice* framework." *Ultramercial*, 772 F.3d at 716 (citing *Bancorp Servs. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012)). Under the machine-or-transformation test, a claimed process can be patent-eligible under § 101 if: "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *Ultramercial*, 772 F.3d at 716 (quoting *In re Bilski*, 545 F.3d 943, 954 (Fed. Cir. 2008) (en banc), *aff'd on other grounds*, *Bilski*, 561 U.S. 593). As further proof that the Asserted Claims contain nothing more than abstract ideas, here, the asserted claims fail both prongs of the machine-or-transformation test.

---

[11] *See, e.g., Internet Patents*, 790 F.3d at 1348 (claims "contain[ed] no restriction on how the result is accomplished"); *Dealertrack,* 674 F.3d at 1333 ("[The] Patent 'does not specify how the computer hardware and database are specially programmed to perform the steps claimed in the patent.'" (citation omitted)); *Intellectual Ventures I*, 2015 WL 5165442, at *10 (explaining that a user interface was "nothing more than a conventional, generic computer component that is described in functional terms relating ***what*** it does, but not ***how*** it does it. This cannot breathe concreteness into an abstract idea.") (emphasis in original).

**First**, the asserted claims are not tied to "a particular machine." *Ultramercial*, 772 F.3d at 716. The claims recite only generic, general purpose computer functionality that is not tied to a specific computer. Indeed, the only portion of claim 1 *requiring* computer functionality is the "parsing" step, and that step is performed by a generic and conventional computer. Ex. A, Schonfeld Invalidity Expert Report, ¶ 104. This is precisely the type of incidental use of a machine the Federal Circuit has repeatedly found unavailing. *See, e.g., Ultramercial*, 772 F.3d at 716-17; *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333-34 (Fed. Cir. 2012); *CyberSource*, 654 F.3d at 1373. Moreover, as discussed above, many of the claimed limitations can be performed by human thought or using pen and paper and are therefore unpatentable.

**Second**, the asserted claims do not operate to "transform[] a particular **article** into a different state or thing." *CyberSource*, 654 F.3d at 1369 (quotation and citation omitted). The claims involve data manipulation and human thought processes, such that the patent "cannot meet the test because they are not physical objects or substances, and they are not representative of physical objects or substances." *Bilski*, 545 F.3d at 963. For this reason, the Federal Circuit has held that "software implementation of a purely mental process" and "[t]he mere manipulation or reorganization of data . . . do[] not satisfy the transformation prong." *CyberSource*, 654 F.3d at 1375. Here, the generically presented steps in the asserted claims do not involve any qualifying transformation. *See id.*

The fact that the asserted claims also fail the machine-or-transformation test is additional proof that the asserted claims are invalid.

**V.      CONCLUSION**

Because none of the asserted claims of the '713 Patent extends beyond an abstract idea, HP respectfully requests this Court grant its motion for summary judgment and hold that the claims are invalid, as a matter of law, under 35 U.S.C. § 101.

Dated: April 1, 2016                    Respectfully submitted,


                                        **MORGAN, LEWIS & BOCKIUS, LLP**

                                        /s/  *Jason C. White*
                                        Jason C. White
                                        Scott D. Sherwin
                                        Nicholas A. Restauri
                                        77 W. Wacker Drive, Suite 500
                                        Chicago, IL 60601
                                        Tel.: (312) 324-1000
                                        Fax: (312) 324-1001
                                        E-mail: jwhite@morganlewis.com
                                        E-mail: ssherwin@morganlewis.com
                                        E-mail: nicholas.restauri@morganlewis.com

                                        David J. Levy (Admitted Pro Hac Vice)
                                        dlevy@morganlewis.com
                                        Thomas R. Davis (Admitted Pro Hac Vice)
                                        tdavis@morganlewis.com
                                        MORGAN, LEWIS & BOCKIUS, LLP
                                        1000 Louisiana Street, Suite 4000
                                        Houston, Texas 77002
                                        +1.713.890.5000 Telephone
                                        +1.713.890.5001 Facsimile

                                        *Attorneys for Defendant HP Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing document was served via CM/ECF on April 1, 2016 upon all counsel of record.

/s/ *Jason C. White*
Jason C. White