**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**STEVEN E. BERKHEIMER,**

              **Plaintiff,**

              **v.**

**HEWLETT-PACKARD COMPANY,**

              **Defendant.**

              **No. 1:12-cv-09023**

              **Judge John Z. Lee**

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT UNDER 35 U.S.C. § 101**

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    LEGAL STANDARD............................................................................................2

III.   ARGUMENT .......................................................................................................3

     A.    The Asserted Claims Are Not Directed To An Abstract Idea Under *Alice* Step 1..4

     B.    The Asserted Claims Recite Inventive Concept Under *Alice* Step 2 And Improve Computer Technology Under *Alice* and *DDR Holdings*.........................................6

         1.    The Claims Present A Solution To A Problem Rooted In Computer Technology. ..................................................................6

         2.    The Claims Have the Requisite Degree of Specificity With No Risk of Preemption.................................................................8

         3.    The Claims Have Inventive Concept And Are Innovative Enough To "override the routine and conventional" Use Of The Computer. ........................................................................9

         3.    The Dependent Claims Add Further Inventive Concepts. .........................13

     C.    The Asserted Claims Are Patent-Eligible Under the Machine-or-Transformation Test.....................................................................................................................13

         1.    The challenged claims are patent-eligible under the machine prong............................................................................14

         2.    The challenged claims are patent-eligible under the transformation prong..................................................................14

IV.   HP's Motion Fails Under Local Rule 56.1 ......................................................15

V.    CONCLUSION..................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*01 Communique Laboratory, Inc. v. Citrix Systems, Inc.,*
    --- F.Supp.3d ---, 2015 WL 9268913 (2015) (R.Ex.F) ........................................................2, 3

*A Pty Ltd. v. HomeAway, Inc.,*
    No. 1-15-CV-158 RP, 2015 WL 5883364 (W.D. Tex. Oct. 8, 2015).......................................1

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
    ---U.S.---, 134 S.Ct. 2347 (2014)................................................................................... *passim*

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada*
    (U.S.), 687 F.3d 1266 (Fed. Cir. 2012) .................................................................................14

*In re Bilski,*
    545 F.3d 943 (Fed. Cir. 2008) (en banc)..........................................................................13, 14

*California Inst. Tech. v. Hughes,*
    59 F.Supp.3d 994 (C.D. Cal. November 3, 2014) .............................................................3, 13

*Circuit Check Inc. v. QXQ Inc.,*
    795 F.3d 1331 (Fed. Cir. 2015)..............................................................................................13

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.,*
    717 F.3d 1269 (Fed.Cir.2013)..................................................................................................3

*Com Innovationpool GmbH v Google, Inc.,*
    1:14-cv-00217-ROA, Dkt 351 (D.Del. April 28, 2016) (R.Ex.G)............................................3

*Contentguard Holdings, Inc. v. Amazon.com Inc.,*
    2:13-cv-1112, 2015 WL 5853984 (E.D. Tex. Oct. 5, 2015) (R.Ex.I).................................3, 12

*DataTern, Inc. v. MicroStrategy, Inc.,*
    11-11970-FDS, 2015 WL 5190715 (D. Mass. Sept. 4, 2015) (R.Ex.E)...........................2, 3, 7

*DDR Holdings, LLC v. Hotels.Com, L.P.,*
    773 F.3d 1245 (Fed. Cir. 2014)......................................................................................1, 2, 3, 6

*Diamond v. Diehr,*
    450 U.S. 175, 101 S.Ct. 1048 (1981) .....................................................................................10

*Enfish, LLC v. Microsoft Corp.,*
    56 F.Supp.3d 1167, 1174 (C.D. Cal. Nov. 3, 2014) ................................................................4

*Exergen Corp. v. Kaz USA, Inc.*,
    Case No. 13-10628-RGS, 2015 WL 8082402 (D. Mass. Dec. 7, 2015)
    (R.Ex.Q) ..................................................................................................................13

*Flint v. City of Belvidere*,
    791 F.3d 764 (7th Cir. 2015) ....................................................................................15

*I/P Engine, Inc. v. AOL Inc.*,
    576 F. App'x 982 (Fed. Cir. 2014) (Mayer, J., concurring) .......................................1

*Improved Search LLC v. AOL, Inc.*,
    Civ. No. 15-262-SLR (D. Del. Mar. 22, 2016) ...................................................1, 8

*Intellectual Ventures I LLC v. Ricoh Americas Corp.*,
    Civ. No. 13-474-SLR (D. Del. Mar. 22, 2016) .........................................................1

*LaSalvia v. City of Evanston*,
    806 F.Supp.2d 1043 (N.D.IL. 2011) ........................................................................15

*Maxus Strategic Sys., Inc. v. Aqumin LLC*,
    11-cv-073, 2015 WL 6756695 (E.D. Tex. Aug. 18, 2015) (R.Ex.M) .......................4

*Medtronic, Inc. v. Cardiac Pacemakers, Inc.*,
    721 F.2d 1563 (Fed. Cir. 1983).................................................................................10

*Mervyn v. Nelson Westerberg, Inc.*,
    --- F.Supp.3d ---, 2015 WL 6792104 (N.D. IL.2015) (R.Ex.R) .............................15

*Messaging Gateway Solutions LLC v. Amdocs, Inc. et al*,
    14-732, 2015 WL1744343 (D. Del. April 15, 2015) (R.Ex.O)..................................4

*Microsoft Corp. v. i4i Ltd. P'ship*,
    131 S. Ct. 2238 (2011) ...............................................................................................2

*Motio, Inc. v. BSP Software LLC, et al.*,
    4:12-CV-647, 2016 WL 26043 (E.D. Tex. Jul. 7, 2015) (R.Ex.L) ...........................3

*Network Congestion Solutions, LLC v. U.S. Cellular Corp.*,
    Civ. No. 14-903-SLR (D. Del. Mar. 22, 2016) ...................................................1, 8

*Raytheon Co. v. Roper Corp.*,
    724 F.2d 951 (Fed. Cir. 1983) (Markey, C.J.) ........................................................10

*SimpleAir, Inc. v. Google  Inc. et al.*,
    2:14-cv-00011, 2015 WL 5675281 (E.D. Tex. Sept. 25, 2015) ................................3

*Smartflash LLC et al v. Apple Inc. et al*,
    6:13-cv-447, 2015 WL 661174 (E.D. Tex Feb. 13, 2015) (R.Ex.J) .............3, 11, 12

*SRI International, Inc. v. Cisco Systems, Inc.*,
   13-cv-015234-SLR, Dkt 351 (D.Del. April 11, 2016) (R.Ex.H) ...............................................3

*StoneEagle Services, Inc. v. Pay-Plus Solutions, Inc.*,
   113 F.Supp.3d 1241, 2015 WL 4042097 (M.D. Florida July 1, 2015) (R.Ex.N) ....................4

*TQP Dev., LLC v. Intuit Inc.*,
   2:12-cv-180-WCB, 2014 WL 651935 (E.D. Tex Feb. 19, 2014) (R.Ex.P) ...........................12

*Ultramercial Inc. v. Hulu LLC*,
   722 F.3d 1335 (Fed. Cir. 2013), cert. granted, judgment vacated sub nom.........................5, 9

*Ultramercial, Inc. v. Hulu*,
   LLC, 772 F.3d 709 (Fed. Cir. 2014) ...................................................................................14

**Statutes**

35 U.S.C. §101 ............................................................................................................ *passim*

35 U.S.C. §282 ...................................................................................................................2

**Other Authorities**

L.R. 56.1 .............................................................................................................10, 12, 15

iv

## I.    INTRODUCTION

Berkheimer's asserted claims are not drawn to an abstract idea and have inventive concept because they improve the computer technology of digital asset and content management systems.[1]

*Alice* did not reject all software-based patents, stating "many computer-implemented claims are formally addressed to patent-eligible subject matter," and specifically suggested claims which "improve the functioning of the computer itself" or "any other technology" are patent eligible. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, ---U.S.---, 134 S.Ct. 2347, 2359 (2014); *A Pty Ltd. v. HomeAway, Inc.*, No. 1-15-CV-158 RP, 2015 WL 5883364, at *2 (W.D. Tex. Oct. 8, 2015)[2]; *see also*, *I/P Engine, Inc. v. AOL Inc.*, 576 F. App'x 982, 992 (Fed. Cir. 2014) (Mayer, J., concurring) ("The Supreme Court in *Alice* for all intents and purposes, recited a 'technological arts' test for patent eligibility.") So it is here: the asserted claims improve the functioning of computerized digital asset and content management technologies and are patent eligible.

Moreover, HP's analysis ignores the salient law pertaining to "computer-implemented inventions" by failing to cite or discuss the "benchmark" Federal Circuit decision of *DDR Holdings, LLC v. Hotels.Com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014).

In a trio of decisions issued March 22, 2016[3], Judge Sue Robinson, the longest serving Judge of the U.S. District Court of Delaware - a significant patent venue, addressed software-related computer-implemented patents under 35 U.S.C. § 101. In a discussion common to all

---

[1]  For example, see Plaintiff's Local Rule 56.1(b) Response and Statement of Additional Facts Requiring Denial of Summary Judgment (hereinafter cited as "Pl.SMF") at ¶¶ 18 to 33 which sets forth improvements, practical benefits and advantages of the '713 Patent invention.
[2]  Attached as Response Exhibit ("R.Ex.") A.
[3]  *Improved Search LLC v. AOL, Inc.*, Civ. No. 15-262-SLR (D. Del. Mar. 22, 2016); I*ntellectual Ventures I LLC v. Ricoh Americas Corp.*, Civ. No. 13-474-SLR (D. Del. Mar. 22, 2016); and *Network Congestion Solutions, LLC v. U.S. Cellular Corp.*, Civ. No. 14-903-SLR (D. Del. Mar. 22, 2016), attached as R.Ex. B to D respectively.

three opinions, Judge Robinson traced the "evolution of the § 101 jurisprudence" on software patents from "complete rejection" in the 1960s to "complete acceptance" in the 1990s to Alice's skepticism in the 2010s. After acknowledging the evolving state of the law and the difficulty of the § 101 analysis, Judge Robinson stated at p. 12 of the common opinions:

> "In trying to sort through the various iterations of the § 101 standard, the court looks to *DDR* as a benchmark; i.e., **the claims (informed by the specification) must describe a problem and solution rooted in computer technology, and the solution must be (1) specific enough to preclude the risk of pre-emption, and (2) innovative enough to "override the routine and conventional" use of the computer**. *DDR*, 773 F.3d at 1258-59." (emphasis added)

Berkheimer's asserted claims are "necessarily rooted in computer technology," provide "the requisite degree of specificity" to preclude the risk of pre-emption of an abstract idea, and are innovative enough to "override the routine and conventional" use of the computer. *Id.*

## II.    LEGAL STANDARD

In addition to the standards for summary judgment familiar to this Court, to prevail on its § 101 challenge, HP must establish that the asserted '713 Patent claims fail both steps of the *Mayo / Alice* framework, namely that they are directed to an ineligible category (such as an abstract idea) under *Alice* step 1 <u>and</u> lack an inventive concept under *Alice* step 2. HP has the burden of proving the same by clear and convincing evidence[4]. *See CLS Bank Int'l v. Alice Corp.*

---

[4] HP's assertion that its motion is a pure matter of law does not negate the presumption of validity of the '713 Patent and HP's burden of proof to overcome the same by the clear and convincing evidence standard. See *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2245-2251 (2011) (holding that the presumption of validity under 35 U.S.C. §282 requires the clear and convincing evidence standard to apply to all validity challenges because "we must presume that Congress intended to incorporate the heightened standard of proof, unless the statute otherwise dictates" and nothing "suggests that Congress meant to ... enact a standard of proof that would rise and fall with the facts of each case" (internal quotes omitted)); *DataTern, Inc. v. MicroStrategy, Inc.*, 11-11970-FDS, 2015 WL 5190715 at *8–9 (D. Mass. Sept. 4, 2015) (R.Ex.E) (applying the presumption of validity and the clear-and-convincing standard in §101 analysis). But cf. *01 Communique Laboratory, Inc. v. Citrix Systems, Inc.*, --- F.Supp.3d ---, 2015 WL 9268913 (2015) (R.Ex.F) at *5–6 acknowledging the presumption of validity and burden of proof by

*Pty. Ltd.*, 717 F.3d 1269, 1284 (Fed.Cir.2013) (finding that "any attack on an issued patent based on a challenge to eligibility of the subject matter must be proven by clear and convincing evidence."). But regardless of the burden, HP fails to establish either step 1 or 2 of *Alice*.

## III.   ARGUMENT

HP's opening brief gives scant attention to whether the '713 claims assert "to improve the functioning of the computer itself or effect an improvement in any other technology or technical field." *Alice*, 134 S.Ct. at 2359. Despite citing at footnote 6 of its brief to "myriad decisions" finding patent claims invalid under §101, HP omits any reference to *DDR Holdings* and the numerous post-*Alice* cases distinguishing HP's cited cases and upholding the patent eligibility of software or computer implemented inventions that improve a technology.[5]

---

clear and convincing evidence is not a simple issue relative patent eligibility under §101, uncertainty exists, and district courts have taken various approaches.

[5] See in addition to footnote 2 supra, e.g., *Art + Com Innovationpool GmbH v Google, Inc.*, 1:14-cv-00217-ROA, Dkt 351, (D.Del. April 28, 2016) (R.Ex.G) (pictorial representation of space-related data is a patent eligible "specific procedure done by a computer" "not merely what a computer does"); *SRI International, Inc. v. Cisco Systems, Inc.*, 13-cv-015234-SLR, Dkt 351, (D.Del. April 11, 2016) (R.Ex.H) (claims of data from multiple sources to detect suspicious activity delineate "how" method improves the functioning of the computer and are patent eligible); *01 Communique Laboratory, Inc. v. Citrix Systems, Inc., et al.*,1:06-cv-253, 2015 WL 9268913 (N.D. Ohio Dec. 21, 2015) (R.Ex.F) (claim not directed to ineligible abstract idea and recited additional features of a specific solution, rooted in computer technology, to remote access problems that can only arise in the realm of computer networks); *DataTern, Inc. v. MicroStrategy, Inc.*, 2015 WL 5190715, at *8–9 (D. Mass. Sept. 4, 2015) (R.Ex.E) (method for interfacing an object oriented software application with a relational database eligible under §101 because it was directed to solving a problem that specifically arises in the realm of computing {"object oriented programs exist only in the realm of computers"} and does not address fundamental practices long prevalent); *Contentguard Holdings, Inc. v. Amazon.com Inc.*, 2:13-cv-1112, 2015 WL 5853984, at *6 (E.D. Tex. Oct. 5, 2015) (R.Ex.I) (claims directed toward enforcing usage rights and restrictions on digital content eligible under §101); *Smartflash LLC et al v. Apple Inc. et al*, 6:13-cv-447, 2015 WL 661174 (E.D. Tex Feb. 13, 2015) (R.Ex.J) (claims recited patent eligible inventive concept by specific ways of managing access to digital content data based on payment validation through storage and retrieval of use status data and use rules in distinct memory types and evaluating the use data according to the use rules); *SimpleAir, Inc. v. Google  Inc. et al.*, 2:14-cv-00011, 2015 WL 5675281 (E.D. Tex. Sept. 25, 2015) (R.Ex.K) (data transmission patents were not directed toward an abstract idea but instead were directed to "patent-eligible methods and systems for transmitting data to remote computing devices because claim limitations were sufficient to ensure the claim amounts to more than patent on an abstract idea); *California Inst. Tech. v. Hughes*, 59 F.Supp.3d 994 (C.D. Cal. November 3, 2014) (inventive concept because claims contain meaningful limitations that are narrowly defined and "tied to a specific error correction process" that does "not preempt the field of error correction."); *Motio, Inc. v. BSP Software*

3

## A. THE ASSERTED CLAIMS ARE NOT DIRECTED TO AN ABSTRACT IDEA UNDER *ALICE* STEP 1.

HP's motion recasts the claims of the '713 Patent into an abstraction not claimed, namely "the abstract idea of reorganizing data" <u>and</u> "presenting the data for manual reconciliation". This conjunctive phrasing of HP's abstraction is incongruent: if data is "reorganized" why must it be "presented for manual reconciliation?" HP's abstraction comprises two distinct components and is not in accord with the testimony of its own expert, Dr. Schonfeld.[6]

Above all, HP's claim refashioning errs as a matter of law because *it does not account for the core elements and limitations of the claims*. "Because software is necessarily intangible, accused infringers can easily mischaracterize and oversimplify software patents." *Enfish, LLC v. Microsoft Corp.*, 56 F.Supp.3d 1167, 1174 (C.D. Cal. Nov. 3, 2014). HP does so here.

In the first step of the *Alice* framework, the Court considers the claims at issue "in their entirety" to determine "whether their character as a whole" is directed to a law of nature, natural phenomenon, or abstract idea or a "fundamental...practice long prevalent in our system of commerce." See *Alice*, 134 S.Ct. at 2355-56.

---

*LLC, et al.*, 4:12-CV-647, 2016 WL 26043 (E.D. Tex. Jul. 7, 2015) (R.Ex.L) (electronic versioning claims contained limitations that created patent eligible inventive concept); *Maxus Strategic Sys., Inc. v. Aqumin LLC*, 11-cv-073, 2015 WL 6756695, at *2 (E.D. Tex. Aug. 18, 2015) (R.Ex.M) (apparatus and method for displaying information in a virtual reality environment to facilitate the viewing of otherwise unmanageable amounts of data eligible under §101; *StoneEagle Services, Inc. v. Pay-Plus Solutions, Inc.*, 113 F.Supp.3d 1241, 2015 WL 4042097, at *7-9 (M.D. Florida July 1, 2015) (R.Ex.N) (claims directed to healthcare reimbursement system using virtual payment of benefit amount together with explanation of benefits provides a solution that is not an abstract idea); *Messaging Gateway Solutions LLC v. Amdocs, Inc. et al.*, 14-732, 2015 WL1744343 (D. Del. April 15, 2015) (R.Ex.O) (telecommunication data translation claim was necessarily rooted in computer technology and overcome a problem specifically arising in the realm of mobile device-to-Internet communication with sufficient limitations to prevent it from preempting an abstract idea).

[6] Dr. Schonfeld's abstraction states "the asserted claims are drawn to abstract idea of archiving data, wherein new data items to be archived are analyzed and compared to previously stored data" comparable to humans "maintain[ing] filing cabinets" where they "compare portions of new documents to stored portions of documents to identify variances when archiving new documents" "to avoid archiving duplicates of portions of the same documents." Plaintiff's expert Dr. Peter Nelson rebuts Dr. Schonfeld's § 101 analysis. [Pl.SMF, ¶¶ 45 to 48]

While a summary of a claim will necessarily omit details, to capture what a claim is directed to, the summary *must include the core features of the claim*. A summary that omits core features will not describe what the claim is directed to, will not reflect a claim's potential preemptive footprint, and an analysis of that summary would thus be meaningless. *See*, *Ultramercial Inc. v. Hulu LLC*, 722 F.3d 1335, 1344 (Fed. Cir. 2013) ("*Ultramercial I*"), cert. granted, judgment vacated sub nom., ("The Court has long-recognized that any claim can be stripped down, simplified, generalized, or paraphrased to remove all of its concrete limitations, until at its core, something that could be characterized as an abstract idea is revealed. A court cannot go hunting for abstractions by ignoring the concrete, palpable, tangible limitations of the invention the patentee actually claims.")

HP has not established the claims at issue are directed to an abstract idea because its summary of the claims does not include core features of the claims. For example, core features in Claim 1 include the key elements of presenting an item to a *parser* and *parsing the item (from source code into object code)* into *a plurality of multi-part object structures wherein portions of the structures have searchable information tags* associated therewith. This is a transformative step that cannot be performed in the human mind or manually by using pen and paper – rather it requires the parser and parsing and tagging as called for in the claims. [Pl.SMF, ¶¶ 37, 38] Further, the evaluating step of Claim 1, as construed by the Court, involves "*analyzing the plurality of multi-part object structures obtained by parsing and comparing it with object structures previously stored in the archive to determine if there is variance between the object and at least one of a predetermined standard and a user defined rule.*" [Pl.SMF, ¶¶ 14, 15]

The *claims at issue* are not an "abstract idea" because they do not involve a fundamental practice long prevalent in our system of commerce or an abstract idea that existed in a pre-

5

Internet world simply implemented by a computer. HP's Motion fails *Alice* step 1.

**B. THE ASSERTED CLAIMS RECITE INVENTIVE CONCEPT UNDER *ALICE* STEP 2 AND IMPROVE COMPUTER TECHNOLOGY UNDER *ALICE* AND *DDR HOLDINGS*.**

The '713 claims are also patent-eligible under the second step of the *Mayo / Alice* framework because they recite particular claim elements and meaningful limitation that, individually or *collectively*, transform the nature of the claims into a patent eligible application having inventive concept. *Alice*, 134 S.Ct. at 2354.

For computer-implemented technologies, Judge Robinson's reliance on *DDR* as a "benchmark" is appropriate. Indeed, Berkheimer's asserted claims survive *Alice's* "inventive concept" step 2 because they are directed to a solution to a problem "necessarily rooted in computer technology," provide "the requisite degree of specificity" to preclude the risk of pre-emption of an abstract idea, and are innovative enough to "override the routine and conventional" use of the computer.

**1. The Claims Present A Solution To A Problem Rooted In Computer Technology.**

Claim 1's "method of archiving an item in a computer processing system" comprises specifically recited steps including *parsing* an item into "a plurality of *multi-part object structures* wherein portions of the structures *have searchable information tags associated therewith*". As construed by this Court, "parsing" requires use of a program that dissects and converts source code into object code. [Pl.SMF, ¶ 15] The '713 Patent at 17:4-12 teaches with respect to FIGS. 3 and 4 that "the system 10, stores objects and object relationships utilizing a multi-element data structure which incorporates element specific metadata 60a, element properties 60b and element property values 60c. Additionally, the data structure incorporates document-specific data and metadata 62a, document properties 62b and document property

6

values 62c.[7] Tags associated with object oriented data structures by the parser and tagger 104 are carried therewith and enable linking and retrieval of object oriented data structures from archive 14." [Pl.SMF, ¶¶ 16, 17]

Thus Claim 1's "plurality of multi-part object structures" obtained by parsing source code into object code are rooted in a computer technology. *DataTern, Inc.*, 2015 WL 5190715 at *8–9 (R.Ex. E) ("indeed, object-oriented programs exist only in the realm of computers"). [Pl.SMF, ¶¶ 18, 19, 20 to 33]

The Claims at issue also present solutions to problems in computerized digital asset management systems, including: redundancy, one to many element editing, and efficient digital asset *control* and *usage* by providing a capability to productively compare, reconcile, store, distribute and edit object oriented data, metadata, elements, properties and/or values by using Claim 1's recited *predetermined variance between an evaluated object and a predetermined standard and/or a user defined rule*.[8] [Pl.SMF, ¶¶ 18, 19] The use of predetermined variance between an evaluated object and a predetermined standard and/or a user defined rule solves numerous computer-related problems and achieves certain advantages [*see* Pl.SMF, ¶¶ 20 to 33], including *control* of user access and workflow by establishing "security-related privileges and rules effecting the invention's allowing or disallowing individual users or groups of users to

---

[7] See also the '713 Patent's "OBJECTS AND RELATIONSHIPS DATA MODEL ARCHIVE" of Figs. 2B, 3, and 4 referencing Element Data / Document Data, Element Metadata / Document Metadata, Element Properties / Document Properties, Element Property Values / Document Property Values, User Defined Element Rules / User Defined Document Rules and Element Version Data / Document Version Data and the associated detailed teaching of such Data, Metadata, Properties, Property Values, Version Data, and User Defined Rules. [Pl.SMF, ¶¶ 16, 17]

[8] Other than quoting Berkheimer's asserted claims, HP's motion brief does not once discuss the use of predetermined variance between an evaluated object and a predetermined standard and/or a user defined rule. Instead HP treats steps 3 and 4 of Claim 1 as mere "evaluating" and "presenting for manual reconciliation". This repudiates the Court's claim construction wherein the step 3 "evaluating the object structures in accordance with object structures previously stored in an archive" is construed as "analyzing the plurality of multi-part object structures obtained by parsing and comparing it with object structures previously stored in the archive *to determine if there is variance between the object and at least one of a predetermined standard and a user defined rule*." [Pl.SMF, ¶ 15]

access, view, edit, manipulate, replace, print, compile and download objects and object relationships and the invention's generated reports contained in the invention's document object model archive." [Pl.SMF, ¶ 27] HP ignores the problems the claims solve. The asserted claims' conversion of source code to a plurality of multi-part object structures *in conjunction with* predetermined variance between an evaluated object and at least one of a predetermined standard and a user defined rule creates finer granularity of enterprise wide control of digital assets and content, and provides a capability to efficiently compare, reconcile, store, distribute and edit object oriented components, elements, properties and/or values archived for use and re-use, and for retrieval, editing, recompiling and outputting. [Pl.SMF, ¶¶ 18, 19]

2. **The Claims Have the Requisite Degree of Specificity With No Risk of Preemption.**

By reciting a particular method of archival defined with meaningful elements and limitations, the challenged claims do not preempt any fundamental longstanding practice or abstract concept, and they have concrete and valuable effects in the field of computerized digital asset and content management systems. [Pl.SMF, ¶¶ 18 to 33, 39, 40 to 44] The foregoing discussed claim elements and limitations are recited with specificity, and thus place meaningful boundaries on the inventive concept, such that they avoid the concern that the patent "would risk disproportionately tying up the use of the underlying ideas." [Pl.SMF, ¶¶ 40 to 44] *Alic*e, 134 S.Ct. at 2354; *Mayo*, 132 S.Ct. at 1294; *Improved Search LLC v. AOL, Inc*., Civ. No. 15-262-SLR (D. Del. Mar. 22, 2016) (R.Ex.B) (claim limitations of extracting words from an internet search, performing a dialectal standardization of the words, and translation were sufficiently specific to "how interactions with the Internet are manipulated to yield a desired result."; *Network Congestion Solutions, LLC v. U.S. Cellular Corp.*, Civ. No. 14-903-SLR (D. Del. Mar. 22, 2016) (R.Ex.D) (claims are more than "resource control management" by addressing "the

problem of 'network congestion' in a defined environment" sufficient "to alleviate concerns of pre-emption."). The '713 Patent claims therefore improve computerized digital asset and content management systems without risk of abstract idea preemption. [Pl.SMF, ¶¶ 18 to 20, 40 to 43] The same does not preempt HP's motion brief p. 2 abstraction examples of "bookkeepers, accountants, auditors" and others practicing "fundamental, conventional business and accounting practice[s]" such as reorganizing "pages in documents" and manually reconciling errors in "checkbooks, bank statements, invoices, and financial accounts", as they have "for centuries if not millennia," in the course of maintaining their "file cabinets" and "double entry file systems."

### 3. The Claims Have Inventive Concept And Are Innovative Enough To "override the routine and conventional" Use Of The Computer.

The second step of the *Mayo / Alice* analysis examines the claimed features as a whole to determine whether they do significantly more than simply describe an abstract idea by containing an "inventive concept" to "transform" the claimed abstract idea into patent-eligible subject matter. *Alice*, 134 S.Ct. at 2357 (quoting *Mayo*, 132 S.Ct. at 1294, 1297-98). "A claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].' " *Id.* (quoting *Mayo*, 132 S.Ct. at 1297) (alterations in original). Those "additional features" must be more than "well-understood, routine, conventional activity." *Mayo*, 132 S.Ct. at 1298). The '713 claims recite such additional features and thus satisfy the inventive concept of *Alice* step 2.

Although § 101 presents a question of law, that legal conclusion "may contain underlying factual issues." *See Ultramercial I*, 722 F.3d at 1339 ("[T]he analysis under § 101, while ultimately a legal determination, is rife with underlying factual issues."). HP's arguments directed to the issue of what claim elements can be performed mentally, or readily with pencil and paper, is one such *factual* question. So too are HP's arguments as to what is generic,

9

conventional, known, routine, well-understood, etc. Yet HP offers *no* L.R. 56.1 evidence on such subjects and for that reason alone, HP's arguments must be stricken and its motion denied.

*First*, HP has not established that the challenged claims recite steps that were previously well-understood, routine, or conventional. HP establishes *no factual basis* for concluding the challenged claims' elements and limitations, individually <u>and</u> collectively, are ubiquitous. In fact, HP's motion is advanced as a "pure matter of law" without *any* L.R. 56.1 statement of material facts demonstrating the asserted claims are a routine and conventional use of the computer.[9]

*Second*, a claim element is not conventional at the time of the invention just because it may appear in prior art. When viewing claim elements *as an ordered combination*, a court should not ignore the presence of any element, even if the element, viewed separately, is abstract or potentially well-known.[10] Courts must be mindful of the fact that a series of conventional elements may together form an unconventional, patentable combination. *See, e.g., Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 961 (Fed. Cir. 1983) (Markey, C.J.) ("[V]irtually every claimed invention is a combination of old elements ...." (quoting *Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1566 (Fed. Cir. 1983)) ("[V]irtually every patent can be described as a 'combination patent.'"); Chief Judge Howard T. Markey, *Why Not the Statute?* 65 J. PAT. OFF. SOC'Y 331, 334 (1983) ("Only God works from nothing. Man must work with old elements.").

---

[9] See section IV, infra. All HP "record citations" should be stricken and not considered. In particular, Dr. Schonfeld's citation to dictionaries of 2001 and 2002, after the October 13, 2000 priority date of Berkheimer's '713 Patent, fails to establish parsers were "well-understood, routine, conventional" at the time of the invention. Further, record cites to Berkheimer's deposition are irrelevant because he invented the collective combination of the step elements of Claim 1 (as opposed to questions on <u>portions of individual steps</u>.)

[10] The Supreme Court in *Diamond v. Diehr*, 450 U.S. 175, 101 S.Ct. 1048 (1981), rejected the kind of "point-of-novelty" analysis HP's motion purports to conduct, and explained that "[i]t is inappropriate to dissect the claims into old and new elements and then to ignore the presence of the old elements in the analysis." *Diehr*, 450 U.S. at 188, 101 S.Ct. 1048 ("a new combination of steps in a process may be patentable," even if the constituent elements are well known). Thus, "the 'novelty' of any individual element or steps in a process...is of no relevance" when determining patentability in the § 101 analysis. *Id.*, 450 U.S. at 188–89, 101 S.Ct. 1048.

The challenged claims recite specific ways of transforming items from source code to object code to produce a plurality of multi-part object structures having searchable information tags and evaluating the same using previous stored object structures to determine if there is variance between the object and at least one of a predetermined standard and a user defined rule. [Pl.SMF, ¶ 15] The claims as a whole - their steps and limitations as recited - contain limitations on the scope of the inventions and provide the requisite degree of specificity and innovation because they describe *how* the *claimed* method of archiving operates in departure from the "routine and conventional" and thus discloses an "inventive concept." [Pl.SMF, ¶¶ 40 to 44]

In particular, the claimed elements of the invention are innovative and enable significant benefits and advantages [Pl.SMF, ¶¶ 20 to 33], including, control of user access and workflow by establishing "security-related privileges and rules effecting the invention's allowing or disallowing individual users or groups of users to access, view, edit, manipulate, replace, print, compile and download objects and object relationships." [Pl.SMF, ¶¶ 26, 27] The innovative aspects of the claims improve computerized digital asset and content management systems by enabling control of object and object relationship integrity, reducing redundancy, linking objects to enable one to many editing, and provide the capability to efficiently compare, reconcile, store, distribute and edit object oriented data, metadata, elements, properties and/or values archived for use and re-use and for retrieval, editing, recompiling and outputting. [Pl.SMF, ¶18, 19, 20] Such improvements to computer functionality are precisely the kind of improvements that have been found patent eligible under *Alice*.

For example, in *Smartflash*, the asserted claims addressed "controlling a user's access to data . . . and restricting access according to use rules." *Smartflash*, 2015 WL 661174 at *9. (R.Ex.J) The Court held that the claims were patent-eligible under *Alice* step 2, reasoning that

the asserted claims recite *specific ways* of managing access to digital content data using use status data and use rules in distinct memory types that amount to significantly more than the underlying abstract idea. *Id.* (emphasis added). The challenged claims' recitation of predetermined variance between an evaluated object and a predetermined standard or a user defined rule are similar to the "specific ways" of improving computer functionality found patent eligible in *Smartflash*. [Pl.SMF, ¶¶ 23 to 27]

Similarly, *Contentguard* makes clear that *specific ways* of controlling access to information can establish an inventive concept, so long as they do not foreclose *all* ways of controlling access nor recite wholly conventional steps. *Contentguard*, 2015 WL 5853984, at *6. (R.Ex.I) (the Patents-in-Suit disclosed particular solutions for the problem of "enforcing usage rights and restrictions on digital content" that did not foreclose other ways of solving the problem, and recited a specific series of steps departing from the "routine and conventional way of managing digital rights.")

*Third*, HP *individually* attacks the "evaluating" and "presenting" steps of Claim 1 arguing, without L.R. 56.1 support, that they can be performed mentally by humans or with pen and paper. Yet, the "mental process" analysis is not conducted by examining each individual claim element in isolation, rather it must be established that *every claim element* can be performed in a person's mind. This requires that "people, aware of each step, can and regularly do perform [each claim element] in their heads." *TQP Dev., LLC v. Intuit Inc.*, 2:12-cv-180-WCB, 2014 WL 651935, at *6 (E.D. Tex Feb. 19, 2014) (R.Ex.P). HP makes no L.R. 56.1 showing that *every step* of the challenged claims can be performed in a person's head. The claimed parser and parsing elements require specific source to object code programming, which are steps that cannot be performed in a person's mind. [Pl.SMF, ¶¶ 15, 37, 38]  The claims further require a parsing transformation of source code into an object code plurality of *multi-part*

*object structures wherein portions of the structures have searchable information tags*. This tag limitation also cannot be performed in a person's mind. [Pl.SMF, ¶¶ 37, 38]

*Finally*, HP does not explain how the human mind or pen and paper performs steps 3 and 4 of Claim 1 *while achieving the same beneficial results*. *See California Inst. Tech. v. Hughes*, 59 F.Supp.3d 994 at 995 ("Pencil-and-paper analysis can mislead courts into ignoring a key fact: although a computer performs the same math as a human, a human cannot always achieve the same results as a computer.") When dealing with object oriented data, metadata, properties, values, etc., the human mind cannot achieve the invention's benefits and advantages and HP cites no evidence to the contrary. [Pl.SMF, ¶¶ 20 to 33]

### 3. The Dependent Claims Add Further Inventive Concepts.

A §101 analysis requires the court to look at <u>each</u> claim as a whole. See *Circuit Check Inc. v. QXQ Inc.*, 795 F.3d 1331, 1337 (Fed. Cir. 2015); *Exergen Corp. v. Kaz USA, Inc.*, Case No. 13-10628-RGS, 2015 WL 8082402 at *5 (D. Mass. Dec. 7, 2015) (R.Ex.Q) ("impermissible [to] bypass the required claim-by-claim analysis"). Independent Claim 1, the broadest in scope, is not "representative" of all its dependent claims due to their distinct additional claim limitations. [Pl.SMF, ¶¶ 40 to 43, 47] For example, Claim 5 requires selectively editing an object structure linked to other structures to thereby effect a one-to-many change in a plurality of archived items. Such additional elements and limitations of all challenged dependent claims both belie the HP abstraction of reorganizing data for reconciliation and add inventive concepts as per the testimony of Plaintiff's expert, Dr. Peter Nelson. [Pl.SMF, ¶¶ 40 to 43, 47]

### C. THE ASSERTED CLAIMS ARE PATENT-ELIGIBLE UNDER THE MACHINE-OR-TRANSFORMATION TEST.

"While the Supreme Court has held that the machine-or-transformation test is not the sole test governing § 101 analyses, *Bilski*, 561 U.S. 593, 604 (2010), that test can provide a 'useful

clue' in the second step of the *Alice* framework." *Ultramercial, Inc. v. Hulu*, LLC, 772 F.3d 709, 716 (Fed. Cir. 2014). Under the machine-or-transformation test, "[a] claimed process is surely patent-eligible under § 101 if: (1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *In re Bilski*, 545 F.3d 943, 954 (Fed. Cir. 2008) (en banc).

### 1. The challenged claims are patent-eligible under the machine prong.

Under the first prong, the Federal Circuit has found to satisfy the machine-or-transformation test, "a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada* (U.S.), 687 F.3d 1266, 1278 (Fed. Cir. 2012). Under this formulation, the challenged claims satisfy the "machine" prong of the test because the claimed parser, parsing, and tagging specify a plurality of multi-part object structures that are evaluated with prior structures to determine predetermined variance between an evaluated object and at least one of a predetermined standard and a user defined rule." [Pl.SMF, ¶¶ 18, 19, 34 to 38] Because a computer is integral to the claimed invention facilitating the process in a way that a person making calculations or computations could not, and because the claimed features are "beyond well-known "purely conventional" generic computer usage - the claims satisfy the "machine" prong, and therefore are patent-eligible. [Pl.SMF, ¶¶ 15, 34 to 38]

### 2. The challenged claims are patent-eligible under the transformation prong.

Because the claimed methods involve the transformation of an item (from source code to object code) into a plurality of multi-part object structures wherein portions of the structures have searchable information tags - a different state or thing - for further processing, they satisfy the transformation test, and therefore are patent-eligible. [Pl.SMF, ¶¶ 15, 37, 38]

14

## IV.     HP'S MOTION FAILS UNDER LOCAL RULE 56.1

In memoranda of law filed in support of, or in opposition to, motions for summary judgment, parties are *required* to cite to the specific Local Rule 56.1 statement or statements of fact in support of their arguments, *not to the record directly. See*, *Mervyn v. Nelson Westerberg, Inc.*, --- F.Supp.3d ---, 2015 WL 6792104 (N.D. IL.2015) (R.Ex.R) (extensively discussing the past fifteen years of N.D. IL. district decisions consistently articulating the requirement). Movants, like HP,  who fail to comply can and should expect their motions to be denied. See *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015) ("This Court has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1.") (citing cases).

All record citations of HP's motion memorandum must be stricken and disregarded. *LaSalvia v. City of Evanston,* 806 F.Supp.2d 1043, 1046 (N.D.IL. 2011) ("The Court also disregards any citations to the record in the parties' legal memoranda that do not reference their Local Rule 56.1 Statements of Fact."). Record citation abrogates Plaintiff's L.R. 56.1(b)(3)(B) right of response. Indeed HP's Statement of Material Fact contains no "facts" supportive of its memorandum arguments[11] and leaves an evidentiary record insufficient to support summary judgment. In contrast, Plaintiff's L.R. 56.1(b) Response to HP's Statement of Material Facts and Additional Facts Requiring Denial Of Summary Judgment details why summary judgment is unwarranted.

## V.     CONCLUSION

For all the foregoing reasons, Berkheimer respectfully requests that the Court deny HP's Motion for Summary Judgment.

---

[11]  HP's L.R. 56.1(a) Statement Of Material Facts relies on a listing of the patent claims and maintains "Patent eligibility under 35 U.S.C. §101 is a question of law determined by examining the patent claims." No facts are advanced therein to establish the '713 Claim steps, individually or collectively, were previously know, let alone routine, conventional, or a longstanding practice. Thus, mixed issues of law and fact, and genuine disputed issues of material fact remain and HP's motion should be denied.

15

Plaintiff Steven E. Berkheimer

By: _____ /s/ James P. Hanrath
                         One of his Attorneys

James P. Hanrath (IL. ARDC No. 3123374)
jhanrath@muchshelist.com

Michael J. Femal (IL. ARDC No. 0792012)
mfemal@muchshelist.com

MUCH SHELIST, P.C.
191 North Wicker Drive, Suite 1800
Chicago, Illinois 60606
(312) 521-2000

Paul J. Skiermont (Bar Id. 6278464)
pskiermont@skiermontderby.com

Skiermont Derby LLP
2200 Ross Avenue, Suite 4800W
Dallas, Texas 75201
(214) 978-6600

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Plaintiff's Response In Opposition to HP's Motion For Summary Judgment Under 35 U.S.C. § 101 was served via CM/ECF on May 5, 2016 upon all counsel of record.

/s/ James P. Hanrath

16