**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **STEVEN E. BERKHEIMER,**<br><br>**Plaintiff,**<br><br>v.<br><br>**HEWLETT-PACKARD COMPANY,**<br><br>**Defendant.** | **No. 1:12-cv-09023**<br><br>**Judge John Z. Lee** |

**PLAINTIFF'S LOCAL RULE 56.1(b) RESPONSE TO HEWLETT-PACKARD'S
STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT UNDER 35 U.S.C. § 101 AND STATEMENT OF
ADDITIONAL FACTS REQUIRING DENIAL OF SUMMARY JUDGMENT**

Plaintiff Steven E. Berkheimer pursuant to Local Rule 56.1(b) submits the following

Response to Hewlett-Packard's ("HP") Statement of Undisputed Material Facts in support of its

Motion for Summary Judgment under 35 USC § 101 and his Additional Facts Requiring Denial

of Summary Judgment. This document is supported by the attached Exhibit 1 Declaration of

Michael J. Femal, the attached Exhibit 2 true and accurate copy of U.S. Patent No. 7,477,713

and its USPTO Certificate of Correction, the attached Exhibit 3 true and accurate copy of the

"Expert Rebuttal Report of Peter Nelson Concerning Alleged Invalidity of U.S. Patent

7,447,713", and the attached Exhibit 4 true and accurate copy of MEMORANDUM OPINION

AND ORDER, docket document 123 herein filed August 21, 2015.

## I. Response to HP's L.R. 56.1(a)(3)(A) & (B) Statement of Material Facts

### The Parties

1.   Plaintiff Steven. E. Berkheimer ("Berkheimer") is an individual and former resident of Libertyville, Illinois.  Dkt. 20, ¶ 2.

>   **Response:** Not controverted.

2.   Defendant Hewlett-Packard Company is a Delaware corporation with its principal place of business at 3000 Hanover Street, Palo Alto, California 94304-1185.  Dkt. 37, ¶ 3. Defendant is now known as HP Inc. with its principal place of business at 1501 Page Mill Road, Palo Alto, CA 94304.

>   **Response:** Upon information and belief, not controverted.

### Jurisdiction and Venue

3.   This action arises under the Patent Laws of the United States, Title 35, United States Code, Section 1 et seq.  Dkt. 20, ¶ 1; Dkt. 37, ¶ 1.

>   **Response:** Not controverted.

4.   This Court has subject matter jurisdiction over Berkheimer's patent infringement claims under 28 U.S.C.§§ 1331 and 1338(a) because this action arises under the patent laws of the United States, including 35 U.S.C. § 271 et seq.  Dkt. 20, ¶ 4; Dkt. 37, ¶4

>   **Response:** Not controverted.

5.   HP does not contest the Court's exercise of personal jurisdiction over it, nor does HP contest venue.  Dkt. 37, ¶¶ 5-7.

>   **Response:** Not controverted.

### Asserted Patent and Claims

6.   United States Patent No. 7,447,713 (the '713 Patent), is entitled "System and Method for Archiving and Outputting Documents or Graphical Items" and originally issued to Berkheimer on November 4, 2008.  Dkt. 20, ¶ 7; Dkt. 37, ¶ 7.

>   **Response:** Not controverted.

7.   On April 17, 2014, pursuant to the Local Patent Rules, Berkheimer served HP with Final Infringement Contentions asserting infringement of claims 1-7, 9, and 10-19 of the '713 Patent. Attached as Exhibit 1, p. 2.

     **Response:** Not controverted.

8.   On August 21, 2015, this Court entered its Markman order finding that claims 10 – 19 were indefinite under 35 U.S.C. § 112.  (Dkt. 123).  Thus, the remaining asserted claims at issue in this case are claims 1 – 7 and 9 of the '713 Patent.  Dkt. 20, Exh. A.

     **Response:** Not controverted.

9.   The asserted claims of the '713 Patent are as follows:

1. A method of archiving an item comprising in a computer processing system:

presenting the item to a parser;

parsing the item into a plurality of multi part object structures wherein portions of the structures have searchable information tags associated therewith;

evaluating the object structures in accordance with object structures previously stored in an archive;

presenting an evaluated object structure for manual reconciliation at least where there is a predetermined variance between the object and at least one of a predetermined standard and a user defined rule.

2. The method as in claim 1 wherein the respective structure can be manually edited after being presented for reconciliation.

3. The method as in claim 1 which includes, before the parsing step, converting an input item to a standardized format for input to the parser.

4. The method as in claim 1 which includes storing a reconciled object structure in the archive without substantial redundancy.

5. The method as in claim 4 which includes selectively editing an object structure, linked to other structures to thereby effect a one to many change in a plurality of archived items.

6. The method as in clam 5 which includes compiling an item to be output from the archive, wherein at least one object type structure of the item has been edited during the one to many change and wherein the compiled item includes a plurality of linked object type structures converted into a predetermined output file formal.

7. The method as in claim 6 which includes compiling a plurality of items wherein the at least one object type structure had been linked in the archive to members of the plurality.

9. The method as in claim 1 which includes forming object oriented data structures from the parsed items wherein the data structures include at least some of item properties, item property values, element properties and element property values.

   **Response:** Not controverted.

10. Patent eligibility under 35 U.S.C. § 101 is a question of law determined by examining the patent claims. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S.Ct. 2347 (2014). In this instance, there are no facts in dispute which are material to the issue of Section 101 patent eligibility.

   **Response:** Controverted. Although the issue of invalidity under section 101 presents a

question of law, that legal conclusion "may contain underlying factual issues." See *Accenture*

*Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340–41 (Fed.Cir. 2013);

*Ultramercial, Inc. v. Hulu LLC*, 722 F.3d 1335, 1339 (Fed.Cir. 2013) (*Ultramercial I*) ("[T]he

analysis under § 101, while ultimately a legal determination, is rife with underlying factual

issues."); *TQP Dev., LLC v. Intuit Inc.*, No. 2:12-CV-180-WCB, 2014 WL 651935, at *7 (E.D.

Tex. Feb. 19, 2014).

   There are facts in dispute which are material to the issue of Section 101 patent eligibility,

including, for example, (1) whether the asserted claim elements and limitations can, individually

and/or collectively, be performed mentally or readily with pencil and paper, (2) whether the

asserted claim elements and limitations are, individually and/or collectively, known, generic,

conventional, routine, well-understood, or a longstanding or fundamental economic or business

practice, and (3) whether the asserted claim elements and limitations (as informed by the patent

specification) are, individually and/or collectively, addressed a problem and solution rooted in

computer technology, are specific enough to preclude the risk of pre-emption, and are innovative

enough to "override the routine and conventional" use of the computer. See further, Plaintiff's

Statement Of Additional Facts Requiring the Denial of Summary Judgment set forth below.

4

## II.  Plaintiff's Statement Of Additional Facts Requiring the Denial of Summary Judgment

*Facts Regarding United States Patent No. 7,447,713*

11.   United States Patent No. 7,447,713 (the "'713 Patent"), issued November 4, 2008 from application number 09/977,502 filed October 15, 2001 and a priority provisional application number 60/240,179 filed October 13, 2000 to inventor Steven E. Berkheimer, generally concerns an object oriented component based approach to digital asset and enterprise content management systems including the processing and archiving of digital files, linked documents, and graphical items. [Exhibit 2 '713 Patent, cover page; Exhibit 3 Nelson Invalidity Rebuttal Report, ¶ 51]

12.  The '713 Patent FIELD OF THE INVENTION states:

> "The invention pertains  to digital asset management systems including the processing and archiving of files. More particularly, the invention  pertains to  processing  to  form object-oriented representations of files received in a  standardized  format.  The  object  oriented  representations  can  be graphically  manipulated  and then  entered  into an archival data base with minimal  redundancy  and  with  relationships  maintained  among  the elements  of the  item  for  subsequent retrieval, editing, recompiling  and outputting the file." [Exhibit 2 '713 Patent, 1:10-18]

13.   The ABSTRACT of the "713 Patent states:

> "Systems and methods for translating document files to a common input format  can  then  parse  the elements of  such  documents into an object oriented  document  model  with  linking tags  associated with each of the objects, element properties and element property values. The system and method also provide a capability to efficiently compare, reconcile, store, distribute and edit such object oriented components, elements, properties

and/or values. Archived documents or graphical items can be recompiled and output in a predetermined, standard format." [Exhibit 2 '713 Patent, cover page ABSTRACT]

14.  Claim 1 of the '713 Patent states: "A method of archiving an item in a computer processing system comprising:

presenting the item to a parser;

parsing the item into a plurality of multi-part object structures wherein portions of the structures have searchable information tags associated therewith;

evaluating the object structures in accordance with object structures previously stored in an archive;

presenting an evaluated object structure for manual reconciliation at least where there is a predetermined variance between the object and at least one of a predetermined standard and a user defined rule. [Exhibit 2 '713 Patent, Claim 1, 47:9-21 as corrected by Certificate of Correction]

15.  As construed by this Court, the Claim 1 "parser" is construed as "A program that dissects and converts source code into object code", "parsing" is construed as "Using a program that dissects and converts source code into object code to dissect and convert", and the Claim 1 "evaluating the object structures in accordance with object structures previously stored in an archive" step  is construed as "analyzing the plurality of multi-part object structures obtained by parsing and comparing it with object structures previously stored in the archive to determine if there is variance between the object and at least one of a predetermined standard and a user defined rule". The '713 patent claims recite a specific way of transforming items from source code to object code to produce a plurality of multi-part object structures having searchable

6

information tags and evaluating the same in accordance with previous stored object structures and a predetermined variance between an evaluated object and a predetermined standard or a user defined rule. [Exhibit 4 Dkt. 123, p. ID 2213; Exhibit 2 '713 Patent, Claim 1, 47:9-21 as corrected by Certificate of Correction]

16.  The '713 Patent describes, in part, the Claim 1 "plurality of multi-part object structures" when stating:

> "With respect to FIGS. 3, 4, the system 10, 10' stores objects and object relationships utilizing a multi-element data structure which incorporates element specific metadata 60a, element properties 60b and element property values 60c. Additionally, the data structure incorporates document-specific data and metadata 62a, document properties 62b and document property values 62c. Tags associated with object oriented data structures by the parser and tagger 104 are carried therewith and enable linking and retrieval of object oriented data structures from archive 14."
> [Exhibit 2 '713 Patent, 17:4-12]

17. The '713 Patent's "OBJECTS AND RELATIONSHIPS DATA MODEL ARCHIVE" of Figs. 2B, 3, and 4 references Element Data / Document Data, Element Metadata / Document Metadata, Element Properties / Document Properties, Element Property Values / Document Property Values, User Defined Element Rules / User Defined Document Rules and Element Version Data / Document Version Data and associates the same with detailed teaching of such Data, Metadata, Properties, Property Values, Version Data, and User Defined Rules. [Exhibit 2 '713 Patent, Figs. 2B, 3, and 4; 8:21 to 9:61]

18.  The plurality of multi-part object structures of the asserted '713 Claims 1 to 7 and 9  in conjunction with predetermined variance between an evaluated object and at least one of a predetermined standard and a user defined rule allows for a finer granularity of enterprise wide control of digital assets and content. Such an object oriented level of content management offers control of object and object relationship integrity, reduces redundancy, links objects with one to many editing, and provides a capability to efficiently compare, reconcile, store, distribute and edit object oriented components, elements, properties and/or values archived for use and re-use and for retrieval, editing, recompiling and outputting. [Exhibit 2 '713 Patent, cover page ABSTRACT; 1:10-18; 2:66-3:8; 4:50 to 5:54 and 14:18 to 15:49; 8:21 to 9:61; 16:41-51; 17:4-12; 18:2-9; Exhibit 3 Nelson Invalidity Rebuttal Report, ¶ 51]

19.  The asserted Claim 1, and its directly or indirectly dependent claims 2 to 7 and 9, inclusive of a "plurality of multi-part object structures wherein portions of the structures have searchable information tags" in relation to Claim 1's recited predetermined variance between an evaluated object and a predetermined standard and/or a user defined rule, are rooted in a computer technology, provide a solution to computerized digital asset management system problems of redundancy, one to many element editing, and efficient digital asset usage by providing a capability to efficiently compare, reconcile, store, distribute and edit object oriented data, metadata, elements, properties and/or values. [Exhibit 2 '713 Patent, cover page ABSTRACT; 1:10-18; 2:66-3:8; 4:50 to 5:54 and 14:18 to 15:49; 8:21 to 9:61; 16:41-51; 17:4-12;  18:2-9; Exhibit 3 Nelson Invalidity Rebuttal Report, ¶¶ 51, 80, 81]

20.  The '713 Patent inventions accomplishes numerous improvements and practical benefits and advantages in the field of computer-implemented digital asset and content management systems. [Exhibit 2 '713 Patent, 4:50 to 5:54 and 14:18 to 15:49; Exhibit 3 Nelson Invalidity Rebuttal Report, ¶ 80]

21. The Claim 1 recital of a plurality of multi-part object structures in relation to predetermined variance between an evaluated object and a predetermined standard and/or a user defined rule enables:

> "users to establish rules and standards to used as the basis of differentiating, clarifying, correcting and eliminating redundancies associated with objects and object relationships derived from imported documents prior to their being archived in the invention's document object model archive;". [Exhibit 2 '713 Patent, 5:5-10; 14:38-43; Exhibit 3 Nelson Invalidity Rebuttal Report, ¶ 80 ]

22.  The Claim 1 recital of a plurality of multi-part object structures in relation to predetermined variance between an evaluated object and a predetermined standard and / or a user defined rule enables:

> "users to establish circumstances, characteristics and criteria, derived from the invention's analysis and comparison of imported documents and relating to user-established rules and standards, whereupon object and object relationship differentiation, clarification, correction and redundancy elimination will be effected by manual or automated means;".  [Exhibit 2 '713 Patent, 5:11-17; 14:44-50; Exhibit 3 Nelson Invalidity Rebuttal Report, ¶ 80]

23. The Claim 1 recital of a plurality of multi-part object structures in relation to predetermined variance between an evaluated object and a predetermined standard and / or a user defined rule enables:

> "users to establish security-related privileges and rules effecting the invention's allowing or disallowing individual users or groups of users to access, view, edit, manipulate, replace, print, compile and download objects and object relationships and the invention's generated reports contained in the invention's document object model archive." [Exhibit 2 '713 Patent, 5:23-29; 14:56-62; Exhibit 3 Nelson Invalidity Rebuttal Report, ¶ 80]

24. The Claim 1 recital of a plurality of multi-part object structures in relation to predetermined variance between an evaluated object and a predetermined standard and / or a user defined rule enables:

> "users to establish circumstances, characteristics and criteria associated with instances of user's accessing, viewing, editing, manipulating, replacing, printing, compiling and downloading archived objects and object relationships to be contained in reports generated, distributed and archived by the invention to facilitate managing the invention's use;" [Exhibit 2 '713 Patent, 5:30-36; 14:63-15:2; Exhibit 3 Nelson Invalidity Rebuttal Report, ¶ 80]

25. The Claim 1 recital of a plurality of multi-part object structures in relation to predetermined variance between an evaluated object and a predetermined standard and / or a user defined rule enables:

> "users to establish circumstances, characteristics and criteria associated with instances of user's editing, manipulating, replacing, compiling and

downloading archived objects and object relationships to be contained in reports generated, distributed and archived by the invention to facilitate the management of object and object relationship versions over time; ['713 Patent, 5:37-43; 15:3-9; Exhibit 3 Nelson Invalidity Rebuttal Report, ¶ 80]

26. The Claim 1 recital of a plurality of multi-part object structures in relation to predetermined variance between an evaluated object and a predetermined standard and / or a user defined rule enables:

"users to establish rules and standards for the number of instances of user's editing, manipulating, replacing, compiling and downloading archived objects and object relationships that are to be retained in the invention's import reconciliation records." [Exhibit 2 '713 Patent, 5:44-48; 15:10-14; Exhibit 3 Nelson Invalidity Rebuttal Report, ¶ 80]

27. The Claim 1 recital of a plurality of multi-part object structures in relation to predetermined variance between an evaluated object and a predetermined standard and / or a user defined rule enables control of user access and workflow by establishing:

"security-related privileges and rules effecting the invention's allowing or disallowing individual users or groups of users to access, view, edit, manipulate, replace, print, compile and download objects and object relationships and the invention's generated reports contained in the invention's document object model archive." [Exhibit 2 '713 Patent, 5:23-29; 14:56-62; Exhibit 3 Nelson Invalidity Rebuttal Report, ¶ 80] and

"circumstances, characteristics and criteria associated with instances of user's accessing, viewing, editing, manipulating, replacing, printing, compiling and downloading archived objects and object relationships to be

contained in reports generated, distributed and archived by the invention to facilitate managing the invention's use;". [Exhibit 2 '713 Patent, 5:30-36; 14:63-15:2; Exhibit 3 Nelson Invalidity Rebuttal Report, ¶ 80]

28. The Claim 1 recital of a plurality of multi-part object structures in relation to predetermined variance between an evaluated object and a predetermined standard and / or a user defined rule enables object and object relationship clarification and differentiation, object and object relationship integrity and accuracy, and identification of objects and object relationship redundancy because:

"Objects and relationships which are being imported are then analyzed and compared in accordance with user established rules and standards pertaining to object and object relationship clarification and differentiation. Objects and relationships being imported are analyzed and compared according to user established rules and standards pertaining to integrity and accuracy. Objects and relationships being imported are also analyzed and compared according to user established rules pertaining to redundant objects and object relationships." [Exhibit 2 '713 Patent, 2:66-3:8; Exhibit 3 Nelson Invalidity Rebuttal Report, ¶ 51]

29. The Claim 1 recital of a plurality of multi-part object structures in relation to predetermined variance between an evaluated object and a predetermined standard and / or a user defined rule enables objects to be:

"manually displayed along with element properties and element property values or, document properties and document property values for manual correction, editing and reconciliation." [Exhibit 2 '713 Patent, 3:11-14]

30. The Claim 1 recital of a plurality of multi-part object structures in relation to predetermined variance between an evaluated object and a predetermined standard and / or a user defined rule enables User Defined Document Rules and User Defined Element Rules that:

> "identify the document, document property, document property values and/or element, element properties and element property values," or "any combination of properties and/or values, that constitute matching criteria for applying document or element rules. Additionally the user/administrator has the ability to designate any combination of properties and/or values as constituting a rule" [Exhibit 2 '713 Patent, 9:48-61]

31. The Claim 1 recital of a plurality of multi-part object structures in relation to predetermined variance between an evaluated object and a predetermined standard and / or a user defined rule enables objects and relationships to be:

> "analyzed and compared in accordance with user-established rules and standards for purposes of clarification and differentiation of object and object relationships. The objects and relationships in the input repository 52 can also be analyzed and compared using user-established rules and standards pertaining to object and relationship integrity and accuracy. Additionally, objects and relationships in the input repository 52 can be analyzed and compared to objects previously entered into the archive 14 in accordance with user-established rules to minimize redundant objects and object relationships which are stored in the archive 14." [Exhibit 2 '713 Patent, 16:41-51; Exhibit 3 Nelson Invalidity Rebuttal Report, ¶ 51]

32. The Claim 1 recital of a plurality of multi-part object structures in relation to predetermined variance between an evaluated object and a predetermined standard and / or a user defined rule enables efficiencies, including in part:

13

"By eliminating redundancy in the archive 14, system operating efficiency will be improved, storage costs will be reduced and a one-to-many editing process can be implemented wherein a singular linked object, common to many documents or files, can be edited once and have the consequence of the editing process propagate through all of the linked documents and files. The one-to-many editing capability substantially reduces effort needed to up-date files..." [Exhibit 2 '713 Patent, 16:52-59; Exhibit 3 Nelson Invalidity Rebuttal Report, ¶ 51]

33. Some examples of document components not necessarily available in imported documents and assigned by the Claim 1 "parser" include:

"unique numerical document identity,

unique numerical document version identity,

pointer reference to all of each document's version and component fields,

version start and end date/time,

identity of the user executing a version,

pointer references to the document component fields effected by version executions,

the workflow step associated with the document version unique numerical element identity,

pointer reference to Element Version Metadata,

pointer reference to documents in the archive in which the element appears, and

pointer reference to associated element properties." [Exhibit 2 '713 Patent, 4:24-49]

***Facts Regarding the Expert Rebuttal Report of Peter C. Nelson on Alleged Invalidity of U.S. Patent 7,447,713 under 35 USC § 101***

34.  The '713 Patent Claim 1 concerns parsing of standardized format documents or graphical items into object-oriented representations including data and metadata on document and element components, element properties and element property values that are tagged for subsequent identification and linking purposes that can be manipulated and entered into an archival database with relationships maintained among the elements of the item for subsequent retrieval, editing, recompiling and outputting of the item. [Exhibit 3 Nelson Invalidity Rebuttal Report, ¶ 51]

35.  The parsed objects and associated relationships are analyzed and compared to objects and relationships derived from other documents or items that are part of the archive so as to allow importing of objects and relationships or to correct and edit objects and relationships in accordance with user established rules and/or standards pertaining thereto. [Exhibit 3 Nelson Invalidity Rebuttal Report, ¶ 51]

36.  The objects and relationships can be modified and utilized in various combinations, via multiple methods, to achieve object integrity and one-to-many modification and concurrent updating of the archive. [Exhibit 3 Nelson Invalidity Rebuttal Report, ¶ 51]

37.  The asserted method claims all involve a transformation of an item into a different structure, a different state or thing, namely the parsing of an item (from source code into object code) into a plurality of multi-part object structures wherein portions of the structures have searchable information tags associated therewith. A human, inclusive of one of ordinary skill in the art at the time of the invention, would not be able to perform such a parsing transformation of source code

into object codes in his or her mind. A person of ordinary skill in the art at the time of the invention would understand that the claimed method could not be performed in the human mind but would require the parser and parsing and tagging as called for in the claims. [Exhibit 3 Nelson Invalidity Rebuttal Report, ¶ 69]

38. The asserted '713 Patent method claims are drawn to a method which transforms an item presented to a parser into a different structure, a different state or thing, namely the parsing of an item (from source code into object code) into a plurality of multi-part object structures wherein portions of the structures have searchable information tags associated therewith. This is not a function that can be performed by a human mind or manually by human using pen and paper. This is true especially given a variety of differing input items that could be presented to the parser. [Exhibit 3 Nelson Invalidity Rebuttal Report, ¶ 74]

39. The asserted '713 Patent method claims are not so broad as to ensnare fundamental truths or principles that would pre-empt basic tools of the technical work. [Exhibit 3 Nelson Invalidity Rebuttal Report, ¶ 75]

40. The asserted '713 Patent method claims cover "more than a mere abstract idea," and involve "numerous limitations that narrow the scope of the patent", namely the following underlined matter:

> 1. A method of archiving an item in a computer processing system comprising:
> presenting the item to a parser;

parsing the item into a plurality of multi part object structures wherein portions of the structures have searchable information tags associated therewith;

evaluating the object structures in accordance with object structures previously stored in an archive;

presenting an evaluated object structure for manual reconciliation at least where there is a predetermined variance between the object and at least one of a predetermined standard and a user defined rule.

2. The method as in claim 1 wherein the respective structure can be manually edited after being presented for reconciliation.

3. The method as in claim 1 which includes, before the parsing step, converting an input item to a standardized format for input to the parser.

4. The method as in claim 1 which includes storing a reconciled object structure in the archive without substantial redundancy.

5. The method as in claim 4 which includes selectively editing an object structure, linked to other structures to thereby effect a one to many change in a plurality of archived items.

6. The method as in clam 5 which includes compiling an item to be output from the archive, wherein at least one object type structure of the item has been edited during the one to many change and wherein the compiled item includes a plurality of linked object type structures converted into a predetermined output file formal.

7. The method as in claim 6 which includes compiling a plurality of items wherein the at least one object type structure had been linked in the archive to members of the plurality.

9. The method as in claim 1 which includes <u>forming object oriented data structures from the parsed items wherein the data structures include at least some of item properties, item property values, element properties and element property values</u>.  [Exhibit 3 Nelson Invalidity Rebuttal Report, ¶ 76-77]

41.   The foregoing underlined claim elements and limitations narrow the scope of the asserted '713 Patent method patent claims so as to not encompass fundamental truths or principles that would preempt basic tools of technical work or involve abstract ideas fundamental to the ubiquitous use of the Internet or computers generally. Rather, the foregoing underlined claim elements and limitations provide "something more" than a patent upon an ineligible abstract concept itself and have "inventive concept". [Exhibit 3 Nelson Invalidity Rebuttal Report, ¶ 77]

42.   The asserted '713 Patent method claims do not cover "an abstract concept" and have "something more" than a mere abstract idea. The foregoing underlined elements and limitations of the claims include "additional elements" or "meaningful limitation[s]" that individually or collectively transforms the nature of the claims into patent eligible application. Such "additional elements" or "meaningful limitation[s]" provide inventive concept, namely "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself."  [Exhibit 3 Nelson Invalidity Rebuttal Report, ¶ 78]

43.  The asserted '713 Patent method claims are patent eligible because they improve an existing technological process, not because they were implemented on a computer. The '713 Patent specification at Col. 4 line 50 to Col. 5 line 59 and at Col. 14 line 18 to Col. 15 line 49 sets forth

such improvements and practical benefits and advantages of the invention. [Exhibit 3 Nelson Invalidity Rebuttal Report, ¶ 80]

44. Figure 1 and its computer 18 is highly refined by the block, functional, and flow diagrams of Figures 2A, 2B, 2C, 2D, 3, 4, SA and 5B and their corresponding specification descriptions which provides detailed structure supporting the asserted '713 Patent method claims and their attendant improvements and practical benefits and advantages. The asserted '713 Patent method claims are not an abstract idea applied to a conventional general purpose computer. [Exhibit 3 Nelson Invalidity Rebuttal Report, ¶ 81, 82]

45. Dr. Schonfeld's Invalidity Report at ¶ 102 states that:

> "In my opinion, each of the claims that the asserted claims are "drawn to the abstract idea of archiving data, wherein new data items to be archived are analyzed and compared to previously stored data. Fundamentally, this is an abstract idea that could be completed manually by human using pen and paper. ... it would not be uncommon for a human to examine and compare portions of new documents to stored portions of documents to identify variances when archiving new documents. Such action would practice common sense because the person would wish to avoid archiving duplicates of portions of the same documents. One of skill in the art would not find anything else in the claims that adds a meaningful limitation to this underlying abstract idea.". [Exhibit 3 Nelson Invalidity Rebuttal Report, ¶ 67]

46. Dr. Peter Nelson disagrees with Dr. Schonfeld's above ¶ 102 statements stating:

> "I disagree, and one of ordinary skill in the art at the time of the invention would disagree, that the asserted method claims are drawn to such an

abstract idea because the method claims at issue specifically define subject matter well beyond Dr. Schonfeld's above characterization. The claims at issue are not "the abstract idea of archiving data, wherein new data items to be archived are analyzed and compared to previously stored data" because much more is involved. …The above example bears no resemblance to the asserted '713 Patent method claims. A file cabinet human comparison of a new document to a previously stored document is not the subject matter of the asserted '713 Patent method claims. … In order to argue the claims at issue are patent ineligible as "an abstract idea", Dr. Schonfeld recasts the asserted '713 Patent method claims into an abstraction they are not." [Exhibit 3 Nelson Invalidity Rebuttal Report, ¶¶ 68, 71, 72]

47. Dr. Peter Nelson further disagrees with Dr. Schonfeld stating:

> "Further, Dr. Schonfeld's Report at several instances (see, for example at paragraphs 104, 107, 112 mischaracterizes the asserted Claim 1 as only requiring "presenting", "parsing", "evaluating", and "presenting" steps for "data" without specific accounting for the elements and limitations defined and set forth in the Claim 1 steps. Further the "data" used in Dr. Schonfeld's abstraction (see, e.g., his paragraph 101) is not the same as and is distinct and disparate from the transformed parsed plurality of multi-part object structures wherein portions of the structures have searchable information tags associated therewith and such object structures are evaluated in accordance with object structures previously stored in the archive wherein an evaluated object structure is presented for manual reconciliation at least where there is a predetermined variance between the object at least one of a predetermined standard and a user defined rule. Moreover, the asserted dependent method claims 2 to 7 and 9 set forth above further define specific elements and limitations unaccounted for in Dr. Schonfeld's opinion of patent-ineligible subject matter." [Exhibit 3 Nelson Invalidity Rebuttal Report, ¶ 79]

48. Dr. Peter Nelson concludes that the asserted method claims 1 to 7, and 9 of the '713 Patent are directed to patent eligible subject matter. [Exhibit 3 Nelson Invalidity Rebuttal Report, ¶ 57]

Plaintiff Steven E. Berkheimer

By:/s/    James P. Hanrath_____
One of his Attorneys

James P. Hanrath (IL. ARDC No. 3123374)
jhanrath@muchshelist.com

Michael J. Femal (IL. ARDC No. 0792012)
mfemal@muchshelist.com

MUCH SHELIST, P.C.
191 North Wacker Drive, Suite 1800
Chicago, Illinois 60606
(312) 521-2000


Paul J. Skiermont (Bar Id. 6278464)
pskiermont@skiermontderby.com

Skiermont Derby LLP
2200 Ross Avenue, Suite 4800W
Dallas, Texas 75201
(214) 978-6600


## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Plaintiff's Local Rule 56.1(b) Response To Hewlett-Packard's Statement Of Material Facts In Support Of Its Motion For Summary Judgment Under 35 U.S.C. § 101 And Statement Of Additional Facts Requiring Denial of Summary Judgment (inclusive of the Exhibits 1 to 4 thereof) was served via CM/ECF on May 5, 2016 upon all counsel of record.

/s/ James P. Hanrath