**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **STEVEN E. BERKHEIMER,** | |
| Plaintiff | Civil Action No. 1:12-cv-09023 |
| v. | Hon. John Z. Lee |
| **HEWLETT-PACKARD COMPANY,** | Hon. Jeffrey T. Gilbert |
| Defendants. | |

**DEFENDANT HEWLETT-PACKARD COMPANY'S REPLY BRIEF IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT UNDER 35 U.S.C. § 101**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   *ALICE* STEP ONE: THE CLAIMS RECITE AN ABSTRACT CONCEPT
IMPLEMENTED USING A GENERIC COMPUTER ......................................................... 1

III.  *ALICE* STEP TWO: THE REMAINING ASSERTED CLAIMS DO NOT RECITE AN
INVENTIVE CONCEPT ....................................................................................... 5

    A.  *Alice* Step Two - Nothing in the Claimed Methods "Override the Routine and
Conventional" Use of the Computer ................................................................. 5

    B.  Berkheimer's Failure to Substantively Respond to HP's Analysis on the Dependent
Claims Mandates Summary Judgment Be Granted ............................................. 9

    C.  The Alleged *DDR Holdings* Test - the '713 Patent's Generic Method Steps Do Not
Provide a "Solution Necessarily Rooted in Computer Technology" ......................... 9

    D.  There Are No Fact Issues Related to Preemption ............................................. 12

IV.   MACHINE OR TRANSFORMATION TEST .............................................................. 14

V.   LOCAL RULE 56.1 ........................................................................................ 14

    A.  HP Has Complied with the Local Rules .......................................................... 14

    B.  Plaintiff's Own Violation of the Local Rules .................................................... 15

VI.  CONCLUSION ................................................................................................ 15

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Accenture GmbH v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013)..................................................................................8, 10, 11

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    --- U.S. ---, 134 S. Ct. 2347 (2014) .................................................................... passim

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
    788 F.3d 1371 (Fed. Cir. 2015)........................................................................................12

*Bascom Research, LLC v. LinkedIn, Inc.*,
    77 F. Supp. 3d 940, 951-52 (N.D. Cal. 2015) ........................................................11

*Bilski v. Kappos*,
    561 U.S. 593 (2010)........................................................................................................14

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
    83 F. Supp. 3d 774, 777 (N.D. Ill. 2015) .................................................................6, 14

*Content Extraction & Transmission LLC v. Wells Fargo Bank*,
    776 F.3d 1343 (Fed. Cir. 2014)........................................................................................4

*Contentguard Holdings, Inc. v. Amazon.com, Inc.*,
    No. 2:13-cv-1112, 2015 WL 5853984 (E.D. Tex. Oct. 5, 2015)...........................................8

*Creative Trade Grp., Inc. v. Int'l Trade Alliance, Inc.*,
    No. 08–CV–2561, 2009 WL 3713345 (N.D. Ill. Nov. 4, 2009)............................................15

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*,
    558 F. App'x 988 (Fed. Cir. 2014) ................................................................................11

*DDR Holdings, LLC v. Hotels.Com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014).................................................................................. passim

*De v. City of Chicago*,
    912 F. Supp. 2d 709 (N.D. Ill. 2012) ..................................................................................15

*Dealertrack, Inc. v. Huber*,
    674 F.3d 1315 (Fed. Cir. 2012)..........................................................................................3

*Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*,
    758 F.3d 1344 (Fed. Cir. 2014).........................................................................................7

*Enfish, LLC v. Microsoft Corp.*,
    No. 15-1244, slip op. (Fed. Cir. May 12, 2016) .......................................................... passim

*EON Corp. IP Holdings LLC v. AT & T Mobility LLC*,
    785 F.3d 616 (Fed. Cir. 2015)...................................................................3

*Improved Search LLC v. AOL Inc.*,
    No. 15-cv-262, 2016 WL 1129213 (D. Del. Mar. 22, 2016) ...................13

*In Re: TLI Commc'ns LLC Patent Litig.*,
    No. 2015-1372 (Fed. Cir. May 17, 2016) .................................... passim

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
    127 F. Supp. 3d 506, 524 (D. Md. 2015) ........................................10, 13

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
    134 F. Supp. 3d 877 (W.D. Pa. 2015).....................................................13

*Joao Bock Trans. Sys., LLC v. Jack Henry & Assocs., Inc.*,
    No. 12-cv-1138, 2014 WL 7149400 (D. Del. Dec. 15, 2014) ..................12

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012)............................................................................12

*Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*,
    811 F.3d 1314 (Fed. Cir. 2016)...........................................................6, 14

*Network Congestion Sols., LLC v. U.S. Cellular Corp.*,
    No. 14-cv-903, 2016 WL 1129210 (D. Del. Mar. 22, 2016) ...................13

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015)...............................................................10

*Plant Genetic Sys., N.V. v. DeKalb Genetics Corp.*,
    315 F.3d 1335 (Fed. Cir. 2003).................................................................7

*Roger Whitemore's Auto. Servs., Inc. v. Lake Cnty., Ill.*,
    424 F.3d 659 (7th Cir. 2005) ...................................................................15

*Smartflash LLC v. Apple Inc.*,
    No. 6:13-cv-447, 2015 WL 661174 (E.D. Tex. Feb. 13, 2015)..................8

*SmartGene, Inc. v. Advanced Biological Labs.*,
    555 F. App'x 950 (Fed. Cir. 2014) ..........................................................13

*TechSearch, LLC. v. Intel Corp.*,
    286 F.3d 1360 (Fed. Cir. 2002).....................................................9, 12, 14

*Tranxition, Inc. v. Lenovo (U.S.) Inc.*,
    No. 3:12-cv-01065, 2015 WL 4203469 (D. Or. July 9, 2015) .................11

*Ultramercial, Inc. v. Hulu, LLC*,
　772 F.3d 709 (Fed. Cir. 2014)........................................................................................2, 6, 12

*Wheeler v. Lawson*,
　539 F.3d 629 (7th Cir. 2008) ........................................................................................9

**STATUTES**

35 U.S.C. §101 ................................................................................................... passim

## I.   INTRODUCTION

Berkheimer's response brief fails to establish that the claims at issue are directed to patentable subject matter under the Supreme Court's test in *Alice*.

First, there are no factual "disputes" as to whether the claims are patentable under Section 101 — the only relevant issues here are questions of law.  And Berkheimer's conclusory statements do not constitute "material disputed facts" that would render the claims patentable under Section 101 and *Alice*.  The *Alice* inquiry here is a legal question not predicated on any underlying factual dispute between the parties.  Thus, Berkheimer's objections under Local Rule 56.1 are incorrect and irrelevant.  Indeed, historical information from experts regarding the state of the art or the aspects of the invention that even Berkheimer admits he did not invent do not create any genuine issue of material fact.

Second, the claims are not "rooted in technology" and do not provide a solution that is innovative enough to override the conventional use of the computer.  The method claims at issue simply recite steps that (1) involve common, computer functions and/or mental processes; and (2) fail to provide any inventive concept.  It is undisputed that two of the four steps in claim 1 can be performed in a user's mind (*i.e.*, the "evaluating" and "presenting . . . for manual reconciliation" steps), while the remaining two steps recite a generic and well-known computer function ("presenting to a parser" and "parsing").  Moreover, the claims do not recite **how** to achieve any results or improvement.  Instead, they merely claim the result of using a generic computer to reorganize data and present it for later use.  Thus, the *DDR Holdings* and *Enfish* cases do not save the claims in this case.

## II.   *ALICE* STEP ONE: THE CLAIMS RECITE AN ABSTRACT CONCEPT IMPLEMENTED USING A GENERIC COMPUTER

Berkheimer fails to rebut that the claims are directed to an abstract idea.  Tellingly, Berkheimer does not articulate what the claims are "directed to" if not to an abstract idea.  *See*

Resp. at 5-6. Instead, Berkheimer relies an erroneous reading of the Federal Circuit's pre-*Alice*, vacated opinion in *Ultramercial I* to argue that HP over-simplified the claims by not including every "core feature." *Id.* (citing *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1344 (Fed. Cir. 2013), *vacated sub nom. WildTangent, Inc. v. Ultramercial, LLC*, 134 S. Ct. 2870 (2014)). Under the proper *Alice* framework, Step One asks whether the claims are "directed to" a patent-ineligible concept, such as an abstract idea. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l, --- U.S. ---,* 134 S. Ct. 2347, 2355 (2014). *Alice* also instructs that courts "need not labor to delimit the precise contours of the 'abstract ideas'. . . ." *Id.* at 2357; *see also Enfish, LLC v. Microsoft Corp.*, No. 15-1244, slip op. at 9 (Fed. Cir. May 12, 2016) (Ex. 1) ("[B]oth this court and the Supreme Court have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases."); Mot. at 6-7, n. 6 (collecting analogous cases).

Berkheimer's argument fails because HP properly demonstrated that the claims were "directed to" an abstract idea ***and*** HP's formulation of the abstract idea sufficiently captures the features of the claims. *See, e.g., Alice*, 134 S. Ct. at 2356 (summarizing representative claim having four steps as directed to the abstract concept of "intermediated settlement"); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714-15 (Fed. Cir. 2014) ("*Ultramercial II*") (applying *Alice* on remand and summarizing claim with eleven steps as directed to abstract "method of using advertising as an exchange or currency").

Berkheimer recently submitted *Enfish* as supplemental authority, but *Enfish* simply confirms that Berkheimer's claims are unpatentable. First, unlike *Enfish*, Berkheimer's method

claims do not have any means-plus-function claim limitations.[1]  In *Enfish*, the means-plus-function claims were construed to include the ***specific algorithm*** described in the specification for implementing the technological improvement: a "self-relational table."  Slip. op. at 12-13.  This inclusion of "the specific asserted improvement in computer capabilities (*i.e.*, the self-referential table for a computer database)" caused the claims to recite ***how*** to configure a specific implementation of a solution rather than simply reciting a method "for which computers are merely used as a tool."  *Id*. at 11, 18; *see also Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) (when "[t]he claims are silent as to ***how*** a computer aids the method, the extent to which a computer aids the method, or the significance of a computer to the performance of the method," then the claims are directed to an abstract idea (emphasis added)).  Thus, even under *Enfish*, Berkheimer's claims would be directed to an abstract idea because they simply recite using the computer as a tool to produce some generic output.  *See Enfish*, slip op. at 11-12.

The Federal Circuit recently provided more clarity regarding *Alice* Step One and how to apply *Enfish* in *In Re: TLI Commc'ns LLC Patent Litig.*, No. 2015-1372, et al., (Fed. Cir. May 17, 2016) (Ex. 2).  The Federal Circuit recognized that even claims that include some tangible computer component (similar to the claimed "parser") fail *Alice* Step One when that component "is described simply in terms of performing generic computer functions such as storing, receiving, and extracting data."  *TLI*, slip op. at 9-10 (finding use of generic server component for "recording, administration and archiving of digital [data]" to be abstract).

Berkheimer's method claims are on all fours with the claims in *TLI*.  Similar to Berkheimer's characterizations of the '713 Patent, the *TLI* claims involved a system for

---

[1] *See Enfish*, slip op. at 13, n. 3 ("Construction of a means-plus-function limitation includes two steps. First, the court must determine the claimed function. Second, the court must identify the corresponding structure in the written description of the patent that performs the function." (quotation omitted)).  And "the corresponding structure for a function performed by a software algorithm is the algorithm itself." *EON Corp. IP Holdings LLC v. AT & T Mobility LLC*, 785 F.3d 616, 621 (Fed. Cir. 2015).

generating, transmitting, and organizing digital data (images), as well as assigning "classification data" to those images so that they could be stored in an efficient and organized manner, which the Federal Circuit found to be similar to claims previously addressed in *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1347 (Fed. Cir. 2014). *TLI*, slip op. at 7-8, 11. Further, the *TLI* patent described its classification data as "provid[ing] for recording, administration and archiving of digital images simply, fast and . . . [that] may be easily tracked." *TLI*, slip op. at 9. The *TLI* court found that these concepts were not directed to solving "a technological problem" unique to computer technology (*e.g.*, servers), but were directed to the abstract idea of "classifying and storing digital images in an organized manner." *Id*.

Like the claims in *TLI* and *Content Extraction* (*see* Ex. 3), and in contrast to the means-plus-function claims in *Enfish*, Berkheimer's method claims do not recite "an improvement to computer functionality," nor do the claims recite ***how*** to do anything. Instead, the claims simply invoke a computer with standard computer functionality (such as software that archives and analyzes data) to create a result. And, like *TLI*, the "the functions of the [computer] are described in vague terms without any meaningful limitations." *Id.* at 10. Berkheimer's method claims provide no particular algorithm for ***how*** to parse data, no detail of ***how*** to create the claimed "object structures," or ***how*** to create the "searchable information tags." These result-oriented concepts are far from a "specific asserted improvement in computer capabilities."

Further, unlike the claims in *DDR Holdings*, Berkheimer's claims "simply instruct the practitioner to implement the abstract idea [] on a generic computer." *DDR Holdings, LLC v. Hotels.Com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014) (quoting *Alice*, 134 S. Ct. at 2359 and string citing additional cases). "Although many of the claims recited various computer hardware elements, these claims in substance were directed to **nothing more than the performance of an**

4

**abstract business practice** on the Internet or **using a conventional computer**. Such claims are not patent-eligible." *DDR Holdings*, 773 F.3d at 1256 (emphases added).

Thus, under the analysis in *Alice*, *Enfish*, *TLI*, and *DDR*, Berkheimer's claims are directed to an abstract idea.

## III. *ALICE* STEP TWO: THE REMAINING ASSERTED CLAIMS DO NOT RECITE AN INVENTIVE CONCEPT

The issues at hand are purely legal and the relevant material issues are not disputed. Despite this, Berkheimer states that he disagrees with certain statements in HP's motion without providing any contrary evidence. Further, Berkheimer's rebuttal seeks to graft an additional analysis onto the *Alice* framework stemming from the inapposite Federal Circuit case *DDR Holdings,* the sole Federal Circuit case prior to *Enfish* where claims were found valid under *Alice*. As noted below, *DDR Holdings* does not support denial of HP's motion.

### A. *Alice* Step Two - Nothing in the Claimed Methods "Override the Routine and Conventional" Use of the Computer

There are no factual disputes between the parties that are relevant to HP's motion because the '713 Patent, the content of the claims-at-issue, and the Court's construction of those claims in its Markman Order are the only facts necessary to decide HP's motion and are uncontroverted. *See* Plt.'s L.R. 56.1 Resp. ¶¶ 6-9. Berkheimer's arguments that HP offers no evidence in support its brief are inapposite. As a matter of law, each of the '713 Patent's claimed elements encompasses "previously well-understood, routine, or conventional" activity." *See* Mot. at 8-12. Even as framed by Berkheimer, the issue before the Court is legal, not factual: whether the use of a generic computer to run generic software to reorganize data by breaking ("parsing") documents or files ("items") into pieces ("object structures") associated with searchable information tags, and then "evaluating" those pieces so they can be presented for "manual reconciliation" amounts

to significantly more than an abstract idea under 35 U.S.C. §101.[2]  As recently made clear by the Federal Circuit, "receiv[ing] data, extract[ing] classification information . . . from the received data, and stor[ing] the digital [data in an archive] . . . taking into consideration the classification information . . . fall squarely within our precedent finding generic computer components insufficient to add an inventive concept to an otherwise abstract idea."  *TLI*, slip. op. at 13 (citations and quotations omitted).

With respect to *Alice* Step Two, Berkheimer provides no rebuttal to HP's analysis of the first two claimed steps: "presenting to a parser" and "parsing."  Thus, there is no dispute regarding these steps.  The only purported factual issues identified by Berkheimer are HP's statements directed to what constitutes generic and well-known computer elements, and which steps can be performed mentally.  Resp. at 9-12.  However, while Berkheimer purports to dispute these issues, he merely states his disagreement without providing any contrary evidence in support of his position.  Resp. at 9-11.  To warrant denial of a motion for summary judgment, "a non-movant must produce more than 'a mere scintilla of evidence' to support the position that a genuine issue of material fact exists and 'must come forward with specific facts demonstrating that there is a genuine issue for trial.'"  *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 83 F. Supp. 3d 774, 777 (N.D. Ill. 2015) (quoting *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008)).  Additionally, this Court may properly consider non-material information that provides historical context on summary judgment.  *See Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1326 (Fed. Cir. 2016) (finding that district properly considered expert testimony that "provided non-material historical information").

---

[2]  The Federal Circuit has expressed doubt that a presumption of validity, and thus the clear and convincing evidence standard, applies to Section 101 analyses.  *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 720–21 (Fed. Cir. 2014) (Mayer, J., concurring) ("no presumption of eligibility attends the section 101 inquiry"; "the Supreme Court . . . has never mentioned—much less applied—any presumption of eligibility").  Nevertheless, the '713 Patent would be invalid under any standard.

For example, Berkheimer does not dispute that he did not invent any of the purported technology in the claimed methods. *See* Mot. at 9 n.9, 11 n.10, 13 (citing Dkt. 155, Ex. B., at 241:20-24, 242:1-243:4). Similarly, Berkheimer does not dispute that his own experts opined that the "evaluating" step can be performed mentally by a user.[3] *See* Mot. at 10 (citing Dkt. 155, Ex. C, ¶ 71; Ex. D, ¶ 84). Berkheimer does not contest that parsers that convert source code to object code were well-known and routine at the time of the '713 Patent. *See* Mot. at 9. Instead, Berkheimer incorrectly argues that dictionaries from 2001 and 2002 are insufficient to show that the parsers were "well-understood, routine, conventional" at the time of the invention, even though they reflect the state of the art existing at the time of invention. Resp. at 10, n.9; *see, e.g., Plant Genetic Sys., N.V. v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1344 (Fed. Cir. 2003) (describing "the permissible application of later knowledge about art-related facts existing on the filing date" and finding that "the district court properly used later reports as evidence of the state of the art existing [at the time of invention]"). Regardless, using a parser to generate a multi-part object structure involves no more than reorganizing data, and "a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible." *Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014).

With respect to the "presenting" step, Berkheimer fails to rebut that (1) the claim language itself recites "presenting . . . for manual reconciliation"; and (2) the specification teaches that objects can be "manually displayed . . . for manual correction, editing and reconciliation." '713 Patent, 3:10-14; Dkt. 123, at 15. Berkheimer's argument that a human

---

[3] Berkheimer's argument that *all* of the steps must be performed mentally for the claim to be unpatentable conflates the *Alice* Step One inquiry of whether the claims are directed to a judicial exception, with that of Step Two. Resp. at 12. HP is not arguing that the claims are "directed to" unpatentable subject matter for being a mental process, but that these steps fail *Alice* Step Two. Thus, Berkheimer's argument is moot.

performing the steps cannot achieve the same results (Resp. at 13) is unsupported. To the contrary, his own experts opine that both the "evaluating" and "presenting . . . for manual reconciliation" steps are satisfied by simply displaying information for the user to think about. *See* Mot. at 10-11 (citing Dkt. 155, Ex. C, ¶¶ 71, 83; Ex. D, ¶¶ 84, 91). Thus, the remaining "evaluating" and "presenting" for manual reconciliation steps are not tied to a computer and cannot be argued to override the routine and conventional use of a computer.

Moreover, Berkheimer continues to retreat to the specification to attempt to show what the patent teaches. However, the claims do not recite any patentable features and no "level of detail in the specification" can salvage claims directed to an abstract idea. *Accenture GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013).

Berkheimer's reliance on *Smartflash* and *Contentguard* is also misplaced. Resp. at 11. The claims in those cases are markedly different than those at issue here. *Smartflash* recited ***twenty (20) detailed steps*** that the Court found set forth "specific ways of managing access to digital content data using use status data and use rules in distinct memory types." *See Smartflash LLC v. Apple Inc.*, No. 6:13-cv-447, 2015 WL 661174, at *2, 9 (E.D. Tex. Feb. 13, 2015) (Ex. 4). Similarly, the claims in *Contentguard* were "limited to devices that maintain physical, communications, and behavioral integrity, rather than all devices that are capable to receive content via the Internet." *Contentguard Holdings, Inc. v. Amazon.com, Inc.*, No. 2:13-cv-1112, 2015 WL 5853984, at *4 (E.D. Tex. Oct. 5, 2015) (Ex. 5). The asserted claims here cover routine operations that are equally applicable across all devices and industries. Berkheimer again fails to describe any ***claimed*** features that purportedly support his arguments.

Additionally, while Berkheimer makes conclusory allegations that the combination of claim elements is somehow innovative, he fails to identify a single element or any combination of elements that involve a computer operating in a new and unconventional way. HP's motion

addressed the elements both individually and as a whole, and HP presented detailed analysis why each element did not amount to "significantly more" than the underlying when abstract *when considered in the context of the claim as a whole*.  Mot. at 8-14.

Accordingly, under *Alice* Step Two, these claimed elements do not amount to "significantly more" than the underlying abstract idea.  HP's motion should be granted as Berkheimer has not "come forward with specific facts demonstrating that there is a genuine issue for trial" even on the issues Berkheimer identifies.  *Wheeler*, 539 F.3d at 634.

> **B.  Berkheimer's Failure to Substantively Respond to HP's Analysis on the Dependent Claims Mandates Summary Judgment Be Granted**

Berkheimer fails to substantively address the dependent claims and limits his response to a single paragraph alleging that the dependent claims must be addressed separately.  Resp. at 13. Berkheimer only mentions claim 5 and simply parrots the claim language without any analysis why claim 5 amounts to significantly more than the abstract idea.  Such "unsupported or conclusory averments are insufficient to avoid summary judgment where the moving party has met its initial burden."  *TechSearch, LLC. v. Intel Corp.*, 286 F.3d 1360, 1372 (Fed. Cir. 2002). Thus, HP's analysis demonstrating that the dependent claims fail to add limitations that are significantly more than the abstract idea is unchallenged and HP's motion should be granted on each of these claims for this reason as well.

> **C.  The Alleged *DDR Holdings* Test - the '713 Patent's Generic Method Steps Do Not Provide a "Solution Necessarily Rooted in Computer Technology"**

Berkheimer relies on *DDR Holdings* as support for a new "computer technology" argument that he suggests demonstrates his claims are not invalid.  However, this argument finds no basis in the two-part *Alice* test and should be rejected.  Even if this argument is considered by this Court, Berkheimer's arguments fail as a matter of law.

9

Under a proper application of *DDR Holdings*, in order for Berkheimer's claims to survive, they must describe ***how*** the claimed result is accomplished. *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 127 F. Supp. 3d 506, 524 (D. Md. 2015) (distinguishing *DDR Holdings* because "[w]ithout the 'how,' . . . the non-specific claim recitations . . . rely on only generic terms and do not show that the generic computer components would function in anything other than their 'normal, expected manner.'"). As detailed above, the '713 Patent's generic method steps require only "generalized software components arranged to implement [the] abstract concept" of reorganizing data. *Accenture*, 728 F.3d at 1345. None of the claimed steps recite any specific computer hardware components, nor do they specify how the claims operate to provide a specific improvement to existing computer technology. Rather, like claims at issue in *TLI*, the computer elements are insufficient under *Alice* Step Two because they "simply provide[] the environment in which the abstract idea of classifying and storing [data] in an organized manner is carried out." *TLI*, slip op. at 12.

Further, Berkheimer's arguments that the '713 Patent is directed to a solution "necessarily rooted in computer technology" because claim 1 utilizes a "parser" computer misses the mark. *DDR Holdings* explicitly recognized that "recitation of generic computer limitations does not make an otherwise ineligible claim patent-eligible." 773 F.3d at 1256; *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) ("But relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible."). The *DDR Holdings* claims were patent-eligible only because they "claimed [a] solution" directed to the solving a problem that only arose *because* of the advent of the Internet and not simply applying known technology *on* the Internet. 773 F.3d at 1256; *see also TLI*, slip. op. at 10 (finding *DDR Holdings* inapplicable because *DDR Holdings* involved an "attempt to solve 'a challenge particular to the Internet.'"); *Intellectual Ventures I*, 127 F. Supp. 3d at 520

("Distilled to its essence, the reason why the patent in *DDR Holdings* . . . survive[d] . . . is because the patent contained sufficient detail to show how the claims solved the Internet-related problem at the heart of the patent, and . . . involved much more than programming a generic computer to interface with the Internet . . . .").

The '713 Patent's claims are not directed to a specific problem arising only because of the Internet, or even computers for that matter. To the contrary, "parsing," creating "object structures," and "linking" data were well known before the '713 Patent was filed and Berkheimer does not dispute that he did not invent any of these. *See also Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 992 (Fed. Cir. 2014) ("[T]he well-known concept of categorical data storage, *i.e.*, the idea of collecting information in classified form, then separating and transmitting that information according to its classification, is an abstract idea that is not patent-eligible."); *Bascom Research, LLC v. LinkedIn, Inc.*, 77 F. Supp. 3d 940, 951-52 (N.D. Cal. 2015) ("[T]he concept of establishing and using relationships between documents is a common, age-old practice.").

The other "features" noted by Berkheimer, such as the object-oriented nature of the system, "linking and retrieval of [data] from archive[s]," and the "security-related privileges and rules . . . allowing or disallowing individual users or groups of users" are set out in the patent specification – and ***not*** the claims – and are, therefore, irrelevant to the *Alice* analysis. *See Accenture*, 728 F.3d at 1345 ("the important inquiry for a § 101 analysis is to look to the claim"; "the complexity of the implementing software or the level of detail in the specification does not transform a claim reciting only an abstract concept into a patent-eligible system or method."); *see also Tranxition, Inc. v. Lenovo (U.S.) Inc.*, No. 3:12-cv-01065, 2015 WL 4203469, at *9 (D. Or. July 9, 2015) ("Collecting configuration setting[s] into an 'object-oriented programming object' is a complicated way of describing the abstract idea of collecting computer-readable data

into a group.") (Ex. 6).  Berkheimer's conclusory arguments with respect to the specification are insufficient to demonstrate that the claims recite a solution to the alleged problems.  *See TechSearch*, 286 F.3d at 1372.

Here, the '713 Patent claims do not claim a "solution rooted in computer technology." Even a cursory review of the '713 Patent claims show that they abstractly recite well-known computer hardware and software techniques (a fact which Berkheimer himself admits, *see* Dkt. 155, Ex. B., at 241:20-24, 242:1-243:4).  The Supreme Court and Federal Circuit have routinely held that this is the type incidental use of a computer is insufficient to convert an abstract idea to into a patent-eligible invention.  *See, e.g., Alice*, 134 S. Ct. 2358; *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012); *Ultramercial*, 772 F.3d at 716-17; *DDR*, 773 F.3d at 1246.  Thus, Berkheimer's imagined "computer technology" argument fails.

### D.    There Are No Fact Issues Related to Preemption

Berkheimer's arguments regarding preemption are immaterial to the § 101 analysis.  As a threshold matter, preemption is not part of the two-part *Alice* test, so the Court need not address this argument.  *See Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015) ("[Q]uestions on preemption are inherent in and resolved by the § 101 analysis. . . . While preemption may signal patent ineligible subject matter, the absence of complete preemption does not demonstrate patent eligibility.").  Nevertheless, Berkheimer's argument fails.

First, Berkheimer's suggestion that the claimed invention does not preempt the practices of all "bookkeepers, accountants, and auditors" misses the mark.  The question is not whether the claims preempt all types of historical business practices, but rather, whether the claims impermissibly preempt a certain types of system.  *See Joao Bock Trans. Sys., LLC v. Jack Henry & Assocs., Inc.*, No. 12-cv-1138, 2014 WL 7149400, at *8 (D. Del. Dec. 15, 2014) (rejecting argument that "there is no preemption as the abstract idea can be performed" in other ways as

improperly "turn[ing] the analysis on its head") (Ex. 7). Here, the claims preempt systems utilizing searchable multi-part object structures and that evaluate data. "The 'brick and mortar' analog of searching for a library book using an index and various categories shows the idea's abstract nature." *Intellectual Ventures*, 2015 WL 5686643, at *34.

There can be no doubt that the abstractly worded claims of the '713 Patent impermissibly preempt a vast field of systems. The claims recite routine steps utilizing well-known technology in the computer industry. Berkheimer is unable to identify a single claim element that "place[s] meaningful boundaries on the inventive concept" or explain how such an element "improve[s] computerized digital asset and content management systems without risk of abstract idea preemption." *See* Resp. at 8-9. For example, computer programs that convert source code to object ("parsers"), object-oriented database structures and "searchable information tags" used to identify data are routine operations in any industry. *See* Dkt. 155, Ex. A, Schonfeld Invalidity Expert Report, ¶¶ 101, 122-26; *Intellectual Ventures I LLC v. Erie Indem. Co.*, 134 F. Supp. 3d 877 (W.D. Pa. 2015) ("[S]pecifying generic computer components and processes like 'tags,' 'metafiles,' and a 'database' do very little to narrow the concept."). Likewise, "evaluating" data to identify variances is nothing more than a routine data comparison. *See SmartGene, Inc. v. Advanced Biological Labs.*, 555 F. App'x 950, 954 (Fed. Cir. 2014) (using "a 'computing device,' with basic functionality for comparing stored and input data and rules, to do what [humans] do routinely" is abstract).

Further, Berkheimer's cited support is inapposite. *See* Resp. at 8-9. Both *Improved Search LLC v. AOL Inc.* and *Network Congestion Sols., LLC v. U.S. Cellular Corp.* involved claims that were sufficiently detailed to address the preemption issue, unlike the asserted '713 Patent's claims. No. 14-cv-903, 2016 WL 1129210 & No. 15-cv- 262, 2016 WL 1129213 (D. Del. Mar. 22, 2016) (Exs. 9, 10). Berkheimer makes no effort to explain the purported relevance

13

of those cases to the claims at hand. Berkheimer's "unsupported or conclusory averments are insufficient to avoid summary judgment." *TechSearch*, 286 F.3d at 1372.

## IV.    MACHINE OR TRANSFORMATION TEST

Berkheimer's analysis under the machine-or-transformation test is flawed. The claims are not tied to a "particular machine," many steps can be performed mentally or using pen and paper, and nothing is "transformed" into a different state or thing. *See*, Mot. 14-15.

## V.    LOCAL RULE 56.1

### A.    HP Has Complied with the Local Rules

Berkheimer asks this court to strike all of HP's record citations, which include references to certain expert opinions and deposition transcripts. Ironically, Berkheimer ***does not refute or even dispute any of the statements he wishes this Court to strike***: Berkheimer does not provide even a scintilla of evidence disputing that all of the claimed steps were previously well-understood, routine or conventional, that his own experts concede claim elements can performed mentally (Dkt. 155, Ex. C, ¶¶ 71, 83; Ex. D, ¶¶ 84, 91), or that he did not invent the vast majority of the features in the claims (Dkt. 155, Ex. B., Berkheimer Deposition, 241:20-24 (claimed "parser"), 242:1-7 (object-oriented programming), 242:8-243:4 (claimed "evaluation")).

Further, whether the claims are drawn to patent-eligible subject matter under Section 101 is a threshold question of law. *Bilski v. Kappos*, 561 U.S. 593, 621 (2010); *see also Celsis*, 83 F. Supp. 3d at 777 ("Section 101 validity is a question of law."). Here, there are no mixed issues of fact and law to decide, and a Markman Order has resolved all disputed claim terms as a matter of law. Any citations to historical information, *e.g.*, the state of what was known in the art at the time of the patent's filing, is not required to resolve patentability issues under Section 101. *See, e.g, Mortgage Grader,* 811 F.3d at 1326 (district properly considered expert testimony that "provided non-material historical information"). HP has complied with the letter and the spirit

of L.R. 56.1 by identifying only undisputed facts and not including facts that are immaterial to the Section 101 analysis.[4] Berkheimer's cited cases involve heavily fact-dependent issues and do not include a single Section 101 adopting his interpretation of L.R. 56.1.

### B. Plaintiff's Own Violation of the Local Rules

Berkheimer's Response substantially exceeds the allotted fifteen pages under the local rules and should be stricken. L.R. 7.1. Berkheimer includes an additional fifteen pages (37 paragraphs) of argument and conclusory statements couched as "facts" in his Statement of Facts. *See* Plt.'s L.R. 56.1 Resp. ¶¶ 11-48. Arguments belong in the supporting memorandum and not in a statement of facts. *Roger Whitemore's Auto. Servs., Inc. v. Lake Cnty., Ill.*, 424 F.3d 659, 674 (7th Cir. 2005); *De v. City of Chicago*, 912 F. Supp. 2d 709, 713-14 (N.D. Ill. 2012) ("[A] Local Rule 56.1(b)(3)(B) response [is] not the proper province of argumentative or conclusory allegations" which are "are forbidden under Local Rule 56.1."). Coupled with two additional pages of argument with his supplemental authority, Berkheimer's page count more than doubles the allotted pages for a responsive brief.

Striking Berkheimer's response is appropriate. *See Creative Trade Grp., Inc. v. Int'l Trade Alliance, Inc.*, No. 08–CV–2561, 2009 WL 3713345, at *6 (N.D. Ill. Nov. 4, 2009) (Ex. 11). Alternately, this Court should disregard ¶¶ 11-48 of Berkheimer's L.R. 56.1 Statement.

## VI. CONCLUSION

Because none of the asserted claims of the '713 Patent extends beyond an abstract idea, HP respectfully requests this Court grant its motion for summary judgment and hold that the claims are invalid, as a matter of law, under 35 U.S.C. § 101.

---

[4] As the L.R. 56.1 Committee Notes state, "the judges of this court have observed that parties frequently include in their L.R. 56.1 statements facts that are unnecessary to the motion and/or are disputed."

Dated: May 19, 2016

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

/s/ *Jason C. White*
Jason C. White
Scott D. Sherwin
Nicholas A. Restauri
77 W. Wacker Drive, Suite 500
Chicago, IL 60601
Tel.: (312) 324-1000
Fax: (312) 324-1001
E-mail: jwhite@morganlewis.com
E-mail: ssherwin@morganlewis.com
E-mail: nicholas.restauri@morganlewis.com

David J. Levy (*Admitted Pro Hac Vice*)
Thomas R. Davis (*Admitted Pro Hac Vice*)
1000 Louisiana Street, Suite 4000
Houston, Texas 77002
Tel.: (713) 890-5000
Fax: (713) 890-5001
E-mail: dlevy@morganlewis.com
E-mail: tdavis@morganlewis.com

*Attorneys for Defendant Hewlett-Packard*
*Company (now known as HP Inc.)*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was served via CM/ECF on May 19, 2016

upon all counsel of record.

/s/ *Jason C. White*
Jason C. White