**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **Steven E. Berkheimer,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **12 C 9023** |
| | ) | |
| **v.** | ) | **Judge John Z. Lee** |
| | ) | |
| **Hewlett-Packard Company,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Steven E. Berkheimer ("Berkheimer") has sued Defendant Hewlett-Packard Company ("HP") under 35 U.S.C. § 1 *et seq.*, alleging infringement of U.S. Patent No. 7,447,713 ("the '713 Patent"). HP has moved for summary judgment on the ground that the asserted claims of the '713 Patent cover patent-ineligible subject matter and are therefore invalid under 35 U.S.C. § 101. For the reasons provided herein, the Court grants HP's motion.

## Factual Background

Berkheimer is the owner of the '713 Patent, which describes methods for digitally processing and archiving files. Pl.'s Resp. HP's SMF, Ex. 2 ("'713 Patent") col.1 ll.10–11, ECF No. 164-2. The methods involve "object-oriented representations" of documents and graphics that are "manipulated and then entered into an archival database with minimal redundancy." *Id.* at col.1 ll.15–19, col.2 l.38. For example, using these methods, a computer program can recognize the various components of a document (such as a headline, text block, or image) and can archive the document by storing data corresponding to each of these separate

components. *Id.* at cols.19–28 (diagramming an example of this archiving process). Once a document has been archived in this manner, multiple users can "work on different components of a document at the same time and from different locations." *Id.* at cols. 39–40. And when multiple documents in the archive share a common component (for example, the same text block), a user can edit those documents simultaneously with a one-time edit to the common component that they share. *Id.* at cols. 41–42. These features of the claimed methods "promote efficiency," "achieve object integrity," and "reduce turnaround time and costs" in the digital archiving process. *Id.* at col.2 ll.38–52, col.3 ll.40–50.

Berkheimer asserts Claims 1–7 and 9 of the '713 Patent against HP. Def.'s SMF ¶¶ 7–8, ECF No. 157.[1] Claim 1 is an independent claim, and Claims 2–7 and 9 are dependent claims deriving from Claim 1. *See* '713 Patent col. 47. Claim 1 reads as follows:

> 1. A method of archiving an item in a computer processing system comprising:
>
> presenting the item to a parser;
>
> parsing the item into a plurality of multi-part object structures wherein portions of the structures have searchable information tags associated therewith;
>
> evaluating the object structures in accordance with object structures previously stored in an archive;

---

[1] Previously, Berkheimer also asserted Claims 10–19. However, in a prior ruling, this Court held that Claims 10–19 were invalid for indefiniteness under 35 U.S.C. § 112. *Berkheimer v. Hewlett-Packard Co.*, No. 12-cv-9023, 2015 WL 4999954, at *9–11 (N.D. Ill. Aug. 21, 2015). Claims 1–7 and 9 are therefore the only asserted claims that currently remain. Def.'s SMF ¶ 8.

> presenting an evaluated object structure for manual reconciliation at least where there is a predetermined variance between the object and at least one of a predetermined standard and a user defined code.

*Id.* at col.47 ll.9–21.

During a claim construction hearing, the parties asked the Court to interpret the terms "parser," "parsing," and "evaluating," each of which appears in Claim 1. *See Berkheimer*, 2015 WL 4999954, at *1. Based on the hearing, the Court concluded that the term "parser" means "a program that dissects and converts source code into object code";[2] "parsing" means "using a program that dissects and converts source code into object code to dissect and convert"; and "evaluating" means "analyzing and comparing." *Id.* at *12. The parties also asked the Court to interpret the phrase "evaluating the object structures in accordance with object structures previously stored in an archive," which appears in the third step of Claim 1. The Court defined this phrase to mean "analyzing the plurality of multi-part object structures obtained by parsing and comparing it with object structures previously stored in the archive to determine if there is variance between the object and at least one of a predetermined standard and a user defined rule." *Id.*

Claims 2–7 and 9 are dependent claims that add various steps and limitations to the method recited in Claim 1. They read as follows:

---

[2]     "Source code" is "nonmachine language used by a computer programmer to create a program." *Black's Law Dictionary* (10th ed. 2014). "Object code" is "machine-readable language compiled from a computer progammer's source code." *Black's Law Dictionary* (10th ed. 2014).

2.     The method as in claim 1 wherein the respective structure can be manually edited after being presented for reconciliation.

3.     The method as in claim 1 which includes, before the parsing step, converting an input item to a standardized format for input to the parser.

4.     The method as in claim 1 which includes storing a reconciled object structure in the archive without substantial redundancy.

5.     The method as in claim 4 which includes selectively editing an object structure, linked to other structures to thereby effect a one-to-many change in a plurality of archived items.

6.     The method as in claim 5 which includes compiling an item to be output from the archive, wherein at least one object-type structure of the item has been edited during the one-to-many change and wherein the compiled item includes a plurality of linked object-type structures converted into a predetermined output file format.

7.     The method as in claim 6 which includes compiling a plurality of items wherein the at least one object-type structure has been linked in the archive to members of the plurality.

9.     The method as in claim 1 which includes forming object oriented data structures from the parsed items wherein the data structures include at least some of item properties, item property values, element properties and element property values.

'713 Patent, col.47 ll.22–55.

## **Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). At the summary judgment stage, a court must consider any

disputed facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986); *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead "must establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

## Analysis

In support of its motion for summary judgment, HP's sole contention is that the asserted claims of the '713 Patent are patent-ineligible and thus invalid under 35 U.S.C. § 101. Whether a patent claim is invalid under § 101 is a question of law. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1369 (Fed. Cir. 2011); *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008) (en banc), *aff'd*, 561 U.S. 593 (2010). Accordingly, courts may resolve questions concerning patent eligibility under § 101 validity on the pleadings or at the summary judgment stage. *See, e.g.*, *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1352 (Fed. Cir. 2014); *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1274 (Fed. Cir. 2013), *aff'd*, 134 S. Ct. 2347 (2014).

Section 101 governs the scope of the federal patent laws. It provides that "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof," is eligible to receive patent protection. 35 U.S.C. § 101. For over 150 years, the Supreme Court has interpreted § 101 and its predecessors to "contain[ ] an important implicit exception: [l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)). This exception strikes a balance between protecting truly new and useful inventions, on the one hand, and ensuring that the patent laws do not "improperly [tie] up . . . the building blocks of human ingenuity," on the other. *Alice*, 134 S. Ct. at 2354 (quoting *Mayo Collaborative Servs. v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289, 1301 (2012)).

In *Alice Corp. Pty. Ltd. v. CLS Bank International*, the Supreme Court set forth a two-part framework to determine the patent eligibility of method claims under § 101. 134 S. Ct. at 2355–57. The first part of the framework requires a court to determine whether the claims at issue are drawn to an "abstract idea." *Id.* If they are, then the second part of the framework directs the court to examine the claims and determine whether they contain "an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Id.* at 2357 (quoting *Mayo*, 132. S. Ct. at 1294, 1298). "Simply appending conventional steps, specified at a high level of generality, [is] not enough to supply an inventive concept." *Alice*, 134 S. Ct. at 2357 (internal quotation marks and emphasis

omitted).  Likewise, method claims that "merely require generic computer implementation" of an abstract idea do not contain an "inventive concept" sufficient to render them patent-eligible.  *Id.*

## I.    Burden of Proof in Patent-Eligibility Determinations under § 101

Before turning to the merits of HP's motion for summary judgment, the Court must address a threshold question that the Supreme Court and the Federal Circuit have yet to resolve: whether a clear-and-convincing standard of evidentiary proof applies when a claim is challenged as patent-ineligible under § 101.  District courts disagree over this issue,[3] as do Berkheimer and HP.  *See* Pl.'s Resp. at 2 n.4, ECF No. 163; Def.'s Reply at 14, ECF No. 166.

This disagreement stems from uncertainty about the scope of the Supreme Court's decision in *Microsoft Corp v. i4i Ltd. Partnership*, 564 U.S. 91 (2011), which involved a patent-validity challenge under the on-sale bar of 35 U.S.C. § 102(b).  In that case, the Supreme Court held that because a patent must be presumed valid

---

[3]    For examples of cases concluding that the clear-and-convincing evidentiary standard applies in § 101 challenges, *see O2 Media, LLC v. Narrative Sci. Inc.*, 149 F. Supp. 3d 984, 988 (N.D. Ill. 2016) (Tharp, J.); *Trading Techs. Int'l, Inc. v. CQG, Inc.*, No. 05-CV-4811, 2015 WL 774655, at *2–3 (N.D. Ill. Feb. 24, 2015) (Coleman, J.); *DataTern, Inc. v. Microstrategy, Inc.*, No. CV 11-11970-FDS, 2015 WL 5190715, at *7–8 (D. Mass. Sept. 4, 2015) (Saylor, J.); *Netflix, Inc. v. Rovi Corp.*, 114 F. Supp. 3d 927, 938 (N.D. Cal. 2015) (Hamilton, J.); *Data Distribution Techs., LLC v. BRER Affiliates, Inc.*, No. CIV. 12-4878-JBS/KMW, 2014 WL 4162765, at *4 (D.N.J. Aug. 19, 2014) (Simandle, J.).  For examples of cases concluding that the clear-and-convincing evidentiary standard does not apply to § 101 challenges, *see Am. Needle, Inc. v. Cafe Press Inc.*, No. 15-CV-3968, 2016 WL 232438, at *3 (N.D. Ill. Jan. 19, 2016) (Darrah, J.); *Nextpoint, Inc. v. Hewlett-Packard Co.*, No. 15 C 8550, 2016 WL 3181705, at *6 (N.D. Ill. June 8, 2016) (Bucklo, J.); *Wireless Media Innovations, LLC v. Maher Terminals, LLC*, 100 F. Supp. 3d 405, 410–12 (D.N.J. 2015) (Linares, J.); *Shortridge v. Found. Constr. Payroll Serv., LLC*, No. 14-CV-04850-JCS, 2015 WL 1739256, at *7 (N.D. Cal. Apr. 14, 2015) (Spero, J.); *Modern Telecom Sys. LLC v. Earthlink, Inc.*, No. SA CV 14-0347-DOC, 2015 WL 1239992, at *7 (C.D. Cal. Mar. 17, 2015) (Carter, J.).

under the federal patent laws, *see* 35 U.S.C. § 282(a) ("A patent shall be presumed valid."), a party seeking to prove a patent's invalidity must do so by clear and convincing evidence. *i4i*, 564 U.S. at 95. In a concurring opinion joined by Justices Scalia and Alito, Justice Breyer noted his full agreement with the majority's holding, writing separately only because he "believe[d] it worth emphasizing" that the clear-and-convincing standard is an evidentiary rule applying only "to questions of fact and not to questions of law." *Id.* at 114 (citing *Addington v. Texas*, 441 U.S. 418, 423 (1979)). In patent cases, he explained, "a factfinder must use the 'clear and convincing' standard where there are disputes about, say, when a product was first sold or whether a prior art reference had been published." *i4i*, 564 U.S. at 114. Justice Breyer further emphasized that "[m]any claims of invalidity rest, however, not upon factual disputes, but upon how the law applies to facts as given." *Id.*

Since its decision in *i4i*, the Supreme Court has issued opinions in several § 101 patent-eligibility cases, but in none of those cases has it addressed or applied the clear-and-convincing standard that was applied to the § 102(b) dispute in *i4i*. *See generally Alice*, 134 S. Ct. 2347; *Myriad*, 133 S. Ct. 2107; *Mayo*, 132 S. Ct. 1289. The Federal Circuit also has not issued a controlling decision on the question whether the clear-and-convincing standard applies to § 101 determinations. *See Tranxition, Inc. v. Lenovo (U.S.) Inc.*, No. 2015-1907, 2016 WL 6775967, at *4 n.1 (Fed. Cir. Nov. 16, 2016) ("We [ ] do not address the proper evidentiary standard in this [§ 101] case as there do not appear to be any material facts in dispute."); *Listingbook, LLC v. Market Leader Inc.*, 144 F. Supp. 3d 777, 783 (M.D.N.C. 2015)

(noting the lack of controlling precedent and reviewing the conflicting dicta on this subject from "concurring, dissenting, and now-vacated opinions" authored by various Federal Circuit judges).

In the absence of explicit guidance from either the Supreme Court or the Federal Circuit, some district courts have concluded that the clear-and-convincing standard indeed applies to all § 101 determinations. Their conclusion, they reason, is supported by the broad language of the *i4i* majority opinion, which seems to address patent-validity challenges writ large and does not expressly limit the application of the clear-and-convincing evidentiary standard to any particular context. *See, e.g.*, *DataTern*, 2015 WL 5190715, at *7 (citing *i4i*, 564 U.S. at 95); *Trading Techs.*, 2015 WL 774665, at *3. Other district courts, however, have distinguished § 101 challenges from other types of patent-validity issues and have concluded that *i4i*'s clear-and-convincing standard does not apply to the § 101 inquiry, given that patent eligibility is a matter of law rather than fact. *See, e.g.*, *Wireless Media*, 100 F. Supp. at 410–12; *Nextpoint*, 2016 WL 3181705, at *6 (internal quotation marks omitted) ("[T]he 'clear and convincing' standard is an evidentiary standard that applies only to the resolution of factual disputes, and not to resolution of pure issues of law. . . . [T]he Federal Circuit has made clear that subject matter eligibility is a question of law.").

Having considered the positions on both sides of this issue, the Court is persuaded that the clear-and-convincing standard has no role to play in the § 101 determination at issue in this case. This conclusion is consistent with the decision

in *i4i*, which concerned factual issues pertaining to a § 102(b) patent-validity dispute and thus is not directly on point with regard to § 101. *See i4i*, 564 U.S. at 114 (Breyer, J., concurring). It also comports with the Supreme Court's and Federal Circuit's consistent treatment of § 101 patent eligibility as a threshold question of law, *see, e.g.*, *Bilski*, 545 F.3d at 951 (en banc), and it draws sound support from the *i4i* concurring justices' emphasis on the key difference between issues of law versus issues of fact in applying the clear-and-convincing standard. *i4i*, 564 U.S. at 114 (Breyer, J., concurring). Finally, while it may be true that nothing can be "conclusively read into the Supreme Court's silence in its four recent opinions under section 101," *DataTern*, 2015 WL 5190715, at *7, the fact that the Supreme Court has made no mention of the clear-and-convincing standard in any of its patent-eligibility decisions since *i4i* suggests that the standard was not meant to extend to the § 101 inquiry. For these reasons, this Court finds that the clear-and-convincing standard does not apply to HP's § 101 challenge.

This conclusion is entirely consistent with the Supreme Court's holding in *i4i*. District court decisions to the contrary seem to be premised on the notion that the clear-and-convincing standard espoused in *i4i* must be applied categorically and without exception whenever a court considers a patent's validity (or invalidity). But this is simply not the case when it comes to questions of patent eligibility under § 101, which do not involve the resolution of any factual issues. Indeed, courts regularly make § 101 determinations based upon motions to dismiss or motions for judgment on the pleadings, *see, e.g.*, *Content Extraction*, 776 F.3d at 1349;

*buySAFE*, 765 F.3d at 1352; *Alice*, 717 F.3d at 1274, *aff'd*, 134 S. Ct. 2347 (2014), at which stage all facts must be construed in the nonmovant's favor, *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).  It is difficult to see what application the clear-and-convincing evidentiary standard would have in these contexts.  In short, because there are no factual issues to be resolved in the course of the § 101 inquiry, at least as that inquiry has been structured under *Alice*, there are no factual issues to which the clear-and-convincing evidentiary standard might be pertinent.  For this reason, it is entirely consistent with the Supreme Court's decision in *i4i* to conclude that, while the clear-and-convincing standard applies to evidentiary disputes arising in patent validity challenges in general, it has no bearing on the § 101 inquiry.

It is nevertheless instructive to note that even if the Court were to reach the opposite conclusion, the disposition of HP's motion for summary judgment would be unaffected.  To undertake the § 101 inquiry in this case, the Court need only consider the asserted claims of the '713 Patent, in light of the claim construction order, and apply *Alice*'s two-part test to those claims; no inquiry into underlying factual information is needed.  *See Content Extraction*, 776 F.3d at 1349 (holding that § 101 determinations may be made at the pleading stage, prior to development of the factual record); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714–15 (Fed. Cir. 2014) (applying the two-part *Alice* framework by conducting an "examination of the claim limitations" on their face).  There are therefore no reasonably disputable material facts in this case to which the clear-and-convincing standard might be

applied.[4] *Cf. 01 Communique Lab., Inc. v. Citrix Sys., Inc.*, 151 F. Supp. 3d 778, 787 (N.D. Ohio 2015) (explaining that disagreements about the application of the *Alice* framework "do not constitute disputes of fact subject to an evidentiary standard of proof").

Having addressed this threshold question and concluded that the clear-and-convincing standard does not—indeed, could not—apply to the present issues in this case, the Court now turns to the merits of HP's motion for summary judgment.

## II.   "Abstract Idea" Analysis

In support of its motion, HP argues that the asserted claims of the '713 Patent are patent-ineligible under *Alice* because they are directed to the noninventive abstract idea of "reorganizing data (e.g. a document file) and presenting the data for manual reconciliation."[5]  Def.'s Br. at 1–2.  Berkheimer disagrees with HP's characterization of the claims, contending that HP "does not account for the [claims'] core elements and limitations."  Pl.'s Resp. at 4.

---

[4]    Berkheimer incorrectly treats the issues of whether a claim is directed to an "abstract idea" and whether a claim contains an "inventive concept" as factual questions to which the clear-and-convincing standard should apply.  *See* Pl.'s Resp. at 2 & n.4. Relatedly, Berkheimer argues that HP's Local Rule 56.1 Statement contains insufficient information to support a finding for HP on these "factual" questions.  *Id.* at 15.  But as noted above, the "abstract idea" and "inventive concept" analyses speak to matters of law. As such, Berkheimer's arguments about the sufficiency of HP's Local Rule 56.1 Statement are unavailing.

[5]    HP further argues that the asserted claims would have also been patent-ineligible under the pre-*Alice* "machine-or-transformation" test for patent eligibility.  *See* Def.'s Br. at 14–15, ECF No. 155-1.  But as the Federal Circuit has explained, "it is clear today" that the machine-or-transformation test is not dispositive of the patent eligibility of computer-implemented method claims post-*Alice*.  *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255–56 (Fed. Cir. 2014).  HP's alternative machine-or-transformation argument is therefore only an ancillary issue that the Court need not address.

Under the first step of *Alice*, the Court must determine whether the claims at issue are directed to an abstract idea. 134 S. Ct. at 2355–57. *Alice* itself did not "delimit the precise contours" of what constitutes an "abstract idea," *id.* at 2357, and "it is not always easy to determine the boundary between abstraction and patent-eligible subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1347 (Fed. Cir. 2015). Thus, the Court must rely upon "[r]ecent precedent illustrat[ing] this boundary in a variety of factual circumstances." *Id.* In determining whether a claim is drawn to an abstract idea, it is "sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).

As stated above, Claim 1 of the '713 Patent, which the Court treats as representative, recites "[a] method of archiving an item in a computer processing system" comprising four steps.[6] First, a document or graphic must be "presented" to a "parser," which can be any computer program that converts source code into object

---

[6]    The Court treats Claim 1 as representative for two reasons. First, Claim 1 is the only independent claim that Berkheimer asserts. The remaining asserted claims are dependent claims that add only minor limitations and that are directed to the same core set of features as Claim 1. *See Content Extraction*, 776 F.3d at 1348 (holding that the district court "correctly determined that addressing each claim of the asserted patents was unnecessary" when all claims were "substantially similar and linked to the same abstract idea"). Second, Berkheimer himself treats Claim 1 as representative by focusing all of his primary arguments on Claim 1's language. *See* Pl.'s Resp. at 5–13. Berkheimer includes a short paragraph in which he asserts that Claim 1 is not representative, but this assertion is conclusory. *Id.* at 13. Berkheimer advances no arguments persuading the Court that "any limitation in any of the dependent claims . . . bears on the [*Alice*] inquiry." *Nextpoint*, 2016 WL 3181705, at *3 n.2 (treating an independent claim as representative of the dependent claims where plaintiff failed to advance arguments that the independent claim was not representative).

code.  Second, the program processes the document by "parsing" it into "a plurality of multi-part object structures," some of which are given "searchable information tags."  Third, these object structures are analyzed and compared to "object structures previously stored in the archive."  At this step of the process, predetermined standards and user-defined rules instruct the computer program regarding the types of comparisons to make.  Fourth, and finally, the object structures are "presented" for "manual reconciliation" to correct any errors or "variance," also in accordance with predetermined standards and user-defined rules. '713 Patent, col. 47 ll.9–21.

At their core, these four steps describe instructions for using a generic computer to collect, organize, compare, and present data for reconciliation prior to archiving.  Claims that are based on these types of conventional data-gathering activities are unquestionably directed to an abstract idea under the first part of the *Alice* framework, as the Federal Circuit has concluded in examining claims similar to those at issue here.  For example, in *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014), the Federal Circuit considered claims that it summarized as reciting a method for "extracting data from hard copy documents using an automated digitizing unit such as a scanner," "recognizing specific information from the extracted data," and "storing that information in a memory" to allow an ATM to recognize information on checks.  *Id.* at 1345.  In holding the claims patent-ineligible under § 101, the court characterized them as directed to the "indisputably well-known" abstract idea of "collecting" data,

"recognizing" certain data within the collected data set, and "storing that recognized data in a memory." *Id.* at 1347.

Although they operate in the context of archiving rather than consumer banking, the asserted claims of the '713 Patent are closely analogous to the claims in *Content Extraction* because they are also directed to the abstract idea of collecting and analyzing stored data. Berkheimer disagrees, arguing that the claims are not abstract because they include "transformative" core features such as a "parser," "searchable information tags," and the instruction to "parse" documents into "a plurality of multi-part object structures." Pl.'s Resp. at 5. But these features involve conventional data-gathering steps that are not meaningfully distinguishable from the core features of the claims in *Content Extraction*. Nor are they meaningfully distinguishable from the numerous other claimed methods of gathering, organizing, analyzing, or displaying data that the Federal Circuit has held to be directed to patent-ineligible abstract ideas. *See FairWarning IP, LLC v. Iatric Systems, Inc.*, No. 2015-1985, 2016 WL 5899185, at *1 (Fed. Cir. Oct. 11, 2016) (method for detecting fraud by recording patient data, analyzing the data according to predetermined rules, and creating notifications upon detection of misuse was patent-ineligible); *Elec. Power Grp. v. Alstrom S.A.*, 830 F.3d 1350, 1351–52 (Fed. Cir. 2016) (method for "performing real-time performance monitoring of an electric power grid by collecting data from multiple data sources, analyzing the data, and displaying the results" was patent-ineligible); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 609–10 (Fed. Cir. 2016) (method for assigning

classification data to digital images and organizing the images on a server based on the classification information was patent-ineligible); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1360–62 (Fed. Cir. 2015) (method for using various "data-gathering steps" to enable automated price-optimization of products for sale was patent-ineligible); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1351–55 (Fed. Cir. 2014) (method of using data-gathering functions of a computer program to facilitate commercial transactions was patent-ineligible); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1347, 1350–51 (Fed. Cir. 2014) (method for "creating a device profile within a digital image processing system" by gathering data and "organizing this [data] into a new form" was patent-ineligible). These Federal Circuit precedents provide abundant support for the conclusion that Claim 1 of the '713 Patent, which describes steps for collecting, organizing, comparing, and presenting data, is directed to an abstract idea under *Alice*.

The additional steps described in the asserted dependent claims are likewise drawn to abstract ideas. Specifically, Claim 2 adds to Claim 1 by allowing a human to "manually edit[ ]" items. Claim 3 recites the step of converting data to a "standardized format" before inputting it into the generic program described in Claim 1. Claim 4 recites "storing a reconciled object structure in the archive without substantial redundancy"—in other words, efficiently storing information in an archive. Claim 5 recites editing items by copying a one-time change across multiple archived items. In turn, Claim 6 recites the output of an item edited as

described in Claim 5, and Claim 7 recites the output of not one but a "plurality" of such items.  Finally, Claim 9 adds to Claim 1 by reciting the step of compiling data in a computer archive.  '713 Patent, col.47 ll.22–55.  These dependent claims do not place any meaningful limitation on the method described in Claim 1, because they are drawn to the abstract ideas of editing data manually (Claims 2 and 5), formatting and storing data (Claims 3, 4, and 9), and editing data in a straightforward copy-and-paste fashion (Claims 5, 6, and 7).  *Cf. Elec. Power Grp.*, 830 F.3d at 1351–52; *Content Extraction*, 776 F.3d at 1345–47.

In disputing that the asserted claims are drawn to abstract ideas, Berkheimer relies on the Federal Circuit's recent decision in *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016).  In *Enfish*, the Federal Circuit considered a claim describing "an innovative logical model for a computer database" containing a "self-referential property."  *Id.* at 1330.  This "self-referential" logical model had two features not found in conventional database models: it was capable of "stor[ing] all entity types in a single table," rather than requiring separate tables, and it could "define the table's columns by rows in that same table," thus giving the model its "self-referential" property.  *Id.* at 1332; *see also id.* at 1330–34 (comparing the structure of conventional versus self-referential logical models in further detail).  The court concluded that the claim was not directed to a mere "abstract idea" because it was "focus[ed] . . . on the specific asserted improvement in computer capabilities (i.e. the self-referential table for a computer database)."  *Id.* at 1336.

Pointing to this holding, Berkheimer contends that *Enfish* stands for the far-reaching proposition that "any improvement to computer functionality itself bypasses the *Alice* step 1 abstract idea ineligibility exception." Pl.'s Not. Supplemental Authority at 1, ECF No. 165. Berkheimer's argument relies on a misreading of *Enfish*. It is true that the *Enfish* court characterized the first step of *Alice* as an inquiry into whether the claims at issue were "directed to an improvement to computer functionality versus [ ] directed to an abstract idea." *Enfish*, 822 F.3d at 1335. But *Enfish* did not go so far as to hold that *any* method purporting to improve computer functionality is patent-eligible under *Alice*. *See id.* (explaining that only "*some* improvements in computer-related technology" are "not abstract, such as a chip architecture, an LED display, and the like") (emphasis added). Moreover, the decision did nothing to unsettle past Federal Circuit case law holding that claims calling for the addition of "conventional computer components to well-known business practices" are drawn to an abstract idea, *id.* at 1338, even when those claims purport to improve computer functionality through increased speed or efficiency. *See, e.g.*, *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) ("Nor, in addressing the second step of *Alice*, does claiming the improved speed or efficiency inherent with applying the abstract idea on a computer provide a sufficient inventive concept."); *Digitech*, 758 F.3d at 1347–48 (holding that a method claim reciting an "abstract process of gathering and combining data" was patent-ineligible even though it aimed to improve the accuracy of imaging devices). Here, the claims in the '713 Patent purport to improve digital

archiving by "promot[ing] efficiency," "achiev[ing] object integrity," and "reduc[ing] turnaround time and costs." '713 Patent, col.2 ll.38–52, col.3 ll.40–50. These types of generic technological improvements can result from virtually any computer implementation of conventional business methods. The Court therefore disagrees with Berkheimer that its claims are directed to the kinds of specific, concrete, nonconventional improvements that made the claims in *Enfish* patent-eligible.

The asserted claims of the '713 Patent are distinguishable from the *Enfish* claims in other ways as well. In *Enfish*, the claims at issue provided a specific, step-by-step algorithm instructing how to set up the self-referential data table covered by the plaintiff's patent. *Enfish*, 822 F.3d at 1336–37 (providing the relevant claim language); *id.* at 1337 ("Here, the claims are not simply directed to *any* form of storing tabular data, but instead are specifically directed to a *self-referential* table for a computer database."). In contrast, the claims of the '713 Patent provide broadly phrased instructions to "present" a document to a parser, "parse" the document, "evaluate" the document after it has been parsed, and "present" the evaluated data to a person for "manual reconciliation." '713 Patent, col.47 ll.9–21. They offer no specific guidance as to how one might actually create a computer program or a computer processing system capable of carrying out these generic tasks. *Cf. TLI*, 823 F.3d at 612–15 (distinguishing *Enfish* on similar grounds and holding that a method claim for a server "described simply in terms of performing generic computer functions such as storing, receiving, and extracting data" was directed to a patent-ineligible abstract idea). In light of these significant differences

in the nature of the asserted claims, the Court finds that *Enfish* does not control the outcome of this case.

## III.   "Inventive Concept" Analysis

Because the representative claim of the '713 Patent is directed to the abstract idea of collecting, organizing, comparing, and presenting data, the Court must next consider whether the claims contain an "inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2357 (internal quotation marks omitted).   Berkheimer argues that the claims include an inventive concept because they solve a problem "necessarily rooted in computer technology" and because they are "innovative enough to override the routine and conventional use of the computer."  Pl.'s Resp. at 6.

Berkheimer's arguments are framed in language drawn from the Federal Circuit's decision in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014).   In that case, the Federal Circuit considered a computer-implemented method patent that claimed "systems and methods of generating a composite web page that combine[d] certain visual elements [such as logos, colors, and fonts] of a 'host' website with content of a third-party merchant."   *Id.* at 1248.   Upon "activation of a hyperlink on a host website," these systems directed web users to a composite website that "retain[ed] the host website's 'look and feel,'" rather than taking users to a website wholly separate from the site of the original host.  *Id.* at 1248–49.   The Federal Circuit held that these methods included an inventive concept because they described a "solution [ ] necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of

computer networks" (namely, the problem of retaining website visitors) and because they "overr[ode] the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink." *Id.* at 1257–58.

Berkheimer compares his claims to the claims in *DDR Holdings* by emphasizing that the '713 Patent "present[s] solutions to problems in computerized digital asset management systems, including: redundancy, one-to-many editing, and efficient digital asset control and usage." Pl.'s Resp. at 7. Yet this description of the claims undercuts Berkheimer's own argument that the claims solve problems "necessarily rooted in computer technology." *Id.* at 6. The need to minimize redundancy in archival systems and to increase efficiency in editing, control, and usage of archived items is a challenge that by no means arises uniquely in the field of computer technology. Rather, it is a challenge that arises in any archival system, regardless of whether a computer is involved.

Moreover, instead of describing a process that overrides the routine and conventional use of a computer, each of the independent and dependent claims describes steps that employ only "well-understood, routine, and conventional" computer functions. *Content Extraction*, 776 F.3d at 1348 (citing *Alice*, 134 S. Ct. at 2359). Conventional steps limited to a "particular technological environment" and involving the use of a generic computer program to collect, store, analyze, edit, or present data do not contain an inventive concept sufficient to render the claims patent-eligible. *Alice*, 134 S. Ct. at 2358 (quoting *Bilski v. Kappos*, 561 U.S. 593, 610–11 (2010)); *see also Tranxition*, 2016 WL 6775967, at *3 (holding that method

claims for automatically migrating user information between two computers did not include an inventive concept, even though the computers performed the task differently than a human); *Content Extraction*, 776 F.3d at 1347–48 (holding that method claims did not include an inventive concept when they focused primarily on computerized "data collection, recognition, and storage"); *Digitech*, 758 F.3d at 1351 (holding that claims did not contain an inventive concept when they described a method for digitally "gathering and combining data" and "organizing this information into a new form"). Berkheimer's arguments based on *DDR Holdings* are therefore unpersuasive.[7]

Finally, Berkheimer contends that the asserted claims are inventive because they are written with the "requisite degree of specificity." Pl.'s Resp. at 6, 8. This last argument is likewise unpersuasive. The claims of the '713 Patent, while rife with technical terms, recite the claimed methods at a relatively high level of generality. They neither disclose a specific algorithm instructing how the methods are to be implemented nor require the use of any particular computer hardware,

---

[7] After the briefing on the present motion for summary judgment concluded, the Federal Circuit decided numerous § 101 cases, three of which involved method claims deemed to be patent-eligible. *See Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, No. 2015-1180, 2016 WL 6440387, at *1, 9–15 (Fed. Cir. Nov. 1, 2016) (methods of metering network bandwidth usage were patent-eligible); *McRO, Inc. v. Bandai Namco Games Am. Inc.*, No. 2015-1080, 2016 WL 4896481, at *7–10 (Fed. Cir. Sept. 13, 2016) (method of programming a computer to produce accurate "lip synchronization and facial expressions in animated characters" was patent-eligible); *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1351–52 (Fed. Cir. 2016) (method for "filter[ing] content on the Internet that overcomes existing problems with other Internet filtering systems" was patent-eligible). Based on its own review of the Federal Circuit's recent decisions, the Court concludes that Berkheimer's asserted claims are distinguishable from the claims in these three cases for the same reasons that his claims are distinguishable from the claims in *Enfish*, discussed *supra*, and *DDR Holdings*.

software, or "parser." As such, "[t]hough lengthy and numerous, the claims do not go beyond requiring the collection, analysis, and display of available information" in the field of digital archiving, "stating those functions in general terms, without limiting them to technical means for performing the functions that are arguably an advance over conventional computer and network technology." *Elec. Power*, 830 F.3d at 1351. Without offering a specific, concrete contribution to the technology of digital archiving, the asserted independent and dependent claims cannot be said to contain an inventive concept rendering them patent-eligible.

## Conclusion

For the reasons stated herein, the Court finds that Claims 1–7 and 9 of the '713 Patent are invalid for lack of patent eligibility under 35 U.S.C. § 101. Defendant Hewlett-Packard Company's motion for summary judgment [155] is therefore granted. This case is hereby terminated.

**IT IS SO ORDERED.**          **ENTERED**   **12/12/16**

_____
**John Z. Lee**
**United States District Judge**