**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **STEVEN E. BERKHEIMER,** | |
| Plaintiff, | Civil Action No. 1:12-cv-09023 |
| v. | Hon. John Z. Lee |
| **HEWLETT-PACKARD COMPANY,** | Hon. Jeffrey T. Gilbert |
| Defendant. | |

**DEFENDANT HP'S BRIEF IN SUPPORT**
**OF ITS MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

I. CLAIMS 4-7 ARE INDEFINITE UNDER 35 U.S.C. § 112 ............................................ 1

II. CLAIMS 4-7 ARE PATENT INELIGIBLE UNDER 35 U.S.C. § 101 ........................... 4

    A. CLAIM 4 IS INELIGIBLE UNDER 35 U.S.C. § 101 ......................................... 5

    B. CLAIM 5 IS INELIGIBLE UNDER 35 U.S.C. § 101 ......................................... 5

    C. CLAIM 6 IS INELIGIBLE UNDER 35 U.S.C. § 101 ......................................... 6

    D. CLAIM 7 IS INELIGIBLE UNDER 35 U.S.C. § 101 ......................................... 6

III. AS A MATTER OF LAW PLAINTIFF CANNOT DEMONSTRATE HP
INFRINGES CLAIMS 4-7 ......................................................................................... 7

    A. PLAINTIFF'S INFRINGEMENT ALLEGATIONS BASED ON HP'S
MAKING, SELLING, AND IMPORTING OF THE EXSTREAM
SOFTWARE ARE LEGALLY INCORRECT ...................................................... 7

    B. PLAINTIFF HAS NO EVIDENCE OF DIRECT INFRINGEMENT
BASED ON USE BY HP ....................................................................................... 8

    C. PLAINTIFF HAS NO EVIDENCE OF DIRECT INFRINGEMENT BY A
THIRD PARTY AND CANNOT PROVE INDIRECT INFRINGEMENT
BY HP ..................................................................................................................... 10

    D. PLAINTIFF HAS NO EVIDENCE OF KNOWLEDGE AND INTENT
AND CANNOT PROVE INDIRECT INFRINGEMENT ................................... 12

    E. PLAINTIFF'S LACK OF EXPERT TESTIMONY ON INDIRECT
INFRINGEMENT IS ALSO FATAL................................................................... 13

    F. THERE IS NO EVIDENCE OF INFRINGEMENT UNDER THE
DOCTRINE OF EQUIVALENTS ...................................................................... 14

    G. THERE IS NO EVIDENCE OF JOINT INFRINGEMENT ............................... 15

IV. CONCLUSION........................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
    573 U.S. 208 (2014) ....................................................................................................4

*Berkheimer v. HP Inc.,*
    881 F.3d 1360 (Fed. Cir. 2018) ......................................................................... *passim*

*BSG Tech LLC v. Buyseasons, Inc.,*
    899 F.3d 1281 (Fed. Cir. 2018) ...................................................................................5

*Carnegie Mellon U. v. Marvell Tech. Group, Ltd.,*
    888 F. Supp. 2d 637 (W.D. Pa. 2012) ......................................................................14

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.,*
    631 F.3d 1279 (Fed. Cir. 2011) .................................................................................15

*Centricut, LLC v. Esab Grp., Inc.,*
    390 F.3d 1361 (Fed. Cir .2004) .................................................................................13

*Commil USA, LLC v. Cisco Sys., Inc.,*
    575 U.S. 632 (2015) .................................................................................................13

*DSU Med. Corp. v. JMS Co., Ltd.,*
    471 F.3d 1293 (Fed. Cir. 2006) .................................................................................13

*ePlus, Inc. v. Lawson Software, Inc.,*
    700 F.3d 509 (Fed. Cir. 2012) ...................................................................................11

*Global-Tech Appliances, Inc. v. SEB S.A.,*
    563 U.S. 754 (2011) .............................................................................................7, 12

*Intell. Ventures I LLC v. Motorola Mobility LLC,*
    870 F.3d 1320 (Fed. Cir. 2017) .............................................................................7, 10

*Interval Licensing LLC v. AOL, Inc.,*
    766 F.3d 1364 (Fed. Cir. 2014) ..............................................................................1, 4

*Joy Techs., Inc. v. Flakt, Inc.,*
    6 F.3d 770 (Fed. Cir. 1993) ....................................................................................7, 8

*Lear Siegler, Inc. v. Sealy Matteess Co. of Mich., Inc.,*
    873 F.2d 1422 (Fed. Cir. 1999) .................................................................................14

ii

*LifeNet Health v. LifeCell Corp.*,
    837 F.3d 1316 (Fed. Cir. 2016)...........................................................................8

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009).........................................................................12

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    566 U.S. 66 (2012)...............................................................................................4

*Muniauction, Inc. v. Thomson Corp.*,
    532 F.3d 1318 (Fed. Cir. 2008)......................................................................7, 8

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014)..........................................................................................1, 3

*PersonalWeb Techs. LLC v. Int'l Bus. Machines Corp.*,
    16-CV-01266-EJD, 2017 WL 2180980 (N.D. Cal. May 18, 2017).........................15

*Texas Instruments Inc. v. Cypress Semiconductor Corp.*,
    90 F.3d 1558 (Fed. Cir. 1996)...........................................................................14

*Vita-Mix Corp. v. Basic Holding, Inc.*,
    581 F.3d 1317 (Fed. Cir. 2009).........................................................................13

**Federal Statutes**

35 U.S.C. § 101............................................................................................1, 4, 5, 6

35 U.S.C. § 112...................................................................................................1, 4

35 U.S.C. § 271.....................................................................................................12

Defendant HP Inc. respectfully moves for summary judgment on the following independent grounds:

- The remaining asserted claims 4-7 of the asserted patent, U.S. Patent No. 7,447,713 (the "'713 Patent"), are indefinite under 35 U.S.C. § 112 because they all contain the claim term "without substantial redundancy." This Court and the Federal Circuit have already held the similar claim term "minimal redundancy" to be indefinite, and there is no basis to hold otherwise with regards to "without substantial redundancy."

- Claims 4-7 are patent ineligible under 35 U.S.C. § 101. The Federal Circuit has already held they recite only abstract ideas, and Plaintiff's experts' admissions from the more developed record on remand demonstrate there is not an inventive concept.

- There is no evidence that anyone has ever reconfigured HP Exstream from its default settings and used it in a way that would infringe the methods recited in claims 4-7.

## I.    CLAIMS 4-7 ARE INDEFINITE UNDER 35 U.S.C. § 112

Each of the remaining claims contains a limitation requiring the storing of a reconciled object structure in the archive "without substantial redundancy." Dkt. 1-1 (Ex. A to Complaint, '713 Patent); HP's Statement of Undisputed Material Facts ("SUMF") ¶¶2, 12. This term is indefinite and, as such, claims 4-7 are invalid. Under 35 U.S.C. § 112, patent claims must "particularly point[] out and distinctly claim[] the subject matter" regarded as the invention. A lack of definiteness renders the claims invalid. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 902 (2014). Claims, viewed in light of the specification and prosecution history, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Id.* at 910; *see also Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) ("The claims . . . must provide objective boundaries for those of skill in the art.").

This Court previously found the similar claim term "minimal redundancy" in claims 10-19 of the '713 Patent indefinite under 35 U.S.C. § 112. Dkt. 123; SUMF ¶4. The Federal Circuit affirmed this ruling. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1364 (Fed. Cir. 2018). In doing so, the Federal Circuit explained that "[t]his claim language is not reasonably clear as to what level of

redundancy in the archive is acceptable." *Id.* at 1363. The Federal Circuit further noted "[t]he specification uses inconsistent terminology to describe the level of redundancy that the system achieves" and "[t]he specification contains no point of comparison for skilled artisans to determine an objective boundary of 'minimal' when the archive includes some redundancies." *Id.* at 1363-64. Finally, the Federal Circuit recognized "[t]he prosecution history does not add clarity," nor does it "explain how much redundancy is permitted." *Id.*

In holding the term "minimal redundancy" to be indefinite, the Federal Circuit rejected Plaintiff's argument that the "archive" itself provided the "objective" baseline to measure what exhibits redundancy: "Mr. Berkheimer's argument that 'the archive' provides an objective baseline to measure what exhibits 'minimal redundancy' misses the point. . . . [T]he issue is not *what* must exhibit minimal redundancy, but rather *how much* is minimal." *Id.* (emphasis in original).

In view of the Federal Circuit's reasoning, there is no basis to adjudicate the term "without substantial redundancy" any differently than the term "minimal redundancy." The specification contains no point of comparison for skilled artisans to determine an objective boundary of "without substantial redundancy," and the prosecution history does not add clarity, nor does it explain how much redundancy is permitted. HP's expert, Dr. Dan Schonfeld, explained in his expert report that the term "without substantial redundancy" "suffers from the same fundamental indefiniteness shortcomings" as the term "without substantial redundancy." Dkt. 155-2, ¶24; SUMF ¶13.

The primary argument that Plaintiff's technical expert, Dr. Peter Nelson, provided in response, is that "the archive storage . . . provides the objective measure." Dkt. 164-3, ¶243; SUMF ¶14; *see also* Ex. 1[1] ("Nelson Dep. Tr.") at 165:17-166:12. But this is the same argument

---

[1] All Exhibit references are to the Exhibits attached to HP's accompanying Statement of Undisputed Material Facts.

that the Federal Circuit specifically rejected: "Mr. Berkheimer's argument that 'the archive' provides an objective baseline to measure what exhibits 'minimal redundancy' misses the point. . . . [T]he issue is not *what* must exhibit minimal redundancy, but rather *how much* is minimal." *Berkheimer*, 881 F.3d at 1364. Dr. Nelson's only other attempted justifications for why the terms "minimal redundancy" and "without substantial redundancy" should be treated differently were (1) the "context" and "wording" are different, and (2) many patents use the term "substantial." Nelson Dep. Tr. at 167:1-23; SUMF ¶17. While the words "without substantial" are literally not the same as "minimal" and appear in different claims, that is a distinction without a difference because the terms are synonyms and refer to some unmeasurable level of redundancy. There is no record evidence indicating "without substantial" is any more definite than "minimal." And Dr. Nelson admitted that his report fails to identify even a single example of a patent that uses the term "substantial" in a definite way. *See* Nelson Dep. Tr. at 172:4-24; SUMF ¶18. Even if he had, that the word "substantial" may be definite in other contexts does not make it definite here.

Tellingly, Dr. Nelson admitted during his deposition that he has not identified or offered any opinion about (1) how much redundancy the term "without substantial redundancy" permits, (2) the proper definition of "without substantial redundancy," or (3) where the specification explains how much redundancy is permitted while still being "without substantial redundancy." *Id.* at 174:20-175:18; SUMF ¶19. Dr. Nelson further testified the term is "somewhat relative" but provided no explanation in his report or during his deposition on how that "somewhat relative" term could be measured by a skilled artisan. *See* Nelson Dep. Tr. 112:1-23; SUMF ¶20. And Dr. Nelson provided no example where an object or a library component was stored in an archive "without substantial redundancy." *Id.* at 113:20-25; SUMF ¶21. Dr. Nelson's testimony is fatal to Plaintiff's definiteness argument. *See Nautilus,* 572 U.S. at 902 (requiring "reasonable

certainty" as to the scope of a claim); *Interval Licensing*, 766 F.3d at 1371 (requiring claims to "provide objective boundaries for those of skill in the art.").

For the same reasons the term "minimal redundancy" is indefinite, the term "without substantial redundancy" is indefinite under § 112. Such a holding disposes of the case, and the Court need not consider HP's remaining summary judgment arguments.

## II.  CLAIMS 4-7 ARE PATENT INELIGIBLE UNDER 35 U.S.C. § 101

Claims 4-7 are not just indefinite under 35 U.S.C. § 112, they are also patent ineligible under 35 U.S.C. § 101. This Court previously held claims 1-7 and claim 9 ineligible under 35 U.S.C. § 101. Dkt. 188; SUMF ¶7. The Federal Circuit affirmed this Court's holding that claims 1-3 and 9 are ineligible after applying the Supreme Court's two-step test from *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014).[2]

For claims 4-7, under *Alice* Step 1, the Federal Circuit held that the claims are all directed to abstract ideas. *Berkheimer*, 881 F.3d at 1366 ("We hold that . . . claim 4 is directed to the abstract idea of parsing, comparing, and storing data; and claims 5-7 are directed to the abstract idea of parsing, comparing, storing, and editing data."). As to *Alice*'s Step 2, based on the limited record on appeal, the Federal Circuit held there were questions of fact as to whether the additional limitations found in dependent claims 4-7 recite well-understood, routine, and conventional technological features. *Id.* at 1370.

As a result of the Federal Circuit's ruling, the first step of the *Alice* test has been decided

---

[2] At step one the court must determine "whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea. *Id.* At step two the court must evaluate whether the claims recite "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l,* 573 U.S. 208, 217-18 (2014). A claim reciting only "well-understood, routine, conventional activity" or technology—such as general-purpose computers or databases—does not constitute an "inventive concept." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.,* 566 U.S. 66, 73 (2012).

in HP's favor for all of the remaining claims. The only open issues for this Court to decide on remand for this Section 101 analysis is whether the additional limitations in dependent claims 4-7 recite well-understood, routine, and conventional technological features.

The parties developed the record further, and now the record evidence shows that the additional features of dependent claims 4-7 were well-understood, routine, and conventional in 2000, the year of the alleged invention, and claims 4-7 are patent ineligible as a matter of law. *See, e.g.*, Exs. 1-2 (deposition transcripts of Plaintiff's technical expert Dr. Nelson and Plaintiff's source code expert Dr. Andrew Pavlo, which were not before the appellate court); SUMF ¶22.

### A.    Claim 4 is Ineligible Under 35 U.S.C. § 101

Claim 4 adds to claim 1 the additional action of storing a reconciled object structure without substantial redundancy. The Federal Circuit held "storing data" to be part of claim 4's abstract idea. *Id.* at 1366. As the Federal Circuit clarified after *Berkheimer*, "[i]f a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1291 (Fed. Cir. 2018). Such is the case here: claim 4's only possible "inventive concept" is to apply the abstract idea of storing information by using the conventional technique of reducing redundancy (or, if the term were definite, "avoiding substantial redundancy"), which renders claim 4 ineligible. *See* Nelson Dep. Tr. 68:6-10; Pavlo Dep. Tr. 28:11-18; SUMF ¶26 (Plaintiff's experts admitting that a skilled artisan knew before 2000 the benefits of reducing the storage of redundant information and how to reduce the storage of redundant information). The evidence shows claim 4 only recites well-understood, routine, and conventional technological features and is patent ineligible under § 101.

### B.    Claim 5 is Ineligible Under 35 U.S.C. § 101

Claim 5 adds to claim 4 the additional action of editing an object structure to "effect a one

to many change." The Federal Circuit held "editing data" to be part claim 5's abstract idea. *Berkheimer*, 881 F.3d at 1366. And "one-to-many editing" was undeniably well-known at the time of the alleged invention and therefore provides no "inventive concept" beyond the underlying abstract idea. Dkt. 155-2, ¶122; SUMF ¶28. Indeed, Dr. Nelson and Dr. Pavlo testified the "one to many editing" element of claim 5 was "a conventional feature of C++" prior to the date of the invention. Nelson Dep. Tr. 201:14-25; Pavlo Dep. Tr. 30:6-17, 36:8-21; *see also* Pavlo Dep. Tr. 125:7-126:25 (similar use of foreign key reference was known before the 1990s); SUMF ¶28. The evidence shows claim 5 only recites well-understood, routine, and conventional technological features and is patent ineligible under § 101.

### C. Claim 6 is Ineligible Under 35 U.S.C. § 101

Claim 6 adds to claim 5 the additional action of compiling an item that has been edited to be output. But compiling an output was not inventive in 2000. Dkt. 155-2, ¶145. Dr. Pavlo admitted skilled artisans were familiar with processes for database compiling of items in the 1990s. Pavlo Dep. Tr. 24:22-25:1; SUMF ¶30. The evidence shows claim 6 only recites well-understood, routine, and conventional technological features and is patent ineligible under § 101.

### D. Claim 7 is Ineligible Under 35 U.S.C. § 101

Claim 7 adds to claim 6 the additional action of compiling multiple items where there is a linkage in the archive. As explained with claim 6, compiling output from an archive is was well-known and not inventive in 2000. Dkt. 155-2, ¶145. And Dr. Pavlo testified that relational databases that included linked objects have existed since 1969. Pavlo Dep. Tr. 28:20-29:1; SUMF ¶32. The evidence shows claim 7 only recites well-understood, routine, and conventional technological features and is patent ineligible under § 101.

Thus, in view of the complete record, each of the limitations in claims 4-7 merely recites conventional technological features known at the time the '713 Patent was filed. And there is no

evidence indicating that when viewed in combination the elements of claims 4-7 recite anything more than a computer performing its expected functions. Dkt. 155-2, ¶¶101, 122-26; SUMF ¶33. The record demonstrates that each limitation that is not part of the abstract idea in claims 4-7 was well-understood, routine, and conventional by 2000 (*i.e.*, the year of the alleged invention).

## III. AS A MATTER OF LAW PLAINTIFF CANNOT DEMONSTRATE HP INFRINGES CLAIMS 4-7

Plaintiff alleges HP directly and indirectly infringes the methods recited in claims 4-7. Dkt. 20, ¶9, 11-13. But Plaintiff has no evidence to support this accusation. To prove HP directly infringes these method claims, HP must be shown to actually perform each and every step recited in the claims. *Muniauction, Inc. v. Thomson Corp*., 532 F.3d 1318, 1328 (Fed. Cir. 2008). Selling HP Exstream software alone cannot infringe the method claims, and there is no evidence any HP employees has ever used HP Exstream in an infringing manner. If HP itself does not perform all the steps in the claims, it does not infringe those claims. *Joy Techs., Inc. v. Flakt, Inc*., 6 F.3d 770, 774-75 (Fed. Cir. 1993). To prove HP indirectly infringes these method claims, Plaintiff must first show that a third party directly infringes the claims. *Intell. Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1331 (Fed. Cir. 2017). Without proof of direct infringement by another, HP cannot be liable for indirect infringement. *Id.* Even if Plaintiff could prove a third party directly infringes the claims, Plaintiff must also prove HP had knowledge of the '713 Patent and induced or contributed to the direct infringement by the third party. *Global-Tech Appliances, Inc. v. SEB S.A*., 563 U.S. 754, 765-766 (2011). Plaintiff cannot meet its burden of proof on any of these infringement theories, and HP should be granted summary judgment on each of them.

### A. Plaintiff's Infringement Allegations Based On HP's Making, Selling, And Importing Of The Exstream Software Are Legally Incorrect

It is black letter law that a method claim is only infringed when the method is performed, not when a product is made, sold, offered for sale, or imported. *E.g., Muniauction,* 532 F.3d at

1328; *Joy Techs,* 6 F.3d at 774-75 ("[A] method claim is not directly infringed by the sale of an apparatus even though it is capable of performing only the patented method. The sale of the product is not a sale of the method. A method claim is *directly* infringed only by one practicing the patented method."). Yet Plaintiff alleges that the making, selling, and/or importing of HP Exstream software directly infringes the method claims of the patent-in-suit. Dkt. 20, ¶9, 11-13; SUMF ¶34. And Plaintiff's experts opined that HP can be liable for direct infringement because they (incorrectly) understood that HP could infringe claims 4-7 by merely making, selling, and/or importing HP Exstream software. Nelson Tr. 43:21-25; Pavlo Tr. 55:21-56:17, 57:10-59:1; SUMF ¶56. This is impossible as a matter of law, and HP should be granted summary judgment on these allegations. *Muniauction,* 532 F.3d at 1328.

### B.      Plaintiff Has No Evidence Of Direct Infringement Based On Use By HP

It is also black letter law that a method claim is directly infringed only when each of the method steps is performed **by the accused infringer**. *See, e.g.*, *LifeNet Health v. LifeCell Corp*., 837 F.3d 1316, 1325 (Fed. Cir. 2016) (direct infringement of a method claim requires all steps of the claimed method to be performed by or attributable to a single entity, the alleged infringer). Plaintiff has presented no evidence that HP has performed every step of the methods recited in claims 4-7. Both of Plaintiff's experts rely upon actions allegedly taken by **customers** of HP Exstream, not HP itself, to support their infringement opinions.

Dr. Nelson, one of Plaintiff's technical experts, repeatedly cites to actions performed by customers of HP Exstream software to support his infringement opinions:

- "The **administrator** uses the Database Utility program proved by HP/Exstream to create and initialize a design database on their computers." Ex. 3, ¶70, SUMF ¶37;

- "A **designer** using HP Exstream can bring up two different design objects in *Design Manager* and do a side-by-side comparison of the two separate objects." *Id.* at ¶84, SUMF ¶37;

8

- "A **designer** using HP Exstream can compare the plurality of multipart object structures obtained by the previous parsing step with other multipart objects previously stored in the archive to determine if there is a variance between a predetermined standard (e.g., a company standard) or a user defined rule." *Id.* at ¶85, SUMF ¶37;

- "HP Exstream lets designated **approvers** review and approve new objects in the system before they are used. **Designers** with proper permissions can create new objects but the objects must be approved before being used in production." *Id.* at ¶88, SUMF ¶37;

- "When a changed object or component is presented to the **approver**, the **approver** sees the changes proposed by viewing the object in Design Manager or its content in Designer. The approval could be that the **approver** just looked at it and concluded it conforms to their corporate standards – it might not be an approval relative to another object or another version." *Id.* at ¶91, SUMF ¶37.

Dr. Pavlo, Plaintiff's source code expert, also repeatedly cites to actions performed by customers of HP Exstream software to support his infringement opinions:

- "Using a database to store design objects in Exstream is necessary because computer programs do not normally preserve the contents of their internal objects when they stop running. In other words, if a **user** manipulates an object in the Designer and closers the application, then the changes made to that object are lust unless it is saved somewhere." Ex. 4, ¶57, SUMF ¶38;

- "When setting up a new Exstream installation, the **administrator** first creates a new database instance." *Id.* at ¶58, SUMF ¶38;

- "To initiate this process, the Design Manager provides an option for the **user** to select a DXF file that exists outside of the system (i.e., stored on their local computer). When the **user** selects the target DXF file, the Design Manager presents it to its parser . . . ." *Id.* at ¶61, SUMF ¶38;

- "For this limitation, I describe how the Design Manager facilitates the ability for a **designer**, and **administrator**, or a designated **approver** to evaluate the plurality of multi-part object structures of the foregoing parsing step in Exstream against previously stored object structures." *Id.* at ¶71, SUMF ¶38;

- "A **designer**, an **administrator**, or a designated **approver** can then select one of the objects (inclusive of its plurality of multi-part object structures) created from parsing the DXF file from the Design Manager and open it in the Designer in order to examiner or modify it. Here a **designer** can analyze and compare the plurality of multi-part object structures . . . ." *Id.* at ¶75, SUMF ¶38.

All of these statements refer to actions that could only possibly be performed by a customer of HP Exstream, not by HP. *See also* Nelson Dep. Tr. 79:13-17, 133:19-134:15, 135:24-136:3, 149:20-150:7 (Plaintiff's expert specifically testifying he is aware of no evidence of an HP employee ever using HP Exstream software in an infringing manner); SUMF ¶49.

As a result, there is no evidence HP itself has ever performed all of the steps recited in claims 4-7, and this Court should grant summary judgment of no literal direct infringement by HP.

### C.  Plaintiff Has No Evidence Of Direct Infringement By A Third Party And Cannot Prove Indirect Infringement By HP

There is also no evidence that any third-party customers of HP Exstream ever infringed any of the method claims. It is black letter law that a method claim is indirectly infringed pursuant to §§ 271(b) and (c) only when there is a direct infringer that practices all the steps. *See, e.g.*, *Intell. Ventures*, 870 F.3d at 1331 ("a finding of direct infringement is predicate to any finding of indirect infringement"). As Plaintiff's experts testified, repeatedly, there is no evidence that a single HP Exstream user—not a customer, not Plaintiff, and not even Plaintiff's experts—ever practiced the methods recited in claims 4-7 **using HP Exstream**. Nelson Dep. Tr. 78:11-79:3, 83:1-6, 95:22-96:3, 107:19-108:9, 113:20-25, 115:2-5, 115:16-116:1, 119:13-124:3, 133:3-6, 133:15-18; Pavlo Dep. Tr. 86:7-12, 87:20-23, 101:20-102:22, 103:15-104:18, 116:22-117:9, 127:16-25, 130:18-131:6, 139:11-140:13, 141:21-142:10, 147:8-13, 149:6-11; SUMF ¶48.

Indeed, all of the steps of claims 4-7 cannot even be practiced using HP Exstream. Claims 4-7 require "evaluating the object structures in accordance with object structures previously stored in an archive." SUMF ¶2. Plaintiff's experts admit this "evaluating" step is a mental step allegedly performed not by HP Exstream software but rather in the mind of the user. Pavlo Dep. Tr. 94:9-22; Ex. 3, ¶¶84, 91; Nelson Dep. Tr. 106:23-107:8; SUMF ¶46. There is no evidence a single customer has ever performed this mental step, requiring the grant of summary judgment.

10

Moreover, even if Plaintiff could somehow show that there is a question of fact as to whether HP Exstream could be configured in a certain way that is capable of practicing all of the method steps, that too is insufficient. *See ePlus, Inc. v. Lawson Software, Inc*., 700 F.3d 509, 521 (Fed. Cir. 2012) (reversing finding of infringement of a method claim where the only evidence was that the accused system was "capable" of infringing, because, for a method claim, the plaintiff "must establish that more likely than not at least one user used the accused systems to perform the [method] steps"). Indeed, the Federal Circuit has held **capability** to infringe is insufficient proof of use of a method claim where the "infringing option . . . was disabled by default," the "relevant standard and user manuals simply described how to use the product" generally, and instructions described both infringing and non-infringing uses. *See Toshiba*, 681 F.3d at 1364 (citing *ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd*., 501 F.3d 1307, 1313 (Fed. Cir. 2007) and *Fujitsu Ltd. v. Netgear Inc*., 620 F.3d 1321, 1328-29 (Fed. Cir. 2010)).

Similarly, in this case, the specific functionality at the center of Plaintiff's infringement allegations—a combination of the Basic Design Workflow feature and the Advanced Design Workflow module—is disabled by default. Ex. 6, ¶84; SUMF ¶40. And the HP Exstream user manual generally describes how to use the product. Ex. 7, HP-B00023017, at -23105-23114; SUMF ¶44. The manual not only describes non-infringing uses but **fails to describe an allegedly infringing use**. *Id.* In other words, a customer that purchases licenses to use the Basic Design Workflow and the Advanced Design Workflow module and merely follows the HP Exstream user manual's instructions on how to enable Basic Design Workflow and Advanced Design Workflow **will not practice the methods recited in claims 4-7.** The customer must perform additional steps to reconfigure the modules in the way in which Plaintiff's experts allege infringes the methods recited in claims 4-7—and, again, there is no evidence any customer has ever done so.

11

The relatively small number of customers makes it even less likely there has ever been even a single instance of infringement. The record shows only 850-900 distinct worldwide customers of HP Exstream, and only 700 enterprise customers of HP Exstream. Ex. 6, ¶83; SUMF ¶43. The Basic Design Workflow is one of many hundreds of features available to use with the HP Exstream software. Pavlo Dep. Tr. 143:24-145:15; SUMF ¶41. HP Exstream software has over 70 fully-integrated modules. Ex. 6, ¶88; Ex. 5, HP-B000360002; SUMF ¶41. The record does not reflect (1) the number of customers who even purchased a license to the Advanced Design Workflow, nor (2) how that subset of customers used the Advanced Design Workflow module. Given the sheer number of modules and the myriad of ways HP Exstream could be configured, along with the relatively small number of customers, there is no basis for a "jury in the present case [to] . . . reasonably conclude[] that, sometime during the relevant period . . . more likely than not one person somewhere in the United States" **used** the Basic Design Workflow feature and Advanced Design Workflow module to infringe. *Cf. Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301, 1318 (Fed. Cir. 2009).

Because there is no evidence any HP Exstream customer directly infringes claims 4-7, Plaintiff cannot prove indirect infringement by HP, and HP should be granted summary judgment.

### D.     Plaintiff Has No Evidence Of Knowledge And Intent And Cannot Prove Indirect Infringement

Plaintiff's indirect infringement theory is flawed for a second reason: Plaintiff cannot prove the knowledge and intent required for both forms of indirect infringement. *See Global*-Tech, 563 U.S. at 765 (substantially equating the intent requirements for 35 U.S.C. §§ 271(b) and 271(c)). There is no evidence indicating HP knew of the '713 Patent before this lawsuit was filed, nor is there any evidence HP knew or should have known selling HP Exstream could induce or contribute to actual infringement of claims 4-7; HP does not even know today if anyone ever used HP

Exstream to infringe.  *See DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006) (required intent for induced infringement is that accused infringer "knew or should have known his actions would induce actual infringements."); *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015) ("contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement."). And there is no dispute that both HP Exstream and the accused functionality therein have substantial noninfringing uses.  Ex. 6, ¶208; SUMF ¶55; *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009) ("The existence of substantial non-infringing uses for the accused blenders defeats Vita-Mix's claim for contributory infringement as a matter of law.").  The lack of knowledge and intent provides an independent basis for summary judgment of no indirect infringement by HP.

### E.   Plaintiff's Lack Of Expert Testimony On Indirect Infringement Is Also Fatal

Plaintiff's indirect infringement case is flawed for a third reason: Plaintiff's experts offer no opinions on indirect infringement.  Nelson Dep. Tr. 127:8-138:20; Pavlo Dep. Tr. 142:12-143:14.  On the other hand, HP's expert offers opinions on why HP does not infringe—either directly or indirectly.  *See, e.g.*, Ex. 6, ¶74; SUMF ¶54.  Although expert testimony is not always necessary to prove indirect infringement, "in a case involving complex technology, where the accused infringer offers expert testimony negating infringement, the patentee cannot satisfy its burden of proof by relying only on testimony from those who are admittedly not expert in the field." *Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1370 (Fed. Cir .2004).  The *Centricut* case "stands as an apt example of what may befall a patent law plaintiff who presents complex subject matter without inputs from experts qualified in the relevant points in issue when the accused infringer has negated infringement with its own expert." *Id.*  Put simply, "[i]n a case that involves complex technology such as this, when the accused infringer has provided expert

testimony negating infringement, the patent owner must respond with its own expert." *Carnegie Mellon U. v. Marvell Tech. Group, Ltd.*, 888 F. Supp. 2d 637, 641 (W.D. Pa. 2012).

In this case the accused technology is complex. *See, e.g.*, Dkt. 162, 11; SUMF ¶52. For this reason, both parties required the assistance of not just technical expert witnesses but also experts in the interpretation of source code. Even Plaintiff's expert Dr. Nelson—who has a Ph.D in Computer Science and is a Dean for the College of Engineering at the University of Illinois— was uncomfortable opining on certain issues despite having access to the source code because he "hadn't probably done a level of source code reviewed [sic] to form an opinion." Nelson Dep. Tr. 58:2-3; *id.* at 89:8-11 (describing a claim limitation as "source code intensive"); SUMF ¶53.

As a matter of law, the lack of expert testimony supporting Plaintiff's theory of indirect infringement is fatal and provides a third to grant summary judgment of no indirect infringement.

## F.     There Is No Evidence Of Infringement Under The Doctrine Of Equivalents

Neither Plaintiff nor his experts have disclosed any opinions or theories of infringement under the doctrine of equivalents. *See* Nelson Dep. Tr. 127:8-138:20; Pavlo Dep. Tr. 142:12-143:14; Dkt. 157-1; SUMF ¶51. As the Federal Circuit has counseled, "[t]he evidence and argument on the doctrine of equivalents cannot merely be subsumed in plaintiff's case of literal infringement." *Lear Siegler, Inc. v. Sealy Matteess Co. of Mich., Inc.*, 873 F.2d 1422, 1425 (Fed. Cir. 1999). Indeed, in *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1568 (Fed. Cir. 1996), the Federal Circuit affirmed a district court's grant of judgment as a matter of law of no infringement under the doctrine equivalents where the plaintiff presented testimony on direct infringement but failed to present expert testimony on the doctrine of equivalents beyond a few conclusory statements. Because Plaintiff has not presented any evidence supporting a claim of infringement under the doctrine of equivalents, summary judgment should be granted.

### G. There Is No Evidence Of Joint Infringement

Likewise, neither Plaintiff nor his experts have made any allegations of joint infringement. *See* Nelson Dep. Tr. 127:8-138:20; Pavlo Dep. Tr. 142:12-143:14; SUMF ¶51. To be liable for joint infringement, HP must be vicariously liable for the actions of others who also take part in the infringement. *See Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1286 (Fed. Cir. 2011) ("The only way that Centillion can establish 'use' by Qwest is if Qwest is vicariously liable for the actions of its customers such that 'use' by the customers may be attributed to Qwest."). Vicarious liability arises when one party controls or directs the actions of another. *Id.* There is no evidence that anyone or any group of people directly infringe, let alone that HP controls or directs the actions of anyone who hypothetically does directly infringe. Thus, HP is entitled to summary judgment of no joint infringement. *PersonalWeb Techs. LLC v. Int'l Bus. Machines Corp.*, 16-CV-01266-EJD, 2017 WL 2180980, at *17 (N.D. Cal. May 18, 2017) (granting motion for summary judgment of no joint infringement under similar circumstances).

## IV. CONCLUSION

For the foregoing reasons, claims 4-7 are indefinite and ineligible. Further, there is no evidence that HP infringes, either directly or indirectly, either literally or under the doctrine of equivalents. HP respectfully requests the Court grant HP's motion for summary judgment.

Dated: June 28, 2021                    Respectfully submitted,


                                        **MORGAN, LEWIS & BOCKIUS, LLP**

                                        /s/  *Jason C. White*
                                        Jason C. White
                                        Scott D. Sherwin
                                        Nicholas A. Restauri
                                        77 W. Wacker Drive, Suite 500
                                        Chicago, IL 60601
                                        Tel.: (312) 324-1000
                                        Fax: (312) 324-1001
                                        E-mail: jwhite@morganlewis.com
                                        E-mail: ssherwin@morganlewis.com
                                        E-mail: nicholas.restauri@morganlewis.com

                                        David J. Levy (Admitted Pro Hac Vice)
                                        dlevy@morganlewis.com
                                        Thomas R. Davis (Admitted Pro Hac Vice)
                                        tdavis@morganlewis.com
                                        MORGAN, LEWIS & BOCKIUS, LLP
                                        1000 Louisiana Street, Suite 4000
                                        Houston, Texas 77002
                                        +1.713.890.5000 Telephone
                                        +1.713.890.5001 Facsimile

                                        *Attorneys for Defendant HP Inc.*

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing document was served via CM/ECF on June 28, 2021 upon all counsel of record.

/s/ *Jason C. White*
Jason C. White