IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **STEVEN E. BERKHEIMER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12 C 9023 |
| v. | ) | |
| | ) | Judge John Z. Lee |
| **HP INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Steven Berkheimer has sued Defendant HP, Inc., under 35 U.S.C. § 1 *et seq.*, alleging infringement of U.S. Patent No. 7,447,713 ("the '713 Patent"). The parties have cross-moved for summary judgment. For the reasons that follow, HP's motion is granted, and Berkheimer's motion is denied.

### I. **Background**[1]

The Court presumes familiarity with the factual background of this case from its prior orders,[2] but in brief: Berkheimer is the owner of the patent-in-suit, which claims a method of digital file management in which "object-oriented representations" of documents and graphics are "manipulated and then entered into an archival database with minimal redundancy." '713 Patent col. 1 ll. 15–19, ECF No. 20-1. Using these methods, a computer program can recognize components of a document

---

[1] The following facts are undisputed or deemed admitted, unless otherwise noted.

[2] *See Berkheimer v. Hewlett-Packard Co.*, 224 F. Supp. 3d 635 (N.D. Ill. 2016) (summary judgment), *aff'd in part, vacated in part, and remanded sub nom. Berkheimer v. HP, Inc.*, 881 F.3d 1360 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 860 (2019); *Berkheimer v. Hewlett-Packard Co.*, No. 12-cv-9023, 2015 WL 4999954 (N.D. Ill. Aug. 21, 2015) (claim construction).

(such as headlines, text blocks, or images) and archive the document by storing data corresponding to these components in separate locations in the archive. *See id.* at col. 2 ll. 53–65. By parsing the document into these separate components, the program "allow[s] multiple users to work on different components of a document at the same time and from different locations." *Id.* at cols. 39–40. If multiple documents in an archive share a common component, a user can edit those documents simultaneously with a one-time edit to the common component. *Id.* at col. 3 ll. 19–25. The claimed methods therefore "promote efficiency," "achieve object integrity," and "reduce turnaround time and costs" in the digital asset management process. *Id.* at col. 2 ll. 38–52; col. 3 ll. 40–50.

Berkheimer originally asserted claims 1 through 19 against HP, but the Court held claims 10 through 19 invalid for indefiniteness at claim construction. *See Berkheimer*, 2015 WL 4999954, at *9–11. The Court then granted HP's motion for summary judgment as to the remaining claims on patent ineligibility grounds. *See Berkheimer*, 224 F. Supp. 3d at 648. On appeal, the Federal Circuit affirmed the grant of summary judgment as to claims 1 through 3 and 8 and the ruling of indefiniteness as to claims 10 through 19. *Berkheimer*, 881 F.3d at 1370. But the court vacated and remanded the grant of summary judgment as to claims 4 through 7, because it concluded that factual issues remained as to whether the limitations in those claims performed well-understood, routine, and conventional activities to a person of ordinary skill in the art ("POSITA"). *See id.* at 1370–71; *see also Alice Corp.*

*Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). Thus, the instant motions address only these four claims—claims 4, 5, 6 and 7.

Claim 4 is a dependent claim deriving from Claim 1, and claims 5, 6 and 7 are dependent claims of Claim 4. Claim 1 reads:

> 1. A method of archiving an item in a computer processing system comprising:
>
> presenting the item to a parser;
>
> parsing the item into a plurality of multi-part object structures wherein portions of the structures have searchable information tags associated therewith;
>
> evaluating the object structures in accordance with object structures previously stored in an archive;
>
> presenting an evaluated object structure for manual reconciliation at least where there is a predetermined variance between the object and at least one of a predetermined standard and a user defined rule.

'713 Patent col. 47 ll. 9–21. Claim 4 reads:

> 4. The method as in claim 1 which includes storing a reconciled object structure in the archive without substantial redundancy.

*Id.* at ll. 28–30. And claims 5 through 7 read:

> 5. The method as in claim 4 which includes selectively editing an object structure, linked to other structures to thereby effect a one-to-many change in a plurality of archived items.
>
> 6. The method as in claim 5 which includes compiling an item to be output from the archive, wherein at least one object-type structure of the item has been edited during the one-to-many change and wherein the compiled item includes a plurality of linked object-type structures converted into a predetermined output file format.

>   7. The method as in claim 6 which includes compiling a plurality of items wherein the at least one object-type structure has been linked in the archive to members of the plurality.

*Id.* at ll. 31–44.

HP has moved for summary judgment on three grounds: indefiniteness under 35 U.S.C. § 112; patent ineligibility under 35 U.S.C. § 101; and noninfringement. Berkheimer has moved for summary judgment on grounds of induced infringement.

## II. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence considered for summary judgment "must be admissible if offered at trial, except that affidavits, depositions, and other written forms of testimony can substitute for live testimony." *Malin v. Hospira, Inc.*, 762 F.3d 552, 554–55 (7th Cir. 2014). In reviewing a motion for summary judgment, the Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013).

The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party must then "come forth with specific facts showing that there is a genuine issue for trial." *LaRiviere v. Bd. of Trs. of S. Ill. Univ.*, 926 F.3d 356, 359 (7th Cir. 2019) (quoting *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015)). To satisfy that ultimate burden, the nonmoving party must "do more than simply show

4

that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor," *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). Where, as here, the parties have filed cross-motions, courts "take the motions one at a time, construing all facts and drawing all reasonable inferences in favor of the non-moving party." *Black Earth Meat Mkt., LLC v. Vill. of Black Earth*, 834 F.3d 841, 847 (7th Cir. 2016).

### III. Analysis

The Federal Circuit held that the term "minimal redundancy" in claims 10 through 19 of the '713 Patent was invalid for indefiniteness under 35 U.S.C. § 112. *See Berkheimer*, 881 F.3d at 1364. HP now argues that claims 4, 5, 6 and 7 are also invalid for indefiniteness because they contain the similar language "without substantial redundancy." For the reasons that follow, the Court agrees.

A claim is invalid for indefiniteness if, "viewed in light of the specification and prosecution history," the claim fails to "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). It is not enough for a court to ascribe *some* meaning to a patent's claim. *See id.* at 911 (emphasis added). Rather, "the definiteness inquiry trains on the understanding of a skilled artisan at the time of the patent application, not that of a court viewing matters *post hoc*." *Id*. Hence, "[t]he claims, when read in light of the specification and the prosecution history, must provide *objective*

5

*boundaries* for those of skill in the art." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) (citing *Nautilus*, 572 U.S. at 911–12 & n.8) (emphasis added), *cert. denied*, 577 U.S. 913 (2015).

The Court examines multiple sources to determine whether a claim is indefinite. First, the Court evaluates the language of the claim and the specification to determine if it delineates objective boundaries. *See Berkheimer*, 881 F.3d at 1363–64. Second, the Court must consider the patent's prosecution history. *See id.* at 1364. Finally, if the claims, specification, and prosecution history do not reveal an objective boundary, the Court can rely on extrinsic evidence. *See id.*

## A. Claim Language and Specification

The phrase "without substantial redundancy" in claims 4 through 7 is not reasonably clear on its face. Like "minimal redundancy," "without substantial redundancy" provides scant guidance about the scope of the claimed method to one skilled in the art because there is no defined threshold in the claim language for what constitutes a "substantial" amount of redundancy. *See* '713 Patent col. 47 ll. 28–44.

Nor does the specification contain any objective boundary. Patents commonly use examples to provide objective boundaries for facially ambiguous terms. *See, e.g.*, *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1379–81 (Fed. Cir. 2017) (holding "visually negligible" was definite, as particular examples in the specification provided "points of comparison" for skilled artisans to discern the scope of the term); *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1334–35 (Fed. Cir. 2010) (holding "not interfering substantially" was definite because the specification provided sufficient

6

examples to enable a person of ordinary skill in the art to determine the scope of the claims). By contrast, a claim term may be indefinite if there remains uncertainty between the claim language and written description. *See Interval Licensing*, 766 F.3d at 1371–74 (concluding "unobtrusive manner that does not distract a user" was indefinite because the single instance of "unobtrusive manner" in the specification did not outline the claims to a skilled artisan with reasonable certainty); *see also Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1352 (Fed. Cir. 2005) (finding "aesthetically pleasing" indefinite because the specification lacked an objective way to determine whether the look and feel of an interface screen was "aesthetically pleasing").

Here, the '713 Patent specification uses "inconsistent terminology" to describe the level of redundancy permitted in the archive. *Berkheimer*, 881 F.3d at 1364 (listing "'minimiz[ing] redundant objects,' 'eliminating redundancy,' and 'reducing redundancies'" as goals of the claimed method) (citations omitted)). And the only relevant "example" in the specification is an archive with *zero* redundancy, which is not helpful because the claim language does not require elimination of all redundancies from the archive. '713 Patent col. 13 ll.5–13; *see Berkheimer*, 881 F.3d at 1364.

Taken together, these attempts at clarification do not provide an objective boundary for "without substantial redundancy." Just as the Federal Circuit held with regard to "minimal redundancy," there is no point of comparison for skilled artisans

7

to determine whether a process infringes claim 4 when the archive has some redundancies. *See Berkheimer*, 881 F.3d at 1364.

## B. Prosecution History

The prosecution history does not add clarity. The Federal Circuit found the prosecution history unhelpful in defining "minimal redundancy" because it "[did] not explain how much redundancy is permitted." *Id.*; *see also Berkheimer*, 2015 WL 4999954, at \*9–11. Berkheimer offers no evidence to change that conclusion in the case of "without substantial redundancy." If anything, the prosecution history *supports* a finding of indefiniteness. As HP's expert explains, both the examiner and Berkheimer treated "without substantial" and "minimal" synonymously concerning the office's indefiniteness rejection. HP's Mot. Summ. J. ("HP MSJ") Ex. 6, Dr. Dan Schonfeld Rebuttal Report ("Schonfeld Report") at 10 n.3, ECF No. 282-7 (citing Schonfeld Report app. 4, Applicant Response to Non-Final Office Action at 2 (May 18, 2005) ("[T]o completely eliminate all redundancy in the field of the claimed invention is not likely. In such instances, the use of terms such as 'substantial' and 'minimize' have found acceptance.")); *see also* Schonfeld Report app. 4, Office Action at 2 (Dec. 2, 2004) (rejecting "substantial" and "minimal" on the same grounds).

## C. Extrinsic Evidence

The Court next consults extrinsic evidence, including expert testimony and other relevant information. This, too, is unavailing. Just as he failed to do concerning "minimal redundancy," Berkheimer has not identified any extrinsic evidence showing *how much* redundancy is "substantial." *Berkheimer*, 881 F.3d at 1364 ("[T]he issue

8

is not *what* must exhibit minimal redundancy, but rather *how much* is minimal."). In lieu of providing such evidence, Berkheimer fashions multiple arguments in response to HP's indefiniteness claim, to which the Court now turns.

### D. Berkheimer's Arguments

#### 1. Procedural Arguments

As an initial matter, Berkheimer raises several procedural objections. The Court finds these unavailing for the following reasons.

##### i. Waiver

First, Berkheimer urges that HP has waived its indefiniteness argument by making it for the first time at summary judgment. While Berkheimer is correct that indefiniteness is generally decided at claim construction, "a district court may engage in claim construction during various phases of litigation, not just in a *Markman* order." *Conoco, Inc. v. Energy & Envt'l, Int'l*, 460 F.3d 1349, 1359 (Fed. Cir. 2006). And at least one district court has explicitly held that "[f]ailure to seek construction of a term during claim construction does not constitute waiver of an indefiniteness argument." *Apple, Inc. v. Samsung Elecs. Co.*, 932 F. Supp. 2d 1076, 1079 (N.D. Cal. 2013) (Koh, J.).

Berkheimer relies on the Federal Circuit's opinion in *Eidos Display, LLC v. AU Optronics Corp.*, where the court noted "[t]he indefiniteness inquiry . . . is intertwined with claim construction." 779 F.3d 1360, 1364 (Fed. Cir. 2015) (citing *Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1379 (Fed. Cir. 1999)). But

9

this does not imply that indefiniteness must be decided during claim construction.[3] It only means that the "Court must attempt to determine what a claim means before it can determine whether the claim is invalid for indefiniteness." *Indus. Tech. Rsch. Inst. v. LG Elecs. Inc.*, 2014 WL 6907449, at *2 (S.D. Cal. Dec. 8, 2014) (quoting *Atmel*, 198 F.3d at 1379). That claim construction must accompany an indefiniteness analysis does not mean that indefiniteness must be decided, once and for all, at the *Markman* hearing. *See Conoco*, 460 F.3d at 1359.

Berkheimer also relies on two district court cases to support his waiver argument. But those cases deal with litigants' failures to follow the district court's claim construction procedures during claim construction, not the timeliness of indefiniteness challenges. *See Protegrity USA, Inc. v. Netskope, Inc.*, No. 15-cv-02515-YGR, 2015 WL 6126599, at *3 (N.D. Cal. Oct. 19, 2015) (rejecting an untimely claim construction argument and noting "that plaintiffs' failure to include the additional proposed construction in their opposition brief was a calculated attempt to prevent defendant from providing a fulsome response"); *Finjan, Inc. v. Sophos, Inc.*, No. 14–cv–01197–WHO, 2015 WL 890621, at *8 (N.D. Cal. Mar. 2, 2015) (finding that

---

[3] District courts have consistently rejected the idea that indefiniteness can only be raised during claim construction. *See, e.g.*, *Versata Software, Inc. v. Zoho Corp.*, 213 F. Supp. 3d 829, 834 (W.D. Tex. 2016) (finding "[n]othing in the law confines a party's indefiniteness argument to the claim construction stage of the litigation.") (citing cases); *DataTern, Inc. v. MicroStrategy, Inc.*, No. 11-11970-FDS, 2017 WL 1147441, at *5 (D. Mass. Mar. 27, 2017); *Takeda Pharm. Co. v. Handa Pharms., LLC*, No. C–11–00840, 2012 WL 1243109, at *16 (N.D. Cal. Apr. 11, 2012); *ASM Am., Inc. v. Genus, Inc.*, No. C–01–2190, 2002 WL 1892200, at *15 (N.D. Cal. Aug. 15, 2002). And the Federal Circuit has at least acquiesced to, if not endorsed, consideration of indefiniteness on summary judgment by routinely affirming summary judgment on indefiniteness grounds. *See, e.g.*, *EON Corp. IP Holdings LLC v. AT&T Mobility LLC*, 785 F.3d 616, 619 (Fed. Cir. 2015); *H–W Tech. L.C., v. Overstock.com, Inc.*, 758 F.3d 1329, 1330 (Fed. Cir. 2014); *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1246 (Fed. Cir. 2008); *S3 Inc. v. NVIDIA Corp.*, 259 F.3d 1364, 1367 (Fed. Cir. 2001).

arguments raised for the first time at a *Markman* hearing, but not included in briefing, were waived). Therefore, they fail to support Berkheimer's argument.

### ii. Scheduling Order and Local Rules

Second, Berkheimer contends that raising an indefiniteness argument at this stage violates the Court's scheduling order, LPR 4, and Federal Rule of Civil Procedure 16(b)(4) (which concerns scheduling orders). This too is unpersuasive. As one court has held, "[n]either the docket control order nor any local rule or court directive provides a deadline for filing an indefiniteness motion in response to a claim construction order, where it [is] the Court's new claim construction that g[ives] rise to the indefiniteness challenge." *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 240 F. Supp. 3d 605, 626 (E.D. Tex. 2017).

Like Berkheimer, the plaintiff in *Eli Lilly* argued that "because [defendant] did not make its indefiniteness argument at the time the parties briefed the issue of claim construction, it has waived its right to argue indefiniteness now." *Id*. at 625. The court concluded that, while it would have entertained a motion raising the indefiniteness issue immediately after the claim construction order, "there was no scheduling directive that obligated [defendant] to file its challenge at that time." *Id*. at 626. Similarly, nothing in this Court's scheduling order required HP to raise indefiniteness at an earlier time. *See* Scheduling Order, (Oct. 15, 2013), ECF Nos. 35, 36. Neither party asked the Court to interpret "without substantial redundancy" at the claim construction stage, *see Berkheimer*, 2015 WL 4999954, at *1, and the construction of "without substantial redundancy" only became relevant after the

11

Federal Circuit held that the synonymous term "minimal redundancy" was invalid.[4] Because nothing in the Court's scheduling order precludes HP from raising indefiniteness at this stage, Rule 16's requirement that "a schedule may be modified only for good cause and with the [court's] consent" is inapplicable. Nor does Local Patent Rule 4 (which governs claim construction) require indefiniteness to be raised at claim construction. *See generally* LPR 4. HP has not forfeited its indefiniteness defense.

### 2. Archive as Objective Measure

Turning to the merits of HP's indefiniteness argument, Berkheimer first claims that claim 4 is not indefinite because "the archive storage of a reconciled object structure provides the objective measure to judge 'without substantial redundancy.'" Berkheimer's LR 56.1(b) Resp. HP's Statement Undisputed Material Facts Ex. 12, Dr. Peter Nelson Rebuttal Report ¶ 243, ECF No. 298-10. But this is the same line of argument the Federal Circuit explicitly rejected. The fact that redundancy is measured with reference to the archive provides no basis for a skilled artisan to determine *how much* redundancy is acceptable. *See Berkheimer*, 881 F.3d at 1364. Berkheimer's expert, Dr. Nelson, admitted as much in his deposition, when he conceded that the meaning of the term "without substantial redundancy" is "somewhat relative." HP MSJ Ex. 1, Nelson Dep. at 111:22–112:3, ECF No. 282-2.

---

[4] While HP might reasonably have raised the argument that claim 4 and its dependents are indefinite at claim construction, the Court will not fault HP for failing to do so. The local rules limit claim construction to ten terms, *see* LPR 4.1(b), and Berkheimer asserted nearly twenty claims against HP. *See Apple*, 932 F. Supp. 2d at 1079 (because local rule limited claim construction to ten terms, "failure to include a term at that stage [could not] reasonably constitute a waiver" of indefiniteness argument).

To be sure, relative language is not a problem when a skilled artisan would be able to derive a workable standard from the term. *See One-E-Way, Inc. v. Int'l Trade Comm'n*, 859 F.3d 1059, 1063 (Fed. Cir. 2017) (collecting cases). In *One-E-Way*, which involved a patent for a wireless digital audio system, the defendant argued that the term "virtually free from interference" was indefinite. *Id.* at 1063–64. The plaintiff pointed to evidence from the specification, prosecution history, and expert testimony showing that, despite the term's facial ambiguity, a POSITA would understand the term to mean that the audio transmission was virtually free from interference from other users. *See id.* at 1064. The Federal Circuit agreed. It noted that, "[w]hile . . . 'virtually' is a term of degree, . . . the inclusion of "virtually" in these claims does not render them indefinite [because] it simply requires that the claimed invention does not allow for eavesdropping." *Id.* at 1067.

Here, the term "without substantial redundancy" cannot be reduced to such a standard. On this point, the Court finds Dr. Schonfeld's testimony credible and persuasive. Dr. Schonfeld points out that the specification and prosecution history do not provide a POSITA with any guidance as to how much redundancy in the archive is permissible. *See* Schonfeld Report ¶ 24. A POSITA who invented a method that allowed for five percent redundancy in the archive, for example, would have no idea whether their invention is infringing. The complete absence of guideposts makes the requisite notice impossible. *See Nautilus*, 572 U.S. at 909–10 (section 112 requires claim terms to provide notice of the claim's scope to skilled artisans, so that they may avoid infringement).

13

### 3. System Versus Method Claim

Berkheimer also argues that the Federal Circuit's holding as to "minimal redundancy" is not relevant to the Court's indefiniteness analysis of "without substantial redundancy" because the former is a system claim, while the latter is a method claim. Berkheimer does not cite any legal authority to support this distinction. His argument therefore is waived. *See M.G. Skinner and Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017).

But, even setting waiver aside, Berkheimer's argument is unpersuasive. First, courts routinely analyze system and method claims together. For example, in *SimpleAir, Inc. v. Sony Ericsson Mobile Communications AB*, the Federal Circuit interpreted the claim term "data channel" in two different contexts: (1) "a data channel," as part of the system and (2) "whether said devices are online or offline from a data channel associated with each device," as a phrase in the method claim. 820 F.3d 419, 421 (Fed. Cir. 2016). Although the phrase "a data channel" was both part of a dependent system claim and part of the method phrase, the court did not distinguish between the two contexts in its indefiniteness analysis. *See id.* at 432. Furthermore, the Court notes that, in the related § 101 ineligibility context, the Federal Circuit has held that system claims and method claims that "contain only 'minor differences in terminology [but] require performance of the same basic process,' . . . should rise or fall together." *Accenture Glob. Servs., GmbH v, Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013); *see also Bancorp Servs., LLC v.*

14

*Sun-Life Assur. Co.*, 687 F.3d 1266, 1277 (Fed. Cir. 2012) (treating system and method claims as equivalent in § 101 analysis).

Second, while Berkheimer correctly asserts that claim construction "requires examining not just the term itself, but also its role in the overall context of the claim," Berkheimer's Mem. Opp'n HP's Mot. Summ. J. at 8, ECF No. 294, this does not support his argument. The patent uses "without substantial redundancy" and "minimal redundancy" in similar contexts—referring to the degree of redundancy among objects stored in the archive.

That said, Berkheimer argues that claim 4 is distinguishable from claim 10, because in claim 4 it is the particular "reconciled object structure" that is stored "without substantial redundancy," '713 Patent col. 47 l. 29, whereas in claim 10, it is the archive itself that "exhibits minimal redundancy." *Id.* at col. 47 l. 60. But read in context, the phrase "archive exhibits minimal redundancy" means that there is little redundancy *between the individual reconciled object structures* in the archive. In other words, "archive exhibits minimal redundancy" is simply another way of saying that the individual object structures are stored "without substantial redundancy." If the "redundancy" in claim 10 referred to the archive itself, one would expect evidence of that meaning elsewhere in the claims or the specification. But Berkheimer has not pointed to any such evidence. Throughout the claim language and the specification, the term "redundancy" appears consistently with reference to individual object structures. *See* '713 Patent col. 47 ll. 58–59 (the archive is comprised "of documents represented by linked object oriented elements stored in the medium,

wherein [it] exhibits minimal redundancy"); *see also, e.g., id.* at col. 2 ll. 24–25 ("[s]torage of *redundant common graphics elements* leads to inefficiencies and increased costs" (emphasis added)); col. 13 ll. 10–13 ("the . . . system is not encumbered with redundant documents or elements"); col. 16 ll. 50–51 ("user-established rules . . . minimize redundant objects and object relationships which are stored in the archive"); col. 48 ll. 66–67 ("the contents of the archive are substantially non-redundant"). And even if claim 10 did refer to the redundancy of the archive itself and not of the individual elements within it, Berkheimer still has not pointed to any objective measure of how much redundancy is permissible.

### 4. Use of "Substantial"

Lastly, Berkheimer argues that "minimal redundancy" and "without substantial redundancy" should be treated differently because the "terms are not the same" and the word "substantial" "has found acceptance in many patents" and is "ubiquitous in patent claims." Nelson Dep. at 167:15–23. This argument is groundless. As a matter of logic, the fact that the terms are not literally identical is immaterial because, as explained above, they share a common ambiguity. Moreover, while it is true that claims that include "substantial" can be definite, the patents in the cases Berkheimer cites provide far more guidance to a skilled artisan than the patent in this case. In *Enzo Biochem, Inc. v. Applera Corp.*, for instance, the Federal Circuit held that the independent claim language "not interfering substantially" was definite. 599 F.3d at 1334. But in that case, which involved a patent for labeling and detecting nucleic acids, the language of the dependent claims "provide[d] at least

16

some guidance as to how much interference [was] tolerated" because the claims contained "a range of exemplary values" that allowed skilled artisans to compare a potentially infringing product. *Id.* at 1335.

The '713 Patent contains no examples or points of reference to clarify what a "substantial" amount of redundancy means. As the Court observed at claim construction, "the specification and prosecution history do little to clarify" matters because the specification says nothing about the acceptable degree of redundancy in the archive apart from a few, sometimes contradictory references to eliminating redundancy as a goal of the claimed method. *Berkheimer*, 2015 WL 4999954, at *10 (quoting '713 Patent col. 6, ll. 60–65; *id.* at col. 2 ll. 24–25); *see, e.g.*, *Interval Licensing*, 766 F.3d at 1373–74 (holding that even though the patent provided an example, the claim term "unobtrusive manner that does not distract a user" was still indefinite because the lone example could not provide a workable standard for a skilled artisan to determine how much obstruction was permissible); *Datamize*, 417 F.3d at 1352 ("Reference to undefined standards . . . fails to provide any direction to one skilled in the art attempting to determine the scope of the claimed invention."). Although words of degree can be definite in some cases, this case is not one of them.

In sum, the Court finds that claims 4, 5, 6 and 7 are invalid for indefiniteness under § 112. This holding is dispositive, so the Court need not reach the rest of HP's arguments or Berkheimer's cross-motion for summary judgment. *See Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 644 (2015) ("[A]n invalid patent cannot be infringed, . . . [and] someone cannot be induced to infringe an invalid patent.").

## Conclusion

For the foregoing reasons, the Court holds that claims 4, 5, 6 and 7 of the '713 Patent are invalid for indefiniteness under § 112. Accordingly, HP's motion for summary judgment is granted. Because this holding is dispositive, Berkheimer's motion for summary judgment is denied. Judgment is entered in HP's favor, and this case is terminated.

**IT IS SO ORDERED.**  ENTERED:  3/29/22

_____
**John Z. Lee**
**United States District Judge**